UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., et al.<br><br>　　　　　Plaintiffs,<br>v.<br><br>CHRISTOPHER CHRISTIE, Governor of the State of New Jersey, et al.<br><br>　　　　　Defendants. | Civil Action No. 10-271 (JAP)<br><br>**OPINION** |

PISANO, District Judge.

Plaintiffs Association of New Jersey Rifle and Pistol Clubs, Inc., ("ANJRPC"), Scott Bach, Kaare Johnson, Vincent Furio, Steven Yagiello and Bob's Little Sport Shop, Inc. (collectively, "Plaintiffs") bring this action challenging recent amendments to N.J.S.A. 2C:58-2 and 2C:58-3, referred to as the "One Gun Law" or the "One Handgun a Month Law," (hereinafter the "One Gun Law") which restricts the sale of handguns to one per thirty day period. Presently before the Court are the following motions: (1) Plaintiffs' motion for a preliminary injunction; (2) the State of New Jersey's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6); and (3) the City of Hackensack's motion to dismiss pursuant to Rules 12(B)(1), 12(b)(6), and 12(h)(3). For the reasons below, Plaintiffs' motion for a preliminary injunction is denied, and the State of New Jersey's motion to dismiss is granted with respect to Counts One and Two. As to the remaining issues, the parties are

directed to submit supplemental briefing as set forth below.

I.    Background

In or about August 2009, the One Gun Law was enacted. The law amended N.J.S.A. 2C:58-2(a) to provide that a "dealer" could not "deliver more than one handgun to any person within a 30-day period." It also amended N.J.S.A. 2C:58-3 to provide that "no more than one handgun shall be purchased within any 30-day period." N.J.S.A. 2C:58-3(i). These changes were effective as of January 1, 2010.

Also in or about January 2010, amendments were enacted that created certain exemptions to One Gun Law. Included were exemptions relating to inheritance or intestacy, collecting, and competitive shooting. N.J.S.A. 2C:58-3.4. In order to qualify for one of these exemptions, the statute provides that an applicant must certify, "on a form prescribed by the [S]uperintendent [of the State Police], the exemption sought along with documentation in support of the exemption." N.J.S.A. 2C:58-3.4(b). These amendments became effective January 3, 2010 and January 12, 2010, respectively. Plaintiffs filed this lawsuit shortly thereafter, on January 17, 2010.

Counts One and Two of the amended complaint (hereinafter "complaint") allege that the One Gun Law is void because it is preempted by 15 U.S.C. § 5001(g)(ii), which provides that "[n]o State shall ... prohibit the sale ... of traditional B-B, paint ball, or pellet-firing air guns that expel a projectile through the force of air pressure." Count Three, Four and Five allege that the lack of a procedure[1] to obtain one of the enumerated exemptions to the One

---

[1] As noted previously, the statute requires applications for an exemption to complete a "form prescribed by the [S]uperintendent [of the State Police]" At the time of the filing of this

2

Gun Law violates Plaintiffs' due process rights under the United States and New Jersey Constitutions. Counts Seven and Eight allege that certain individual plaintiffs were unlawfully denied the right to apply for multiple handgun purchase permits at one time by the defendant municipalities.[2] The motions presently before the Court center on the claims raised in Counts 1, 2, 7 and 8. *See* Transcript of Proceedings, May 25, 2010 ("Tr.") at 9 (counsel explaining that due to recent developments Court does not have full record before it as to Counts 3 through 6).

II.  Analysis

A.  Motion for Preliminary Injunction

Plaintiffs seek a preliminary injunction enjoining enforcement of the One Gun Law and an injunction enjoining municipal defendants from restricting the number of handgun purchase permits an individual may apply for at one time. In evaluating a motion for preliminary injunctive relief, a court must consider whether: "'(1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest.'" *NutraSweet Co. v. Vit-Mar Enterprises, Inc.*, 176 F.3d 151, 153 (3d Cir.1999) (quoting *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir.1998)).

---

action, no such "form" had been promulgated by the superintendent. Since that time, the State has advised the Court that exemption forms have issued. *See* Docket Entry # 32. Plaintiffs have advised the Court that they may seek to amend their complaint to allege that the forms are inadequate and, therefore, the exemption procedure violates their due process rights.

[2]The parties advised the Court that since the filing of the complaint the Division of the State Police has issued guidance for municipalities advising that the One Gun Law does not restrict individuals from obtaining more than one permit in a 30-day period. Tr. at 10, 18.

3

A preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Masurek v. Armstrong*, 520 U.S. 968, 972 (1997). Preliminary injunctive relief is an "extraordinary and drastic remedy", *id.*, which "should issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *American Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir.1994). "The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate." *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005).

Turning to the first element of the preliminary injunction analysis, likelihood of success on the merits, Plaintiffs first argue that the One Gun Law should be enjoined because it is preempted by the Federal Toy gun Law and is, therefore void. Federal preemption of state law finds its basis in Supremacy Clause of the United States Constitution, which states that "the Laws of the United States ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. However, despite the broad language of this clause, courts do not readily assume preemption. *Madeira v. Affordable Housing Foundation, Inc.*, 469 F.3d 219, 238 (2d Cir. 2006). Rather, "in the absence of compelling congressional direction," courts will not infer that "Congress ha[s] deprived the States of the power to act." *Id.* (quoting *New York Tel. Co. v. New York State Dep't of Labor*, 440 U.S. 519, 540 (1979)). When, as in this case, the state law at issue involves the historic police power of the States, "courts start with the assumption

4

that these powers are not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (internal quotations omitted) (citing *Jones*, 430 U.S. at 525).

The Supreme Court has noted that "[t]he criterion for determining whether state and federal laws are so inconsistent that the state law must give way is firmly established..." *Jones v. Rath Packing Co.*, 430 U.S. 519, 526 (1977). The task of a court is to "to determine whether under the circumstances of [a] particular case, (the State's) law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* Furthermore, in determining whether a conflict exists, a court must "consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written." *Id.*; *State v. Rackis*, 333 N.J. Super 332, 340 (App. Div. 2000). Importantly, "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, -- U.S. --, 129 S.Ct. 1187, 1194 (2009).

As noted earlier, Section 5001(g) provides that "no State shall ... (ii) prohibit (other than prohibiting the sale to minors) the sale of traditional B-B, paint-ball, or pellet-firing air guns that expel a projectile through the force of air pressure."  15 U.S.C. § 5001(g)(ii).  The key question here, therefore, is whether the One Gun Law "prohibit[s]" the sale of "B-B, paint-ball, or pellet-firing air guns" that may fall within its scope (referred to herein as "air-powered handguns").[3] Plaintiffs argue that by limiting the purchase of air-powered handguns

---

[3] The State does not dispute that the One Gun Law governs the sale and purchase of certain B-B and pellet-firing air-powered guns that fall within the definition of "handgun" under New Jersey law.

5

to one every thirty days, the One Gun Law is a prohibition on the purchase of these firearms that conflicts with § 5001(g)(ii). The State, on the other hand, contends that the One Gun Law does not prohibit but merely regulates the purchase of these guns and, therefore, is not preempted.

The Court agrees that the One Gun Law permissibly regulates, rather than prohibits, the sale of air-powered handguns, and therefore is not in conflict with the Federal Toy Gun Act. As the State points out, the One Gun Law does not ban the sale of such guns -- a person is not prohibited from buying an air-powered handgun today so long as they have a permit to do so. While the One Gun Law does regulate the timing of an individual's ability to purchase air-powered handguns, it neither prohibits their sale nor limits the absolute number of air-powered handguns that an individual can purchase.

The Court finds Plaintiffs' reliance on the *New York State Motor Truck Assoc. v. City of New York*, 654 F. Supp. 1521 (S.D.N.Y. 1987) and *United States v. Florida*, 585 F. Supp. 807 (N.D. Fla. 1984) in support of their argument that the One Gun Law constitutes a prohibition on the sale of these weapons to be misplaced. In those cases, the courts found that state or local laws that placed time-of-day restrictions on the operation of certain kinds of trucks were preempted by federal statutes "prohibit[ing]" states from barring those trucks from operating on certain highways. Plaintiffs argue that such cases stand for the proposition that a restriction such as the One Gun Law, which Plaintiffs concede "is not a total prohibition[,] ... is a prohibition nevertheless." Pl. Br. at 20.

Plaintiff's argument, however, overlooks one of the "cornerstones of ... pre-emption

6

jurisprudence," namely, that "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth*, 129 S.Ct. at 1194. In both *New York State Motor Truck* court and *Florida,* the courts found the existence of congressional intent to promote a uniform system of national regulation so as "to relieve commercial trucking operators of the burden inherent in planning and operating a multistate haul . . . through states with conflicting regulations." *New York State Motor Truck*, 654 F. Supp. at 1536; *see also Florida*, 585 F. Supp. at 810 ("potential disruption . . . would make planning by commercial trucking firms virtually impossible"). There is no evidence here that the purpose of § 5001 is to promote a uniform system of national regulation with respect B-B and other air powered weapons.

Additionally, unlike the statute at issue in *Coalition of New Jersey Sportsmen v. Florio*, 744 F. Supp. 602 (D.N.J. 1990), another case relied upon by Plaintiffs, the requirements of the One Gun Law are not so onerous that the law constitutes a *de facto* prohibition on the sale of B-B guns and air guns that fall within its scope. *Coalition* involved, among other things, a state gun control statute that regulated semi-automatic assault weapons. The court in *Coalition* found that certain B-B and pellet-firing guns fell within the scope of that statute's definition of "assault firearms." *Id.* at 605 (interpreting N.J.S.A. 2C:39-1(w)(3)). Because the *Coalition* court found that the statute's extremely rigorous qualification process for persons wishing to purchase an assault firearm was so onerous, it held that the statute constituted a *de facto* prohibition on the sale of B-B guns and air guns that fell within its scope. That simply is not the case here.

The Court finds the reasoning of *State v. Rackis* to be more relevant. Although *Rackis*

7

was a possession case -- it addressed the question of whether state criminal laws that prohibited possession of a handgun without a permit and possession of a handgun by a convicted felon were preempted by § 5001 -- the principles relied upon by the court and the reasoning of that decision are instructive. The *Rackis* court found that New Jersey's requirements that a person obtain a permit to purchase as well as carry a handgun (including BB guns) do not "constitute[] a prohibition against the sale or possession of a BB gun." 333 N.J. Super at 341 ("[T]he classification of BB guns as a handgun does not bar acquisition of the weapon and the requirement that a person must obtain a permit to carry a BB gun is not onerous. A person of good character and good repute in the community in which he lives cannot be denied a permit to purchase a handgun or a firearms purchaser identification card."). After determining that the intent of Congress in enacting § 5001(g) was to "protect manufacturers and the rights of the public to buy and possess [BB and pellet guns]" and not to completely preempt state regulation of such weapons, the *Rackis* court further found that "the express language of § 5001(g) only precludes states from prohibiting the sale of such guns and is silent as to whether the state can in fact regulate who can obtain these guns." *Rackis*, 333 N.J. Super at 343.

Here, the One Gun Law regulates the sale of air-powered handguns in that it allows individuals who have not purchased a handgun in the previous thirty days to purchase such a weapon. It also exempts from its limitations individuals that qualify for one of the several exemptions enumerated in the statute. An individual (with the appropriate permit) who does not qualify for an exemption and who has purchased a handgun within a thirty-day period

need only wait until the expiration of the thirty-day period in order to purchase an air-powered handgun. Consequently, the One Gun Law does not prohibit the sale of air-powered handguns, nor is it a restriction that is so onerous that it constitutes a *de facto* prohibition on the sale or purchase of these weapons. As such, the One Gun Law is not at odds with the legislative intent of § 5001(g)(ii) to "protect manufacturers and the rights of the public to buy and possess [air-powered handguns]," and, therefore, the Court finds that the One Gun Law is not preempted by the Federal Toy Gun Act. Consequently, Plaintiffs have not shown a reasonable likelihood of success on the merits with respect to Counts One and Two, and their motion for an injunction enjoining the enforcement of the One Gun Law based upon those counts shall be denied. Additionally, in light of the foregoing, the Court shall grant the State's motion to dismiss as to Counts One and Two of the complaint.

To the extent that Plaintiffs seek injunctive relief based upon Counts Seven and Eight enjoining municipal defendants from restricting the number of handgun purchase permits an individual may apply for at one time, that relief is also denied. Since the filing of the complaint in this case the Division of the State Police has issued guidance for municipalities advising that the One Gun Law does not restrict individuals from obtaining more than one permit in a 30-day period. Tr. at 10, 18. In fact, despite what appeared to be some initial confusion when the law was first enacted, all parties appear to be in accord that the One Gun Law does not restrict the number of handgun purchase permits an individual may obtain at any one time. As such, Plaintiffs cannot establish that they will be irreparably harmed absent the preliminary relief sought.

9

B.  Motions to Dismiss

As is evident from correspondence on the docket and as was discussed at oral argument, numerous developments have occurred since the commencement of this action and the filing of the parties' motions that impacts both the factual and legal issues in this case. For example, at the time of the filing of this action, no exemption form had been had been promulgated by the superintendent. *See* N.J.S.A. 2C:58-3.4(b) (exemptions to the One Gun Law are to be made "on a form prescribed by the [S]uperintendent [of the State Police]). Since that time, exemption forms have issued. *See* Docket Entry # 32. Additionally, as noted above, the State Police has issued guidance regarding the One Gun Law's effect, or lack thereof, on the issuance of handgun purchase permits. Also, the statute received its official codification not long ago, which the State notes harmonized certain clashing statutory provisions. *See* Docket Entry #44.

In light of the recent developments, there appears to be the possibility that some of Plaintiffs' claims may be moot, and certain relief sought by way of parties' motions as well as certain legal arguments raised may no longer be relevant. Consequently, the parties are each to submit to the Court a supplemental brief addressing the impact of these developments and any others on the issues raised in the pending motions to dismiss.

III.  Conclusion

For the reasons above, Plaintiffs motion for a preliminary injunction is denied. The State's motion to dismiss is granted as to Counts One and Two of the complaint. The parties

10

are directed to submit supplemental briefing regarding developments since the filing of the motions to dismiss. An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated: June 14, 2010