# United States Court of Appeals

*for the*

# Third Circuit

Case No. 12-1624

ASSOCIATION NEW JERSEY RIFLE AND PISTOL CLUBS,
a New Jersey Not for Profit Corporation; SCOTT L. BACH; KAARE A.
JOHNSON; BOBS LITTLE SPORT SHOP, a New Jersey Corporation;
VINCENT FURIO; STEVEN YAGIELLO,

*Appellants,*

– v. –

GOVERNOR OF THE STATE OF NEW JERSEY; ATTORNEY GENERAL
NEW JERSEY; COLONEL RICK FUENTES, Superintendent, Division of New
Jersey State Police; WASHINGTON TOWNSHIP, (Morris County); XYZ
MUNICIPALITIES 1-565; CITY OF HACKENSACK; LITTLE EGG HARBOR
TOWNSHIP; XYZ MUNICIPALITIES 1-563

ON APPEAL FROM ORDERS ENTERED IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF NEW JERSEY, TRENTON
AT NO. 3:10-CV-00271 (JAP)

## BRIEF AND APPENDIX ON BEHALF OF APPELLANTS
## VOLUME I OF II (Pages A1-A27)

GREENBAUM, ROWE, SMITH & DAVIS, LLP
*Attorneys for Appellants*
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, New Jersey 07095
(732) 549-5600
dschmutter@greenbaumlaw.com

*On the Brief:*
 DANIEL L. SCHMUTTER, ESQ.

# CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellant Association of New Jersey Rifle & Pistol Clubs, Inc. has no parent corporation, and no publicly held corporation owns its stock.

Plaintiff-Appellant Bob's Little Sport Shop, Inc. has no parent corporation, and no publicly held corporation owns its stock.

/s/ Daniel L. Schmutter, Esq.
_____
Daniel L. Schmutter, Esq.
GREENBAUM, ROWE, SMITH & DAVIS, LLP
Counsel for Plaintiffs/Appellants

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ................................................................................1

STATEMENT OF ISSUES ........................................................................................2

STATEMENT OF RELATED CASES ...........................................................................3

STATEMENT OF THE CASE ....................................................................................3

STATEMENT OF FACTS ........................................................................................8

    1.    Background of New Jersey Handgun Permitting Law..........................8

    2.    The One Gun Law ................................................................10

    3.    The Plaintiffs ......................................................................14

    4.    The Exemptions are Illusory .................................................19

    5.    The Misconduct of Hackensack and other Municipalities
        Demonstrates the Chaos Surrounding the One Gun Law .................22

SUMMARY OF ARGUMENT....................................................................................26

ARGUMENT ......................................................................................................28

    I.    THE STANDARD OF REVIEW FOR ALL ISSUES IS DE NOVO ...................28

    II.    THE ONE GUN LAW IS PREEMPTED BY 15 U.S.C. §5001(g)(II) .........29

        A.    B-B AND PELLET-FIRING AIR GUNS ARE "HANDGUNS"
            UNDER NEW JERSEY LAW.........................................29

        B.    STATE LAWS PROHIBITING THE SALE OF B-B AND
            PELLET-FIRING AIR PISTOLS ARE EXPRESSLY PREEMPTED
            BY FEDERAL LAW ....................................................31

        C.    THE ONE GUN LAW IS A PROHIBITION ON THE SALE OF
            B-B AND PELLET-FIRING AIR GUNS...........................32

    III.    THE ONE GUN LAW CANNOT BE SAVED BY A NARROWING
        CONSTRUCTION OR BY SEVERING INVALID CLAUSES .........................37

A. THE ONE GUN LAW CANNOT BE SAVED BY A NARROWING CONSTRUCTION ...................................................................... 38

B. PARTIAL INVALIDATION CANNOT SAVE THE ONE GUN LAW ... 43

IV. THE STATE MAY NOT PROVIDE A RIGHT TO OBTAIN THE EXEMPTIONS WITHOUT PROVIDING A FAIR MEANS TO VINDICATE THAT RIGHT...................................................................... 46

V. PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF ENJOINING ENFORCEMENT OF THE ONE GUN LAW .............................. 56

A. IRREPARABLE HARM ................................................................ 57

B. BALANCING OF HARM FAVORS INJUNCTIVE RELIEF.................. 60

C. THE PUBLIC INTEREST FAVORS INJUNCTIVE RELIEF ................. 61

VI. IF THE FEDERAL CLAIMS ARE REINSTATED ON APPEAL, THE DISTRICT COURT SHOULD RESUME JURISDICTION OF THE PENDENT STATE LAW CLAIMS ............................................................ 62

CONCLUSION ................................................................................................ 63

## APPENDIX TABLE OF CONTENTS

**Volume I:**

Opinion, Filed June 14, 2010.................................................................... A1

Order, Filed June 14, 2010........................................................................ A12

Opinion, Filed February 2, 2012............................................................... A13

Order, Filed February 2, 2012................................................................... A25

Notice of Appeal, Filed March 2, 2012 .................................................... A26

# TABLE OF AUTHORITIES

**Cases**

*A.A. v. New Jersey*, 176 F. Supp. 2d 274 (D.N.J. 2001) .........................................61

*Abu-Jamal v. Price,* 154 F.3d 128 (3d. Cir. 1998) ...................................................58

*ACLU of Nevada v. Heller*, 378 F.3d 979 (9th Cir. 2004).........................................39

*ACLU v Reno*, 217 F.3d 162 (3d. Cir. 2000) ..................................................... 38, 60

*Alexandre v Cortes*, 140 F.3d 406 (2d Cir. 1998)......................................................47

*Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219 (1998) .........38

*American Meat Institute v. Barnett*, 64 F. Supp. 2d 906 (D.S.D. 1999) .................40

*American Telephone and Telegraph Co. v. Winback and
Conserve Program, Inc.,* 42 F.3d 1421 (3d Cir. 1994)........................................57

*Bank One v. Guttau*, 190 F.3d 844 (8th Cir. 1999)....................................................60

*Board of Pardons v. Allen*, 482 U.S. 369, 107 S. Ct. 2415 (1987)................... 48, 51

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564,
92 S. Ct. 2701 (1972)............................................................................................46

*Boos v. Barry*, 485 U.S. 312, 108 S. Ct. 1157 (1988) .............................................38

*Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 105 S. Ct. 2794 (1985) .............43

*Citizens for Responsible Government State Political Action Comm.
v. Davidson*, 236 F.3d 1174 (10th Cir. 2000) ................................... 38, 42, 43, 44

*Coalition of New Jersey Sportsmen v. Florio*,
744 F. Supp. 602 (D.N.J. 1990).................................................................. *passim*

*Communications Workers of America v. Florio,* 130 N.J. 439, 617 A.2d 223
(1992)....................................................................................................................43

*Conchatta Inc. v. Miller*, 458 F.3d 258 (3d Cir. 2006)..................................... 38, 42

*Council of Alternative Political Parties v. Hooks*, 121 F.3d 876 (3d Cir. 1997) ....57

*Dombrowski v. Pfeister*, 380 U.S. 479, 85 S. Ct. 1116 (1965)...............................58

*ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223 (3d Cir. 1987).....................................57

*Elrod v. Burns*, 427 U.S. 347, 96 S. Ct. 2673 (1976) ......................................57-58

*Hamar Theatres, Inc. v. Cryan*, 365 F. Supp. 1312 (D.N.J. 1973).........................44

*Hohe v. Casey*, 868 F.2d 69 (3d Cir. 1989) ..............................................58

*Humphries v Country of Los Angeles*, 554 F.3d 1170 (9th Cir. 2009)....................47

*Karlin v. Foust*, 188 F.3d 446 (7th Cir. 1999) ..........................................39

*Lewis v. Hills*, 457 F. Supp. 1112 (E.D. Pa. 1978) ..........................................53, 54

*Lysaght v. State of New Jersey*, 837 F. Supp. 646 (D.N.J. 1993)...........................58

*Midnight Sessions, Ltd. v. City of Philadelphia*,
    945 F.2d 667 (3d. Cir. 1991) ...................................................48

*Mills v. Rogers*, 457 U.S. 291, 102 S. Ct. 2442 (1982) .......................................47

*New Jersey State Firemen's Mutual Benevolent Ass'n v.*
    *North Hudson Regional Fire & Rescue*,
    340 N.J. Super. 577, 775 A.2d 43 (App. Div. 2001)...........................................43

*New York State Motor Truck Association, Inc. v. City of New York*,
    654 F. Supp. 1521 (S.D.N.Y. 1987) ......................................................32-33, 35

*Northland Family Planning Clinic, Inc. v. Cox,* 487 F.3d 323 (6th Cir. 2007)........39

*Old Coach Dev. Corp. v. Tanzman*, 881 F.2d 1227 (3d Cir. 1989).........................43

*Olim v. Wakinekona*, 461 U.S. 238, 103 S. Ct. 1741 (1983) ............................48, 49

*Paul v. Davis*, 424 U.S. 693, 96 S. Ct. 1155 (1976)................................................47

*Phelps v. Hamilton*, 59 F.3d 1058 (10th Cir. 1995)..................................................39

*Phillips v. County of Allegheny,* 515 F.3d 224 (3rd Cir. 2008) .................................28

*Planned Parenthood of Central New Jersey v. Farmer*,
220 F.3d 127 (3d Cir. 2000) ........................................................ 39, 42

*Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 116 S. Ct. 1712 (1996) .....62

*Randall v. Sorrell,* 548 U.S. 230, 126 S. Ct. 2479 (2006) .......................................45

*Ryan v. Johnson,* 115 F.3d 193 (3rd Cir. 1997) .......................................................62

*Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984) ...........................................29

*St. James v. Department of Environmental Protection and Energy*,
275 N.J. Super. 342, 646 A.2d 447 (App. Div. 1994) .........................................40

*State Auto Prop. & Cas. Inc. Co. v. Pro Design, P.C.,*
566 F.3d 86 (3rd Cir. 2009) .................................................................................28

*State v. Mieles*, 199 N.J. Super. 29, 488 A.2d 235 (App. Div. 1985) ............... 30-31

*State v. Rackis*, 333 N.J. Super. 332, 755 A.2d 649 (App. Div. 2000). 31, 33, 36, 37

*Stenberg v. Carhart*, 530 U.S. 914, 120 S. Ct. 2597 (2000) ...................................38

*Swarthout v. Cooke*, 131 S. Ct. 859 (2011) ...........................................................47

*Sypniewski v. Warren Hills Regional Bd. of Educ.*,
307 F.3d 243 (3d Cir. 2002) ......................................................................... 38-39

*Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.,*
222 F.3d 132 (3d. Cir. 2000) ......................................................................... 28, 29

*United States v. Cook,* 432 F.2d 1093 (7th Cir. 1970) ............................................53

*United States v. Florida*, 585 F. Supp. 807 (N.D. Fla. 1984) .......................... 33, 35

*United States v. Cheeseman*, 600 F.3d 270 (3d Cir. 2010) .....................................28

*United States v. Fullmer*, 584 F.3d 132 (3d Cir. 2009) ..........................................28

*Vermont Right to Life Comm. v. Sorrell*, 221 F.3d 376 (2d Cir. 2000) .................39

*Video Software Dealers Ass'n v. Webster*, 968 F.2d 684 (8th Cir. 1992) ...............39

*Virginia Society for Human Life, Inc. v. Caldwell,*
    152 F.3d 268 (4th Cir. 1998) ...................................................................39

*Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 108 S. Ct. 636 (1988) ......38

*Winsett v. McGinnes*, 617 F.2d 996 (3d Cir. 1980) .................................... 48, 49, 50

**Statutes**

15 U.S.C. §5001 ............................................................................ *passim*

28 U.S.C. §1291 .......................................................................................2

28 U.S.C. §1331 .......................................................................................1

28 U.S.C. §1343 .......................................................................................1

28 U.S.C. §1367 ............................................................................ 1, 22, 25, 63

28 U.S.C. §2201 .......................................................................................1

28 U.S.C. §2202 .......................................................................................1

42 U.S.C. §1983 .......................................................................................1

49 U.S.C. §2311 ......................................................................................34

L.2009, c.186 ........................................................................................13

N.J.S. 2C:39-1 .............................................................................. *passim*

N.J.S. 2C:58-2 .............................................................................. *passim*

N.J.S. 2C:58-3 .............................................................................. *passim*

N.J.S. 2C:58-3.4 ........................................................................... *passim*

N.J.S. 1:1-10 .........................................................................................43

N.J.S. 10:6-2 ..........................................................................................1

## Regulations

27 C.F.R. 478.102 ...................................................................................................9

N.J.A.C. 13:54-1.4(h) ................................................................... 1, 3, 22, 62

N.J.A.C. 13:54-3.9(a)(5) ....................................................................................9

N.J.A.C. 13:54-3.13 ...........................................................................................9

## Rules

Fed. R. Civ. P. 12(b)(6) ...............................................................................28

Fed. R. Civ. P. 56 ............................................................................................28

Fed. R. Civ. P. 65 ............................................................................................57

## Other

Black's Law Dictionary 883 (5th ed. 1979) ...............................................52

Black's Law Dictionary 1000 (8th ed. 2004) ...........................................52

Plaintiffs-Appellants ("Plaintiffs") seek declaratory and injunctive relief enjoining the enforcement of N.J.S. 2C:58-2(a)(7) and N.J.S. 2C:58-3(i) ("One Gun Law") which prohibit the purchase of more than one handgun per month, as those statutes are directly preempted by 15 U.S.C. §5001(g)(ii) and cannot be saved either by a narrowing construction or by partial invalidation because the defect in the law arises from a fundamental, inextricably embedded feature of the New Jersey firearm regulatory scheme.

The One Gun Law also violates the Due Process clause of the Fourteenth Amendment to the United States Constitution as it purports to provide certain narrow exemptions to the restrictions of the One Gun Law without providing an adequate procedure to qualify for such exemptions.

Finally, Plaintiffs seek declaratory and injunctive relief preventing certain New Jersey municipalities from unlawfully restricting the number of permits to purchase a handgun that may be applied for, in violation N.J.A.C. 13:54-1.4(h).

This action seeks relief pursuant to 28 U.S.C. §2201 and 28 U.S.C. §2202, 42 U.S.C. §1983 and N.J.S. 10:6-2. The District Court had jurisdiction of the foregoing claims pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343(3), and 28 U.S.C. §1367.

The District Court issued an Opinion and an Order on June 14, 2010 disposing of some of the issues in the case. A1-A12. The District Court issued an Opinion and a Final Order on February 2, 2012 disposing of the remaining issues in the case. A13-25.

Plaintiffs timely filed a Notice of Appeal on March 2, 2012. A26. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291.

STATEMENT OF ISSUES

1.     Whether, in light of the direct pre-emption by 15 U.S.C. §5001(g)(ii) of the States' power to prohibit the sale of certain firearms, New Jersey's law prohibiting the sale of more than one "handgun" in a 30 day period, including the firearms protected by 15 U.S.C. §5001(g)(ii), is pre-empted. A50; A123; A119; A173; A1; A12.

2.     Whether the State of New Jersey, consistent with the Due Process clause of the Fourteenth Amendment, may purport to provide a right to obtain exemptions to the prohibition on purchasing more than one handgun within a 30 day period without providing a fair means to vindicate that right. A50; A123; A200; A119; A173; A229; A233; A13; A25.

3.     Whether the statutory right to obtain exemptions to the prohibition on purchasing more than one handgun within a 30 day period is a liberty or property

interest within the meaning of the Due Process Clause of the Fourteenth Amendment. A50; A123; A200; A119; A173; A229; A233; A13; A25.

4.      Whether the District Court should take supplemental jurisdiction of the pleaded state law claims against municipalities for restricting the issuance of handgun purchase permits in violation of N.J.A.C. 13:54-1.4(h) if one or more of the federal claims in this matter are reinstated on appeal. A50; A123; A200; A119; A173; A229; A233; A13; A25.

### STATEMENT OF RELATED CASES

Plaintiffs are not aware of any related proceedings, and this case has not previously been before this Court.

### STATEMENT OF THE CASE

Plaintiffs seek to enjoin the enforcement of the controversial, recently enacted statutes N.J.S. 2C:58-2(a)(7) and 2C:58-3(i). These statutory provisions unlawfully restrict handgun sales to one every 30 days in violation of an explicit federal preemption in 15 U.S.C. §5001(g)(ii) and overlay the State's pre-existing restrictive handgun permitting system. Federal law explicitly prevents states from prohibiting the sale of certain firearms (B-B, pellet and air guns), yet this is

precisely what the One Gun Law does, because under pre-existing New Jersey law, such firearms are inextricably embedded in the definition of handguns.

There is no credible argument that the One Gun Law does not act as a "prohibition" for purposes of pre-emption. Case law on preemption uniformly holds that even partial prohibitions such as time and quantity restrictions, even without an outright ban, constitute "prohibitions" that directly conflict with federal law.

The One Gun Law prohibits the sale of federally protected B-B and pellet firing airguns 29 days out of every 30 days or 96% of the time. This is a severe prohibition not only on the timing but also the quantity of sale of the protected firearms. Federal law precludes this. This is fatal to the One Gun Law, which cannot be saved by severance or a narrowing construction and can only be corrected by the Legislature.

The conflict with federal law arises as a result of New Jersey's basic definitions of "firearm" and "handgun," which were formulated decades ago and underlie all of New Jersey's broad gun control laws. These definitions were written so broadly that they also include the firearms pre-empted by federal law. Because the definitions are not part of the new One Gun Law itself, the flaw cannot be corrected through judicial construction or partial invalidation, and the

One Gun Law must fall. Only the New Jersey Legislature can avoid this by writing a new statute that is not in direct conflict with federal law.

The New Jersey Legislature made this same error in 1990, and District Judge Garrett E. Brown, Jr. struck down a portion of a gun law also preempted by 15 U.S.C. §5001(g)(ii) in *Coalition of New Jersey Sportsmen v. Florio*, 744 F. Supp. 602 (D.N.J. 1990). This time, the Legislature's error cannot be fixed by a court, and the entire statute must fall.

Enforcement of the One Gun Law should be enjoined for an additional reason. The One Gun Law contains extremely limited exemptions ("Exemptions") for collectors, competitors and inheritance ("Collectors and Competitors"), yet the procedure to qualify for such Exemptions renders the Exemptions illusory since it makes it virtually impossible for nearly all applicants to obtain the Exemptions. Accordingly, nearly all Collectors and Competitors are unable to engage in lawful transactions of more than one handgun per month, even though the New Jersey Legislature explicitly intended that they be permitted to do so. This violates their due process rights.

Finally, certain New Jersey municipalities are restricting the issuance of *permits* to purchase handguns (as distinct from actual handgun sales) to one per month even though New Jersey law explicitly provides that an applicant may obtain more than one permit at a time.

Plaintiffs commenced this action in the United States District Court for the District of New Jersey on January 17, 2010. A50. Although, the State Police ultimately promulgated procedures to apply for the Exemptions (which procedures are a subject of this appeal) the original Complaint sought to enjoin the One Gun Law, *inter alia*, because the State Police had entirely failed to promulgate procedures to apply for the Exemptions. *Id.*

Plaintiffs moved for a preliminary injunction on February 3, 2010. A72. As Defendants did not raise disputed factual issues, the motion was submitted and argued in the alternative as a motion for final injunctive relief. On February 24, 2010, the State Defendants (the Governor, Attorney General, and Superintendent of State Police) cross-moved to dismiss the Complaint. A119.

On March 10, 2010, Plaintiffs filed an Amended Complaint joining the City of Hackensack ("Hackensack") as a Defendant. A123. On April 16, 2010, Hackensack moved to dismiss the Amended Complaint. A173.

On May 25, 2010, the District Court heard argument on the pending motions. On June 14, 2010, the District Court denied Plaintiffs' motion for injunctive relief and granted the State Defendants' motion to dismiss Counts One and Two of the Amended Complaint which alleged federal preemption of the One Gun Law. The District Court erroneously held that the prohibitions of the One Gun law were not prohibitions within the meaning of 15 U.S.C. §5001(g)(ii).

However, prior to argument, the State Police had finally promulgated procedures to apply for the Exemptions and also issued a guidance document to municipalities disapproving the practice of limiting the number of handgun purchase permits that may be issued to an applicant. A164-66. The District Court ordered supplemental briefing as to the impact of these developments on counts in the Amended Complaint relating to the Exemptions and the municipal limitations on permits. A12.

In lieu of supplemental briefing, the District Court allowed, and on October 1, 2010, Plaintiffs filed, a Second Amended Complaint which added due process claims as to the newly promulgated procedures for obtaining the Exemptions (new Counts Three and Four) and which alleged that notwithstanding the State Police guidance document on permits, municipalities continued to violate State law by restricting the number of permits that an applicant could obtain (new Counts Five and Six). A198, A199, A200.

On January 20, and 21, 2011, respectively, the State Defendants and Hackensack filed motions to dismiss the Second Amended Complaint. A229, A233. On March 11, 2011, Plaintiffs moved for summary judgment as to Counts Three and Four (the Exemptions) and Five and Six (pendent State law claims regarding permits) of the Second Amended Complaint (Counts One and Two as to federal preemption having already been dismissed). A237.

The District Court heard argument on the pending motions on October 24, 2011. On February 2, 2012, the District Court denied Plaintiffs' summary judgment motion, granted Defendants' motions to dismiss as to Count Three and Four (the Exemptions) and declined supplemental jurisdiction of the remaining State law claims in Counts Five and Six of the Second Amended Complaint. A13, A25. The Court erroneously held that Plaintiffs have no property interest in the Exemptions sufficient to trigger a right to Due Process under the Fourteenth Amendment.

Plaintiffs timely filed their notice of Appeal on March 2, 2012. A26.

STATEMENT OF FACTS

1. *Background of New Jersey Handgun Permitting Law*

This lawsuit concerns New Jersey's controversial and recently enacted One Gun Law.

For many years, prior to enactment of the One Gun Law, New Jersey has had and still continues to have one of the most comprehensive and restrictive handgun permitting schemes in the nation. Before someone may purchase handguns in New Jersey, a purchaser must first obtain from his or her local police department a separate Permit to Purchase a Handgun ("Handgun Purchase Permit") for each handgun purchased, after undergoing extensive state and federal

background checks, and after providing comprehensive personal information, employment information, fingerprints and two references. A75-76. *See, generally*, N.J.S.A. 2C:58-3. *See also* N.J.S.A. 2C:58-2(a)(5)(a); N.J.A.C. 13:54-3.9(a)(5); N.J.A.C. 13:54-3.13.

This lengthy and complex process requires law enforcement to research the applicant's criminal background and mental health background, process fingerprints, interact with references, and perform other investigative functions to assure that the applicant is not disqualified. N.J.S.A. 2C:58-3(e); N.J.A.C. 13:54-1.4. This process frequently takes months (sometimes 6 months or longer), and applications can be and often are denied. Permits expire in 90 days, subject to one possible discretionary extension of another 90 days. A76-77.

After the months-long investigation period, the applicant must also undergo a separate federal electronic criminal background check ("NICS" or "Brady Check") at point of purchase, and the seller must collect and retain all details of the sale on state and federal forms and in an official logbook. Copies are sent to State and local police and retained by the seller. A77. *See* N.J.A.C. 13:54-3.13; 27 C.F.R. 478.102.

These requirements have been in effect for years and remain in effect after the passage of the One Gun Law. A78.

2. *The One Gun Law*

On or about August 6, 2009, then-Governor Corzine signed into law the One Gun Law which prohibits the delivery or purchase of more than one handgun within a 30 day period, even though Handgun Purchase Permits have already been issued pursuant to New Jersey law following months-long background investigations. A78. [1]

The One Gun Law amended N.J.S. 2C:58-2(a) to provide:

> (7) A dealer shall not knowingly deliver more than one handgun to any person within any 30-day period.

The One Gun Law amended N.J.S. 2C:58-3(i) to provide:

> Restriction on number of firearms person may purchase. Only one handgun shall be purchased or delivered on each permit and no more than one handgun shall be purchased within any 30-day period . . .

This language puts the One Gun Law squarely in fatal conflict with federal law, which expressly preempts a state from prohibiting a certain class of firearms (B-B, pellet and air guns). Federal law is clear that severe prohibitions on timing and quantity such as that which the One Gun Law imposes are unlawful. *See,*

---

[1] Though not directly relevant to this matter's disposition, advocates of the One Gun Law claimed that it would address illegal gun trafficking by making it more difficult for criminals to buy handguns in bulk. Opponents pointed out that traffickers already circumvent New Jersey's strict permitting process, and, therefore, the law would have no impact on illegal gun trafficking. The first state to enact such a law in 1975, South Carolina, repealed the law after 29 years of experience, and Virginia repealed its law just this year after determining that it was ineffective.

*infra*, at 31. The conflict is so deeply embedded in decades-old New Jersey statutes, it can only be remedied by the Legislature. *See, infra,* at 40.

On June 26, 2009, after passage of the One Gun Law by the Legislature, but prior to signature by the Governor, the Governor issued Executive Order 145, creating a nine-member Firearms Advisory Task Force (the "Task Force") allegedly "to ensure that lawful firearms collectors and competitive and recreational firearms users are not adversely affected by the [One Gun Law]." A78; A88.

The membership of the Task Force included State Police Lieutenant Colonel Christopher Andreychak as designee for Defendant Superintendent of State Police Colonel Rick Fuentes. A79; A92.

Pursuant to the recommendations of the Task Force, on or about January 12, 2010, Governor Corzine signed amendments creating limited exemptions to the One Gun Law (the "Exemptions"). A79. The Exemptions, set forth in N.J.S. 2C:58-3.4, provide as follows:

> a. The superintendent may grant an exemption from the restriction on the purchase of handguns set forth in subsection i. of N.J.S. 2C:58-3 if the applicant demonstrates to the satisfaction of the superintendent that the applicant's request meets one of the following conditions:

(1) The application is to purchase multiple handguns from a person who obtained the handguns through inheritance or intestacy [the "Inheritance Exemption"];

(2) The applicant is a collector of handguns and has a need to purchase or otherwise receive multiple handguns in the same transaction or within a 30-day period in furtherance of the applicant's collecting activities. As used in this paragraph, "need" shall include, but not be limited to, situations where there is a reasonable likelihood that the additional handguns sought to be purchased would not be readily available after the 30-day period, that it would not be feasible or practical to purchase the handguns separately, or that prohibiting the purchase of more than one handgun within a 30-day period would have a materially adverse impact on the applicant's ability to enhance his collection . . . [the "Collector Exemption"]; or

(3) The applicant participates in sanctioned handgun shooting competitions and needs to purchase or otherwise receive multiple handguns in a single transaction or within a 30-day period, and the need is related to the applicant's competitive shooting activities, including use in or training for sanctioned competitions [the "Competitor Exemption"].

b. The applicant shall certify, on a form prescribed by the superintendent, the specific exemption sought and the particular handguns to be purchased . . . .

d. Notwithstanding the provisions of the "Administrative Procedure Act," P.L.1968, c.410 (C.52:14B-1 et seq.), the superintendent may adopt, immediately upon filing with the Office of Administrative Law, such temporary regulations as the superintendent deems necessary to implement the provisions of P.L.2009, c.186 (C.2C:58-3.4 et al.) . . . .

Section 5 of L. 2009, c.186, provides as follows:

> 5. This act shall take effect immediately; provided however, the Superintendent of State Police may take any anticipatory administrative action prior to the effective date necessary for its timely implementation.

To obtain any of the Exemptions, a person must apply to the Superintendent of the State Police (the "Superintendent").  Although the Superintendent's designee sat on the Task Force for many months prior to the One Gun Law's effective date, and despite the statute's call for "timely implementation" of the Exemptions and authorization of "anticipatory administrative action," there was not any established procedure for applicants to apply for and obtain any of the Exemptions until in or about April 2010.  A82.

Thus, at the time the One Gun Law took effect, qualified individuals could not take advantage of the Exemptions even though the Legislature intended that they be able to do so.

Although that was eventually remedied, in theory, in or about April 2010, the forms ultimately promulgated by the Superintendent are legally insufficient to accomplish their purpose of making the Exemptions available – and in fact they operate to frustrate that purpose – because they require the applicant and  licensed dealer to identify the particular handguns to be purchased by serial number *at the time of first submitting the application for the Exemption*.   A246.  This requires a

licensed dealer to take specific collectible firearms off the market for the entire time needed to await state approval, and to forsake sales to other buyers during the waiting period, with no certainty about whether approval will even be granted months later.  It is a procedure whose very design makes it difficult or impossible for the average collector to obtain an exemption. *See, infra,* at 21, 58.

### *3.  The Plaintiffs*

Plaintiff Scott L. Bach ("Bach") is an attorney and President of Plaintiff Association of New Jersey Rifle and Pistol Clubs ("Association").  A75.

The Association represents the interests of hundreds of thousands of target shooters, hunters, competitors, and other law abiding firearms owners.  Among the Association's purposes is aiding such persons and supporting and defending the right to keep and bear arms, including the right of its members and the public to purchase and possess firearms.  A75.

Bach is an avid firearms collector.  Among other things, he would like to add to his collection a matched set of pistols. Typically, the value of a matched set is in owning the pieces together, so they are unlikely to be sold individually.  A82.

Without the Exemptions, people like Bach, who have no involvement in the criminal activities that were the One Gun Law's target, cannot pursue many lawful collection activities.

In January 2010, Bach applied for three Handgun Purchase Permits. He then telephoned the State Police Firearms Unit to ask how to apply for the Exemptions and was directed to Lieutenant David Schlueter, who said there was no procedure in place and that he did not know when there would be a procedure. A83.

The Lieutenant did not even know that the Exemptions were signed into law days earlier. He said he had received no information about the amendments or their content, could not take any action until he had that information, and suggested that Bach contact his legislator. He also claimed that all this was done "without our knowledge," even though the Superintendent's designee sat on the Task Force for many months prior to the One Gun Law's effective date and participated in formulating the recommendations that resulted in the Exemptions. A83-84.

The Superintendent was completely unprepared for the implementation of the Exemptions, despite the Legislature's express call in the statute for "timely implementation" and authorization of "anticipatory administrative action." As of the time the One Gun Law took effect, the honest persons whom the Legislature intended to exempt had no procedure to invoke the Exemptions. The State appeared wholly unconcerned with the rights of the law abiding. A84-85.

Also, when Bach submitted his application for three Handgun Purchase Permits, his local Police Department initially advised that he could only obtain one *permit* per month (as opposed to one *handgun* per month), which could translate

into one handgun every four or five months or longer due to permitting delays -- well beyond the intended statutory limitation.  A85.

Pre-existing New Jersey law specifically allows application for multiple permits.[2]  However, at the time, the Superintendent had provided no guidance to local police agencies on this issue.  With 566 municipalities in New Jersey, this was a recipe for inconsistency and chaos.  Again, given their Task Force participation, the State Police should have been well prepared for enactment of the One Gun Law and the Exemptions.  Yet, no provision had been made to ensure that local police departments were prepared to protect the rights of the law abiding gun owner.   A85-86.

The Association received multiple complaints from its members regarding rationing of *permits* to one per month and the lack of any procedure for invoking the statutory Exemptions.  A86.

New Jerseyans are entitled to the correct and prompt implementation of new laws.  This law was signed nearly *five months* before the effective date of January 1, 2010, yet the implementation of the law was chaotic and without regard to persons such as the Plaintiffs.

---

[2] As a practical matter, a non-exempt individual can receive six permits at once and use all six lawfully under the One Gun Law; at the rate of one per month, the first three can be used prior to their 90-day expiration date, and the second three can be extended for the one additional 90-day term.

The record further illustrates the problems with the One Gun Law and the absence of implementation guidelines.

- Plaintiff Kaare A. Johnson ("Johnson") is a retired middle school teacher and World War II veteran residing in Washington Township, Morris County. A94.

- Plaintiff Vincent Furio ("Furio") sells business credit insurance, is a competitive shooter and hunter, and resides in the City of Hackensack. A153.

- Plaintiff Steven Yagiello ("Yagiello") is a crew supervisor for the New Jersey Division of Fish and Wildlife and a resident of Little Egg Harbor Township. A102.

- Jonathan Friedman, M.D. is an oral and maxillofacial surgeon and a former New York State Trooper living in Mendham. A100.

- Richard Gajda ("Gajda") is a firearms collector, instructor and competitive shooter who lives in Clinton Township. A108.

- Daniel Strachman is a financial consultant, author, former adjunct professor at New York University School of Continuing Education, a resident of Fanwood, and he volunteers with the Fanwood Rescue Squad. A105.

- Alejandro Alonso is a truck driver and a resident of Harrison. A255.

Johnson is a collector of vintage Colt revolvers, but he cannot properly do so without the Collector Exemption because these valuable revolvers become available randomly and may show up more than one at a time. A95.

As avid collectors and competitors, Furio and Gajda are similarly impacted by the inability to obtain the Exemptions, since they routinely apply for and use multiple Handgun Purchase Permits.  A108-10; A153-57.

Johnson, Gajda and the others have all experienced the chaos surrounding implementation of the One Gun Law.  Each was told by his local police department when applying for multiple Handgun Purchase Permits that he could only receive one permit.  Several were told that they could not even *apply* for a second permit until after the first permit was used.  Because the application process takes months, that could mean *two or three guns per year* rather than one gun per 30 days.  While Washington Township ultimately corrected its error, that was not until Washington was named as a Defendant in this lawsuit.

Plaintiff Bob's Little Sport Shop, Inc. ("Bob's"), a federally and State licensed retail firearms dealer in Glassboro, New Jersey, has encountered the same issues.  Many of Bob's customers are confused about how the One Gun Law works, yet, other than regarding the Exemptions, neither the Attorney General nor the State Police have issued any guidance to retailers regarding how to fulfill their obligations under the new law.  A111.

Collectors often wish to purchase matched pistol sets or collections sold in lots and they now cannot do so, as a practical matter, even if they qualify for one of the Exemptions.  *Id.*  Competitors often engage in multi-gun event categories

which require the competitor to have a set of handguns in several specified calibers, which usually are purchased together. They cannot do this because, even though the Superintendent eventually established procedures to apply for the Exemptions, the manner in which the Exemptions have been implemented renders it nearly impossible for applicants to obtain the Exemptions. A112-13.

### 4. The Exemptions are Illusory

Subsequent to the commencement of this lawsuit, in or about April of 2010, the Superintendent finally promulgated forms to be used in applying for the Exemptions ("Exemption Forms"). Attached to the Supplemental Bach Cert. as Exhibit "A" are forms S.P. 015 and S.P. 016 which are, respectively, the Application for Multiple Handgun Purchase Exemption (S.P. 015) and the Seller/Transferor Certification (S.P. 016). A242, A246-49.

As indicated on the forms, themselves, S.P. 015 must be completed by the applicant and S.P. 016 must be completed by the seller. Both forms must then be submitted to the Superintendent as part of the application for an Exemption. A242.

Further, both forms require that the applicant and the seller identify in advance, including by serial number, the specific multiple handguns sought to be purchased, not just the make and model intended to be purchased. *Id.*

In other words, the only way to even apply for an Exemption is for an applicant to first identify in advance of the application which specific units of the particular makes and models of handguns he wishes to purchase and the seller from which he wishes to purchase them. He must then convince the seller to (1) not sell those particular handguns to anyone else, (2) fill out the S.P. 016 and (3) wait an indeterminate period of time until the applicant receives a disposition from the Superintendent. Based on experience with other firearms permit applications in the State of New Jersey, this waiting period can be many months. A242-43.

Conceptually, the process appears designed to frustrate most legitimate attempts to qualify for the Exemptions. This is because, except under unusual circumstances, a licensed dealer is unlikely to be willing to hold multiple handguns off the market while the applicant waits many months to obtain a disposition from the Superintendent. The process requires licensed dealers to agree not to sell the specifically identified handguns to another purchaser for an extended period of time, something patently unreasonable. A243.

So, by way of example, if a decedent's estate in Pennsylvania included a rare collection of ten Colt single action revolvers, a New Jersey collector would be at a dramatic disadvantage in attempting to purchase that collection. The seller would be extremely unlikely to wait for the New Jersey collector to wade through the lengthy bureaucratic morass of the Exemption application, without any certainty

about whether an Exemption will be granted at the end of the wait.  He would, instead, sell it to someone not from New Jersey.  A243-44.

Prior to the One Gun Law, such a New Jersey collector could, and likely would, have multiple Handgun Purchase Permits already in hand waiting for such an opportunity.  This was a common practice and, in fact, the Certification of Kaare Johnson confirms that he regularly did that very thing so that he could immediately acquire collectable handguns as soon as he came across them.  A244.

Thus, the Exemptions, as enacted, make it exceptionally difficult for a qualified purchaser to make legitimate multiple purchases as intended by the Legislature.  *Id*.

And, in fact, this was exactly Plaintiff Bach's experience when he attempted to make use of the new forms after they were first issued.  Bach made several attempts to convince sellers to hold multiple handguns for him so that he could apply for and obtain a Collector Exemption.  Such sellers either flat out refused (reacting as if the request to wait an indeterminate period of time while Bach applied for a Collector Exemption was unreasonable and unacceptable) or never bothered to respond at all.  *Id*.

Accordingly, although the Legislature explicitly intended that Collectors and Competitors be able engage in the same multiple handgun purchases they could prior to the One Gun Law, the manner in which the Exemptions have been enacted

makes the Exemptions substantially illusory. The Exemptions create only the appearance of exemptions which in reality do not exist for most collectors, because the way they are crafted makes their exercise extremely difficult and nearly impossible. A245.

Thus, most qualified individuals cannot take advantage of the Exemptions even though the Legislature intended that they be able to do so.

5. *The Misconduct of Hackensack and other Municipalities Demonstrates the Chaos Surrounding the One Gun Law.*

The egregious unlawful conduct of Hackensack and other municipalities in rationing handgun purchase *permits* in violation of N.J.A.C. 13:54-1.4(h) (which explicitly allows an applicant to obtain more than one purchase permit at a time) illustrates both the substantial chaos that has ensued in the wake of the enactment of the One Gun Law and also demonstrates why, on remand, the District Court should reinstate Counts Five and Six of the Second Amended Complaint pursuant to supplemental jurisdiction under 28 U.S.C. §1367 so that this particular form of misconduct can be addressed once and for all .

Defendant Hackensack was one of a series of municipalities Plaintiffs and Plaintiffs' witnesses found were unlawfully limiting the number of Handgun Purchase Permits that could be applied for to one per month, with some municipal

policies being that they could not even *apply* for a second permit until after the first permit was used.  Because the application process takes months, that could mean *two or three guns per year* rather than one gun per 30 days.  *See*, *generally*, A75, A94, A100, A102, A105, A108, A153, A240, A255.

For example, when the One Gun a Month Law went into effect in January, 2010, the Harrison, New Jersey Police Department refused to issue any more than one Handgun Purchase Permit per month.  Since that time, affiant Alejandro Alonso, a resident of Harrison, applied for multiple Handgun Purchase Permits on two occasions.  On both occasions, although he applied for two Handgun Purchase Permits, the Police Department refused to issue any more than one.  *Id.*

On November 11, 2010, he applied for two permits.  He received notification that his permits were ready on March 11, 2011.  When he went to pick up his permits, he was told that he would only receive one permit even though he applied for two.  *Id.*

Former defendants Washington and Little Egg Harbor were also engaging in similar misconduct by improperly rationing Handgun Purchase Permits. However, shortly after the commencement of this action, they settled with the Plaintiffs and agreed to the entry of consent orders acknowledging their obligation to accept applications for and to issue multiple Handgun Purchase Permits.  They paid Plaintiffs' counsel fees.  A159; A280.

Hackensack also claimed to have reversed its unlawful policy of refusing the issuance of multiple permits. However, unlike Washington and Little Egg Harbor, Hackensack has steadfastly refused to memorialize this acknowledgement in any official act of the City, in any agreement or in any court document.

Plaintiffs later came to understand why Hackensack was reluctant to do so. Notwithstanding the City's representations to the District Court in filed papers on March 16, 2010 that the City was no longer restricting permits to one per month, it turned out that for at least a year after that promise to the Court, Hackensack played fast and loose with the Court and with the law, continuing to refuse in practice to issue more than one Handgun Purchase Permit at a time.

In its previous motion to dismiss the Amended Complaint, Hackensack argued as follows in its papers:

> . . . after receiving the Amended Complaint, the City Attorney reviewed its application process with the appropriate police officers forthwith and insured that applications for multiple permits are accepted. Accordingly, there is no basis for the Court to Order injunctive relief in this situation. The relief sought is moot.

A251.

However, on February 15, 2011, Furio went back to the Hackensack Police Department to apply for four Handgun Purchase Permits. A252.

When he arrived, he approached the clerk's desk and told her that he was applying for four permits. The clerk turned around, pointed to a sign hanging on the wall and said that he could only apply for one per month. The sign on the wall read as follows:

```
ATTENTION:

FIREARM RULE: APPLICANT CAN ONLY
APPLY FOR ONE PISTOL PERMIT PER
MONTH
```

*Id.*; A254, photograph of the aforesaid sign, taken on February 15, 2011.

Thus, notwithstanding the representations of Hackensack to Plaintiffs *and to the District Court* nearly a year earlier, as of February 15, 2011, Hackensack still had a sign up and the clerk was still instructing applicants that they could only apply for one Handgun Purchase Permit per month.

The foregoing demonstrates that there remains a substantial problem with municipalities' egregious violations of law in the wake of the One Gun Law. Although the District Court declined supplemental jurisdiction under 28 U.S.C. §1367 because all federal claims had been dismissed, upon reversal of the judgments below, on remand, this Court should order the District Court to reinstate Counts Five and Six which allege these State law claims.

SUMMARY OF ARGUMENT

The facts of this case are not in dispute.  The One Gun Law brings within its prohibitions, *by design*, the sale of BB and pellet firing air guns -- precisely that which Congress provided that States may not do.

The One Gun Law absolutely prohibits the sale of federally protected B-B and pellet firing airguns 29 days out of every 30 days or 96% of the time.  This is a prohibition not only on the timing but also the quantity of such guns.  Federal law does not permit this.   Case law on preemption uniformly holds that partial prohibitions such as severe time and quantity restrictions, even without an outright ban, constitute "prohibitions" that directly conflict with federal law.    The fact that the law entirely prohibits the sale of such guns 96% of the time defeats the very purpose of 15 U.S.C. §5001(g)(ii), which is to prevent substantial interference with the sale of such guns.   There is no exception in §5001(g)(ii) which permits prohibitions that materially impact quantity or timing.   Such prohibitions materially impact such sales, and that is what federal law prohibits.  Thus, the One Gun Law is preempted.

The conflict with federal law arises as a result of New Jersey's basic definitions of "firearm" and "handgun," which were formulated decades ago, exist outside the One Gun Law, are inextricably embedded in and underlie all of New Jersey's broad gun control laws.  Because they are not part of the new One Gun

Law itself, the flaw cannot be corrected through judicial construction or through partial invalidation, and the One Gun Law must fall. Only the New Jersey Legislature can avoid this direct conflict with federal law by writing a new statute that is not in conflict with federal law.

Additionally, the One Gun Law's extremely limited Exemptions are entirely illusory because the procedure to qualify for such Exemptions makes it extremely difficult if not impossible for an applicant to actually obtain the Exemptions. Accordingly, most Collectors and Competitors are unable to engage in lawful transactions of more than one handgun per month, even though the New Jersey Legislature explicitly intended that they be permitted to do so. This violates their due process rights, because such Collectors and Competitors have a legitimate claim of entitlement to such approval if they satisfy the criteria set forth in the law.

Finally, as described above, certain New Jersey municipalities are unlawfully restricting the issuance of *permits* to purchase handguns to one per month even though New Jersey law explicitly provides that an applicant may apply for more than one at a time. Upon reinstatement by this Court of the federal claims dismissed by the District Court, the District Court should be required to hear these pendent State law claims.

## I.    THE STANDARD OF REVIEW FOR ALL ISSUES IS DE NOVO

"This Court reviews challenges to the constitutionality of a statute under a *de novo* standard of review." *See United States v. Fullmer,* 584 F.3d 132, 151 (3d Cir. 2009) (citation omitted). "[W]e review a district court's interpretation of the Constitution *de novo*"), *See United States v. Cheeseman,* 600 F.3d 270, 284 n.9 (3d Cir. 2010) *cert. denied*, 131 S. Ct. 636 (2010). Here the preemption of State law by federal statute and the violation of the Due Process Clause of the Fourteenth Amendment renders the challenged State law unconstitutional.

In any event, "[t]he standard of review for a dismissal under Fed. R. Civ. P. 12(b)(6) is *de novo*." *Phillips v. County of Allegheny*, 515 F.3d 224, 230 (3rd Cir. 2008) (citation omitted). And with respect to denial of Plaintiffs' summary judgment motion, review "is plenary, and we apply the same standard as the District Court to determine whether summary judgment was appropriate" under Fed. R. Civ. P. 56(c). *State Auto Prop. & Cas. Inc. Co. v. Pro Design, P.C.*, 566 F.3d 86, 89 (3rd Cir. 2009) (citation omitted).

Finally, on appeal from a District Court's denial of injunctive relief, this Court must "determine whether the District Court erred in applying the law, made a clear mistake in considering the proof, or abused its discretion." *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.,* 222 F.3d 132 (3d. Cir. 2000). Here,

since the District Court based its denial of injunctive relief on its interpretation of the applicable statutes, the Court must exercise *de novo* review of the District Court's analysis. *Id.*

II.  THE ONE GUN LAW IS PREEMPTED BY 15 U.S.C. §5001(G)(II)

A.  B-B AND PELLET-FIRING AIR GUNS ARE "HANDGUNS" UNDER NEW JERSEY LAW

State law may be preempted by federal law in two ways.  First, if Congress evidences an intent to occupy a field, any state law within that field is preempted ("Field Preemption").  *Silkwood v Kerr-McGee Corp.,* 464 U.S. 238, 248 (1984).

Alternatively, even where Congress has not manifested such an intent, state law is still preempted to the extent it actually conflicts with federal law or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress ("Conflict Preemption").  *Id.*

Here, the One Gun Law directly conflicts with federal law and is therefore preempted.  The key operative provisions of the One Gun Law are as follows:

A dealer shall not knowingly deliver more than one handgun to any person within any 30-day period.

N.J.S. 2C:58-2(a)(7).

Restriction on number of firearms person may purchase. Only one handgun shall be purchased or delivered on each permit and *no more*

> *than one handgun shall be purchased within any 30-day period . . .*
> [Emphasis supplied.]

N.J.S. 2C:58-3(i).

Under longstanding New Jersey law, the term "handgun" is defined as follows in N.J.S. 2C:39-1(k):

> "Handgun" means any pistol, revolver or other firearm originally designed or manufactured to be fired by the use of a single hand.

Under longstanding New Jersey law, the term "firearm" is defined as follows in N.J.S. 2C:39-1(f):

> "Firearm" means any handgun, rifle, shotgun, machine gun, automatic or semi-automatic rifle, or any gun, device or instrument in the nature of a weapon from which may be fired or ejected any solid projectable ball, slug, pellet, missile or bullet, or any gas, vapor or other noxious thing, by means of a cartridge or shell or by the action of an explosive or the igniting of flammable or explosive substances. *It shall also include, without limitation, any firearm which is in the nature of an air gun, spring gun or pistol or other weapon of a similar nature in which the propelling force is a spring, elastic band, carbon dioxide, compressed or other gas or vapor, air or compressed air, or is ignited by compressed air, and ejecting a bullet or missile smaller than three-eighths of an inch in diameter, with sufficient force to injure a person.* [Emphasis added.]

In *Coalition of New Jersey Sportsmen v. Florio*, 744 F. Supp. 602, 605 (D.N.J. 1990), the District Court held that under New Jersey law, B-B guns and pellet-firing air guns plainly fall within the definition of "firearm." *See also State*

*v. Mieles*, 199 N.J. Super. 29, 36-37, 488 A.2d 235, 239 (App. Div. 1985), *certif. denied*, 101 N.J. 265 (1985) (" . . . we hold that the [B-B] gun in this case was a firearm within N.J.S.A. 2C:39-1(f)").

Accordingly, any B-B gun or pellet-firing air gun "designed or manufactured to be fired by the use of a single hand" is a type of handgun under New Jersey law. In *Mieles*, the Appellate Division upheld a conviction for "unlawful possession of a handgun" where the defendant was found in possession of a "spring action BB pistol." *Id*. at 31, 36-37. *See also State v. Rackis*, 333 N.J. Super. 332, 336, 345, 755 A.2d 649, 650, 655 (App. Div. 2000) (upholding indictment for possession of handgun without permit and possession of handgun by convicted felon where defendant was in possession of "Crosman BB pistol").

Accordingly, it is well settled in New Jersey that a B-B or pellet-firing air pistol is a handgun. Because the One Gun Law applies to all handguns without distinction, the One Gun Law prohibits the sale of a B-B or pellet-firing air pistol within 30 days of the sale of another handgun.

B.  STATE LAWS PROHIBITING THE SALE OF B-B AND PELLET-FIRING AIR PISTOLS ARE EXPRESSLY PREEMPTED BY FEDERAL LAW

15 U.S.C. §5001(g)(ii) provides as follows:

(g) *Preemption of State or local laws or ordinances*; exceptions

The provisions of this section shall supersede any provision of State or local laws or ordinances which provide for markings or identification inconsistent with provisions of this section provided that *no State shall-- . . .*

(ii) *prohibit the sale (other than prohibiting the sale to minors) of traditional B-B, paint ball, or pellet-firing air guns that expel a projectile through the force of air pressure.* [Emphasis supplied.]

New Jersey's One Gun Law applies to all handguns, including B-B and pellet-firing air guns, and therefore, the One Gun Law is subject to the restrictions of 15 U.S.C. §5001(g)(ii).

C. THE ONE GUN LAW IS A PROHIBITION ON THE SALE OF B-B AND PELLET-FIRING AIR GUNS

The One Gun Law is a clear prohibition on the sale of B-B and pellet-firing air guns for purposes of federal pre-emption. The District Court erroneously held that the One Gun Law was not a "prohibition" because it only regulated the timing of purchases. However, the One Gun Law prohibits the sale of the federally protected firearms 29 days out of every 30, and 352 days out of every calendar year – more than 96% of the time. Under applicable case law, this is a clear prohibition for federal pre-emption purposes. See *Coalition of New Jersey Sportsmen; New York State Motor Truck Association, Inc. v. City of New York,* 654

F. Supp. 1521 (S.D.N.Y. 1987), *aff'd*, 833 F.2d 430 (2d Cir. 1987); *U.S. v Florida*, 585 F. Supp. 807, 809-10 (N.D. Fla. 1984).

State law interference with the purchase and sale of B-B and pellet-firing air guns need not be an outright ban to be an unlawful prohibition in violation of 15 U.S.C. §5001(g)(ii).  In *Coalition of New Jersey Sportsmen*, the district court held that New Jersey's assault firearm law prohibited the sale of B-B and pellet-firing air guns and was therefore preempted by 15 U.S.C. §5001(g)(ii).  Though the court found that the law did not constitute an outright prohibition, since it provided for a permitting and registration process, 744 F. Supp. at 608, the court nonetheless held that the law constituted a *de facto* prohibition and thus was preempted.  Id. Accordingly, the court granted the plaintiffs preliminary injunctive relief, enjoining enforcement of the offending statute. *Id*. at 609.

In *Rackis*, the Appellate Division undertook a similar analysis of 15 U.S.C. §5001(g)(ii) in the context of two New Jersey statutes which criminalize (1) possession of a handgun without a permit and (2) possession of a handgun by a convicted felon.  The Appellate Division, however, found that there was no preemption because, unlike here, the New Jersey statutes in question in *Rackis* only governed *possession* and did not impact the *sale or purchase* of handguns. 333 N.J. Super. at 344.  The court noted:

> Congress has neither explicitly nor implicitly prohibited
> states from regulating the *use and possession* of BB guns.
> [Emphasis supplied.]

Id.

The District Court's holding in *Coalition of New Jersey Sportsmen*, that a state law need not constitute an outright and complete ban on the sale of B-B or pellet-firing air guns to run afoul of 15 U.S.C. §5001(g)(ii), is consistent with case law from other districts.

In *New York State Motor Truck Association*, the court found that a New York City regulation imposing time of day restrictions on the use by tandem tractor-trailers of portions of the National System of Interstate and Defense Highways ("Interstate Highway System") passing through New York City was preempted by federal law.

The plaintiff challenged the regulation as preempted under the Surface Transportation Assistance Act ("STAA"), 49 U.S.C. §2311(c), which provided:

> No State shall prohibit commercial motor vehicle combinations
> consisting of a truck tractor and two trailing units on any segment of
> the National System of Interstate and Defense Highways . . . .

The court held that a partial prohibition, such as a time of day restriction, was a prohibition, though the prohibition was not total, and was therefore preempted by the STAA:

> Enforcement of regulations limiting use of the Interstates to certain hours of the day necessarily prohibits use during the other hours of the day.

654 F. Supp. at 1535. *See also U.S. v Florida*, 585 F. Supp. at 809-10 (Florida statute with day and hour restrictions for trucks was "prohibition" in conflict with STAA).

Here, as in the cases cited above, while the One Gun Law is not an outright, total ban, it is a prohibition nevertheless, and a substantial one at that. As in *New York State Motor Truck Association* and *United States v Florida*, a prohibition at certain times and on certain days is enough to conflict with the federal law.

Under the One Gun Law, once a person purchases a single handgun, that person is absolutely prohibited from purchasing a B-B or pellet handgun for the next 29 days, under threat of criminal penalty. In fact, a person who purchases a handgun once every 30 days in a calendar year would be prohibited from purchasing a B-B or pellet handgun 352 days out of the year -- more than 96% of the time!

A 96% prohibition is fundamentally and directly in conflict with 15 U.S.C. §5001(g)(ii). The prohibition contained in the One Gun Law far exceeds those found to be preempted in *New York State Motor Truck Association* and *United State v Florida*.

These cases stand for the proposition that timing regulations do constitute prohibition, because as with time of day and hour restrictions on the use of the highways, restrictions on the timing of the purchase of handguns can and do materially interfere with the very handgun purchases that are protected under federal law.

The prohibition is not only material, it is dramatic, and as the District Court held in *Coalition of New Jersey Sportsmen*, 744 F. Supp. 602 (D.N.J. 1990), a prohibition need not be absolute to be preempted. The notion that a prohibition 96% of the time is not really a prohibition is absurd.

Further, the One Gun Law does not just regulate timing; it also regulates quantity, with the impact of an outright prohibition. Once someone buys one handgun, he is absolutely prohibited from buying another for the next 29 days.

As *Rackis* demonstrates, there are a broad variety of other regulations that are unaffected by 15 U.S.C. §5001 (g)(ii), including felony possession laws and permitting requirements.

This analysis is consistent with the intent behind 15 U.S.C. §5001(g)(ii). In *Rackis*, the New Jersey Appellate Division found that:

> . . . in order to protect manufacturers and the rights of the public to buy and possess such guns, Congress enacted a specific proviso precluding states from prohibiting the sale of antique replicas and pellet firing air guns. Notably, the express language of §5001(g) only

> precludes states from prohibiting the sale of such guns
> and is silent as to whether a state can in fact regulate who
> can obtain these guns.

333 N.J. Super. at 343. The court, in *Rackis*, took great pains to carefully distinguish between regulating the *possession and use by dangerous prohibited persons*, and restricting the purchase by law abiding individuals, whom the federal law is, by the court's own analysis, designed to protect. Thus, the substantial interference in the purchase and sale of such B-B and pellet guns by the law abiding violates federal law, and the One Gun Law is preempted.

III   THE ONE GUN LAW CANNOT BE SAVED BY A NARROWING CONSTRUCTION OR BY SEVERING INVALID CLAUSES

Because the conflict between the One Gun Law and federal law is inherent in the underlying definitions that New Jersey has employed for decades throughout its gun control statutes, the One Gun Law cannot be saved through a narrowing construction or severance.

> Courts employ two mechanisms to preserve unconstitutional
> statutes from wholesale invalidation. . . . First, if a statute is readily
> susceptible to a narrowing construction that will remedy the
> constitutional infirmity, the statute will be upheld. . . . If the
> language is not readily susceptible to a narrowing construction, but
> the unconstitutional language is severable from the remainder of
> the statute, 'that which is constitutional may stand while that which
> is unconstitutional will be rejected.'

*Citizens for Responsible Government State Political Action Comm. v. Davidson,* 236 F.3d 1174, 1194 (10th Cir. 2000) (citations omitted).  *Accord ACLU v. Reno*, 217 F.3d 162, 177 (3d Cir. 2000), *vacated on other grounds*, 535 U.S. 564 (2002).

As shown below, neither option is available in this case.  Accordingly, the One Gun Law must be struck down in its entirety.


A.    THE ONE GUN LAW CANNOT BE SAVED BY A NARROWING CONSTRUCTION

It is well settled that federal courts are "without power to adopt a narrowing construction of a state statute unless such a construction is reasonable and readily apparent."  *Stenberg v. Carhart*, 530 U.S. 914, 944 (2000) (quoting *Boos v. Barry,* 485 U.S. 312, 330 (1988)).  The statute must be "genuinely susceptible" to two interpretations.  *Id.* at 945 (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 237-239 (1998)).   As this Court noted recently, "[i]f a statute is 'readily susceptible' to a limiting interpretation that would make it constitutional, the statute must be upheld, but *'we will not rewrite a state law to conform it to constitutional requirements.'*" (Emphasis added.)  *Conchatta Inc. v. Miller*, 458 F.3d 258, 263 (3d Cir. 2006), *cert. denied*, 549 U.S. 1246 (2007) (quoting *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 397 (1988)).  *See also Sypniewski v.*

*Warren Hills Regional Bd. of Educ.*, 307 F.3d 243, 259 (3d Cir. 2002), *cert. denied*, 538 U.S. 1033 (2003); *Planned Parenthood of Central New Jersey v. Farmer,* 220 F.3d 127, 135-136 (3d Cir. 2000). *Accord Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 333 (6th Cir. 2007), *cert. denied sub nom. Standing Together to Oppose Partial-Birth-Abortion v. Northland Family Planning Clinic, Inc.*, 128 S. Ct. 872 (2008), *and cert. denied sub nom. Cox v. Northland Family Planning, Inc.*, 552 U.S. 1096, 128 S. Ct. 873 (2008); *ACLU of Nevada v. Heller*, 378 F.3d 979, 986 (9th Cir. 2004), *Vermont Right to Life Comm. v. Sorrell*, 221 F.3d 376, 386 (2d Cir. 2000); *Karlin v. Foust*, 188 F.3d 446, 474 (7th Cir. 1999) ("[W]hile a federal court may construe a state statute in a manner that saves it against constitutional attack if the statute is 'readily susceptible' to the construction, the court cannot 'slice and dice a state law to "save" it; we must apply the Constitution to the law the state enacted and not attribute to the state a law we could have written to avoid the problem.'") (citation omitted); *Phelps v. Hamilton*, 59 F.3d 1058, 1070 (10th Cir. 1995) ("The federal courts do not have the power to narrow a state law by disregarding plain language in the statute just to preserve it from constitutional attack."); *Virginia Society for Human Life, Inc. v. Caldwell*, 152 F.3d 268, 270 (4th Cir. 1998); *Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 691 (8th Cir. 1992) ("It is not our function to rewrite the statute to cure all its constitutional infirmities").

The federal courts' reluctance to rewrite state laws stems, in part, from federalism concerns. *See, e.g.*, *American Meat Institute v. Barnett*, 64 F. Supp. 2d 906, 917 (D.S.D. 1999). Even without these concerns, however, courts strive to avoid usurping the legislative function. *See, e.g.*, *St. James v. Department of Environmental Protection and Energy*, 275 N.J. Super. 342, 350, 646 A.2d 447, 451 (App. Div. 1994) ("We will not graft a whole regulatory section into the statute to permit its application in a constitutionally acceptable manner. It is not the function of the court to legislate. It is the court's duty to interpret, and in so doing, to give effect to the language employed by the legislative body in order to properly effectuate the legislative design. . . . *When construing a statute, the court should not write additional qualifications omitted by the Legislature*.")(emphasis added).

Because the conflict at issue is inextricably embedded in pre-existing state law, and not in the new statute itself, the One Gun Law is not "readily susceptible" to a narrowing construction to save it from invalidation. As shown above, the state may not prohibit the sale of B-B guns or pellet-firing air guns because such a prohibition is preempted by federal law. Thus, the One Gun Law could be saved only if it were "readily susceptible" to a construction that excludes B-B guns and pellet-firing air guns from the ambit of the law. This cannot be accomplished without rewriting the statute or changing the pre-existing definition that the statute

employs, tasks uniquely within the province of the Legislature that courts are not permitted to undertake.

The plain language of the One Gun Law applies broadly to "handguns," a term defined separately and independently decades ago in N.J.S. 2C:39-1. The only way to "cure" the One Gun Law from its constitutional and statutory infirmity would be to add language to that law expressly excluding B-B guns and pellet-firing air guns, or alternatively, to redefine the term "handgun" or "firearm" in N.J.S. 2C:39-1 to exclude B-B guns and pellet-firing air guns. Neither option is available to a court.

The first option would necessitate adding an express exception to the One Gun Law -- in addition to the three deliberately crafted exceptions that were added to the law following a public hearing and months of consideration by the Task Force.

The second option would require an amendment of New Jersey's longstanding definition of "handgun" or "firearm" in N.J.S. § 2C:39-1 to exclude B-B guns and pellet-firing air handguns.

Neither option – rewriting the One Gun Law, or rewriting the underlying definition of "handgun" or "firearm" in N.J.S. 2C:39-1 – is appropriate in this case.

The definitions of "handgun" and "firearm" in N.J.S. 2C:39-1 have not been challenged in this lawsuit and are thus not before this Court. Moreover, the revisions to the definition of "handgun" or "firearm" in N.J.S. 2C:39-1 that would be needed to cure the infirmities in the One Gun Law would have sweeping and unintended impacts on the many other aspects of New Jersey's firearm laws that currently apply to the purchase, permitting, possession and use of handguns and other firearms, and whose validity is not challenged here.

Most important, as noted above, courts may not "rewrite a state law to conform it to constitutional requirements." *See, e.g., Conchatta*, 458 F.3d at 263; *Planned Parenthood,* 220 F.3d at 136. It is the job of the state legislature, not the federal courts, to rewrite these statutes if it so chooses.

> To rewrite the statutes in this manner would exceed the power and function of the court, and would fail to bind state prosecutors, leaving the citizens of [the State] vulnerable to prosecutions under the actual language of the statute.... 'Accordingly, we decline [the State's] invitation to give the statute[s] a construction more restrictive than that provided by [their] plain language.'... As written, [the statutes] are not susceptible of a narrowing construction.

*Citizens for Responsible Government,* 236 F.3d at 1194-95 (citations omitted).

The One Gun Law, similarly, is not susceptible of a narrowing construction and must fall in its entirety.

### B.    PARTIAL INVALIDATION CANNOT SAVE THE ONE GUN LAW

The option of simply "snipping out" an offending provision, rather than rewriting the law, is also unavailable in this case because the offending provision is not contained in the One Gun Law itself, but rather is inextricably embedded in the longstanding independent statutory definitions the One Gun Law employs.

In determining whether a partial invalidation of a state statute is appropriate, federal courts look to state law.   *See Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 506 (1985); *Old Coach Dev. Corp. v. Tanzman*, 881 F.2d 1227, 1234 (3d Cir. 1989); *Citizens for Responsible Government,* 236 F.3d at 1195.

Under New Jersey law, a court does have power to declare a portion of a statute unconstitutional while leaving the remainder of the law intact.  N.J.S. 1:1-10. But "[s]uch judicial surgery is to be applied with caution . . . ."  *New Jersey State Firemen's Mutual Benevolent Ass'n v. North Hudson Regional Fire & Rescue,* 340 N.J. Super. 577, 595, 775 A.2d 43, 53 (App. Div. 2001), *certif. denied sub nom. State Fireman's Mut. Benev. Ass'n. v. North Hudson Regional Fire & Rescue*, 170 N.J. 88, 784 A.2d 721 (2001) (quoting *Communications Workers of America v. Florio*, 130 N.J. 439, 465, 617 A.2d 223, 236 (1992)).

Here, there is no language within the One Gun Law itself that can be deleted to cure its constitutional infirmities. The only language that even theoretically could be excised as a remedy does not even appear in the One Gun Law, but rather

is found in the second sentence of the decades-old, separate and independent definition of "firearm" in N.J.S. 2C:39-1, which brings B-B pistols and pellet-firing air pistols within the scope of the definition not by name or type (e.g. "B-B gun" or "air pistol"), but rather by description of mechanical function, which by extension impacts the federally protected guns, as well as *other* firearms not implicated here that share similar function with the protected firearms.

Additionally, because the definition of "firearm" applies not only to the One Gun Law but to all laws in Chapters 39 and 58 of the New Jersey Code of Criminal Justice, such radical "judicial surgery" would sweep far too broadly by suddenly rewriting all the laws in Chapters 39 and 58 to make them no longer applicable to B-B and pellet-firing air guns – laws whose constitutionality is not under challenge in this case.

Such wholesale disruption of New Jersey's firearms laws surely would not be intended by the State Legislature, and would  compromise "the integrity and coherence" of New Jersey's entire regulatory scheme.  *See Citizens for Responsible Government,* 236 F.3d at 1196.  *Cf.  Hamar Theatres, Inc. v. Cryan*, 365 F.Supp. 1312, 1324 n.18 (D.N.J. 1973), *order modified on other grounds*, 390 F. Supp. 510 (D.N.J. 1974), *judgment vacated on other grounds,* 419 U.S. 1085 (1974) (in holding definition of "obscenity" in state's obscenity law to be unconstitutional, court declines to save the statute by severing the invalid provision

because "[s]hould the definition . . . be found unconstitutional, the operative sections of the statute depending upon that definition will also fall.").

Faced with similar challenges, the United States Supreme Court has not hesitated to invalidate an unconstitutional law:

> [W]e do not believe it possible to sever some of the Act's . . . provisions from others that might remain fully operative . . . . To sever provisions to avoid constitutional objection here would require us to write words into the statute . . . or to leave gaping loopholes . . . or to foresee which of many different possible ways the legislature might respond to the constitutional objections we have found. Given these difficulties, *we believe the [State] Legislature would have intended us to set aside the [offending statutory provisions], leaving the legislature free to rewrite those provisions in light of the constitutional difficulties we have identified.*

*Randall v. Sorrell*, 548 U.S. 230, 262 (2006) (emphasis added).

The same principles apply to the instant case. The One Gun Law cannot be cured, either by a narrowing construction or by severing an unconstitutional provision from the statute. Thus, Plaintiffs are entitled to injunctive relief enjoining the enforcement of the One Gun Law, and the judgment below denying injunctive relief and dismissing Counts One and Two of the Amended Complaint should be reversed.

IV.    THE STATE MAY NOT PROVIDE A RIGHT TO OBTAIN THE
       EXEMPTIONS WITHOUT PROVIDING A FAIR MEANS TO
       VINDICATE THAT RIGHT

Counts Three and Four of the Second Amended Complaint allege that the

Exemptions promulgated pursuant to the One Gun Law and implemented via the

Exemption Forms violate Due Process because they result in substantially illusory

Exemptions contrary to the express intent of the Legislature.

The Legislature and the Superintendent may not, consistent with Due

Process, provide a statutory right without a practicable means to obtain the right.

Yet, that is precisely what they have done.

It is well settled that the liberty and property interests implicated by the Due

Process Clause of the Fourteenth Amendment to the United States Constitution are

broadly understood:

> . . . the Court has fully and finally rejected the wooden
> distinction between "rights" and "privileges" that once
> seemed to govern the applicability of procedural due
> process rights.  The Court has also made clear that the
> property interests protected by procedural due process
> extend well beyond actual ownership of real estate,
> chattels, or money.  By the same token, the Court has
> required due process protection for deprivations of liberty
> beyond the sort of formal constraints imposed by the
> criminal process.

*Board. of Regents v. Roth,* 408 U.S. 564, 571-72 (1972).

Due process concerns are directly implicated where a person is deprived of a liberty or property interest without a procedure available to vindicate that interest. *See, e.g., Humphries v Country of Los Angeles*, 554 F.3d 1170, 1199-1201 (9th Cir. 2009) (child abuse registry violated due process where no procedure existed for expungement of erroneously included name from list); *Alexandre v Cortes,* 140 F.3d 406, 413 (2d Cir. 1998) (due process violated where there was no procedure for arrestee to contest city's handing over vehicle to lienholder).

This is equally true when the liberty interest is created by state law. *Mills v. Rogers,* 457 U.S. 291, 300, 102 S. Ct. 2442, 2448 (1982) ("state-created liberty interests are entitled to the protection of the federal Due Process Clause"). As explained in *Paul v. Davi*s, 424 U.S. 693, 710-11, 96 S. Ct. 1155, 1165 (1976):

> It is apparent from our decisions that there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either "liberty" or "property" as meant in the Due Process Clause. These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law . . . .

Most recently, the Supreme Court explained that:

> When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication – and federal courts will review the application of those constitutionally required procedures.

*Swarthout v. Cooke*, 131 S. Ct. 859, 862 (2011).

The District Court dismissed Counts Three and Four of the Second Amended Complaint based upon an erroneous finding that Plaintiffs failed to establish the existence of a protected interest in the Exemptions. The District Court concluded that N.J.S. 2C:58-3.4 vests discretion in the Superintendent to deny the application 'if he finds a reasonable likelihood that the public safety would be endangered by granting the exemption' and that this discretion "precludes a finding that an applicant has a 'legitimate claim of interest' in an Exemption for procedural due process purposes." A21-22, Opinion, February 2, 2012.

The existence of a protected liberty or property interest depends upon the statutory or regulatory language purporting to create such an interest. *Olim v. Wakinekona*, 461 U.S. 238, 103 S. Ct. 1741 (1983); *Bd. of Pardons v. Allen*, 482 U.S. 369 (1987); *Winsett v. McGinnes*, 617 F.2d 996 (3d Cir. 1980). This Court has held that a legitimate claim of entitlement "may exist for a benefit sought but not yet obtained if state law limits the exercise of discretion by the state official responsible for conferring the benefit. *Midnight Sessions, Ltd. v. City of Philadelphia,* 945 F.2d 667, 679 (3d. Cir. 1991), *overruled on other grounds by United Artists Theater Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 400 (3d. Cir. 2003), citing *Winsett v. McGinnes*, 617 F.2d 996, 1007 (3d. Cir. 1980). In *Winsett*, the Court held that a prison inmate had a protected liberty interest in a

work release program based on regulations promulgated by the Delaware Department of Corrections. Specifically, the Court found that the regulations set forth

> specific criteria for work release which we believe if met, give rise to a liberty interest in work release. Although discretion is vested in the prison authorities to grant or deny work release, that discretion must be exercised consistently with the purpose and policy behind work release. A state-created liberty interest in work release arises when a prisoner meets all eligibility requirements under the state regulations and the exercise of the prison authorities' discretion is consistent with work release policy.

*Id*. at 1006.

The Court in *Winsett* further recognized that "if the prison authorities could by the arbitrary exercise of discretion deny a work release application to a prisoner even though he met all eligibility requirements, then any entitlement to work release would be illusory rather than real."

Similarly, in *Olim v. Wakinekona*, 461 U.S. 238, 103 S. Ct. 1741 (1983), the United States Supreme Court held that "a State creates a protected liberty interest by placing substantive limitations on official discretion" and by requiring the official to make his or her decision based on "objective and defined criteria." 461 U.S. at 249.

Significantly, in *Winsett*, the court found that the nature of the discretion held by the official must be understood in the context of the purpose and policy behind the program. 617 F.2d at 1007. Thus, because the policy behind the work release program was to enable prisoners who meet the eligibility requirements to qualify for work release, the Court held that the program created a liberty interest for those that meet all eligibility requirements. *Id*.

Similarly, the policy behind the Exemptions is that Collectors and Competitors who satisfy the statutory criteria should be able to purchase more than one handgun in a 30-day period. That is the very purpose of the Exemptions. After all, the Exemptions were created as a result of the deliberations of the Task Force, whose very purpose was to develop ways in which to ameliorate the more onerous impacts of the One Gun Law. It would be nonsensical to construe the discretion exercised pursuant to the Exemptions in a manner at odds with *Winsett*.

The statutory language of the Exemptions bears this out. N.J.S. 2C:58-3.4(a) and 2C:58-3.4(b) set forth specific eligibility criteria that each applicant must meet in order to qualify for an Exemption under the statute. 2C:58-3.4(b) even provides the specific procedures for submitting an application under the statute. N.J.S. 2C:58-3.4(b) prescribes when the superintendent must deny an Exemption:

> The superintendent shall not grant an exemption if he finds a reasonable likelihood that the public safety would be endangered by granting the exemption, including but not limited to instances where the applicant may be purchasing a handgun to give, sell or distribute to a person who would not qualify to purchase or otherwise acquire a handgun under the provisions of this chapter.

Although the District Court interpreted this portion of 2C:58-3.4(b) as granting broad discretion in the Superintendent, this language actually indicates that so long as applicants meet the criteria set forth in 2C:58-3.4(a) and 2C:58-3.4(b), the Superintendent must grant the Exemption unless there is a "reasonable likelihood that the public safety would be endangered by granting the exemption." The explicit nature of N.J.S. 2C:58-3.4 therefore evidences the intent of the Legislature to limit the Superintendent's discretion in granting and denying Exemptions and creates a legitimate claim of entitlement to an Exemption for applicants who meet the statute's eligibility requirements.

Moreover, N.J.S. 2C:58-3.4(c) explicitly provides for judicial review of the Superintendent's decision. This provision of judicial review is further indication of the Legislature's intent to curb the Superintendent's discretion. *Board of Pardons v. Allen,* 482 U.S. 369, 381, 107 S. Ct. 2415, 2422 (1987).

In holding that N.J.S. 2C:58-3.4 vests broad discretion in the Superintendant, the District Court also relied upon the use of the term "may" rather than "shall" in the statute. N.J.S. 2C:58-3.4 states, in pertinent part:

> The superintendent may grant an exemption from the
> restriction on the purchase of handguns set forth in
> subsection i. of N.J.S.2C:58-3 if the applicant
> demonstrates to the satisfaction of the superintendent that
> the applicant's request meets one of the following
> conditions: …

However, when read in context, the word "may" is plainly intended to mean "shall," as it is in many instances. When read together with the rest of the statute, the term "may" was simply intended by the Legislature to grant permissive authority to the Superintendent to grant exemptions as long as the criteria delineated in the statute were met.

The Fifth Edition of Black's Law Dictionary defined the word "may" as follows:

> An auxiliary verb qualifying the meaning of another verb
> by expressing ability, competency, liberty, permission,
> possibility, probability or contingency. . . . Regardless of
> the instrument, however, whether constitution, statute,
> deed, contract, or whatever, courts not infrequently
> construe "may" as "shall" or "must" to the end that
> justice may not be the slave of grammar. [Citations
> omitted.]

Black's Law Dictionary 883 (5th ed. 1979).

The Eighth Edition of Black's puts it more succinctly:

> In dozens of cases, courts have held *may* to be
> synonymous with *shall* or *must*, usu. in an effort to
> effectuate legislative intent. [Emphasis in original]

Black's Law Dictionary 1000 (8th ed. 2004).

*U.S. v. Cook*, 432 F.2d 1093, 1098 (7th Cir. 1970), *cert. denied*, 401 U.S. 996 (1971) is further instructive:

> While it is true in construction of statutes, and presumably also in the construction of federal rules, that the word 'may' as opposed to 'shall' is indicative of discretion or a choice between two or more alternatives, the context in which the word appears must be the controlling factor.

In *Lewis v. Hills,* 457 F. Supp. 1112, 1118-19 (E.D. Pa. 1978), *vacated on other grounds by Lewis v. Hills*, 611 F.2d 464 (1979), the court analyzed the first sentence of Section 518(b) of the National Housing Act, 12 U.S.C. §1735b(b), which provided: "The Secretary is authorized to make expenditures…." The Court considered the legislative history of §518(b) and held that the statute, read as whole, conferred a mandatory rather than discretionary, duty upon the United States Department of Housing and Urban Development to confer housing benefits upon the plaintiffs. Even though "authorized" appears to indicate discretion, the context of the statute required a construction that "authorized" means "shall" or "must."

Again, it would be nonsensical to conclude, based on the word "may," that the Superintendent may simply choose to grant the Exemption or not based upon how he feels that day. Yet that is exactly what the District Court is suggesting by construing the word "may" as discretionary rather than mandatory. If it truly is

"may" then no matter how well-qualified the applicant is, the Superintendent can simply and arbitrarily choose not to issue the Exemption for, apparently, no reason at all.  This is an absurd construction of the statute, especially in light of the ameliorative purpose of the Task Force and the specific eligibility criteria provided in the statute.

Rather, in this context "may" means "is authorized to," just as in *Lewis*.  The word is a declaration of power and authority to do that which the statute requires.  Any other construction does violence to the intent of the Legislature.

N.J.S. 2C:58-3.4 prescribes specific, objective criteria for eligibility and creates a legitimate claim of entitlement to Exemptions under the statute for those applicants that meet its criteria.  Eligible applicants therefore have a property interest in the Exemptions provided under N.J.S. 2C:58-3.4 that is protected under the Fourteenth Amendment's Due Process Clause.

The manner in which the One Gun Law has been implemented violates Due Process.  The New Jersey Legislature has explicitly provided narrow Exemptions for Collectors and Competitors, yet the established procedure by which such individuals can apply for and receive such Exemptions is substantially illusory.

The record below sets forth the conundrum the applicant faces.  Because the Exemption Forms require the applicant to identify *in advance of the approval* which specific handguns the applicant wishes to purchase pursuant to the

Exemption, the applicant faces a challenging task. He must first find a set of handguns he wishes to purchase. In the case of a collector, these will almost certainly be rare or unique – the very thing that makes them collectible in the first instance. He must then convince the seller to hold them and not sell them to anyone else during the months-long application process – just to see if the application is in fact granted. If the applicant provides a deposit, he risks losing that deposit if his application is denied. If he pays for them in full, he is likely criminally liable under the One Gun Law which prohibits "purchase" not merely delivery.

It is patently unreasonable to expect most sellers to undertake this substantial risk with their inventory – to hold it off the market while awaiting the completion of a lengthy process that will not even result in a sale if the application is ultimately denied months later.

The record bears out this fear, because this is precisely what happened to Plaintiff Bach. Bach approached several sellers and none of them would accept this unreasonable risk.

The brief history of the One Gun Law bears out the utter lack of regard the State Defendants have shown for the Due Process rights of New Jersey gun owners. At first, the State Police were wholly unprepared to implement the Exemptions, as evidenced from the January 14, 2010 conversation between

Plaintiff Bach and State Police Lieutenant David Schlueter of the Firearms Unit.

Now, the forms promulgated by the Superintendent in April 2010 render it impossible for most qualified applicants to obtain the Exemptions even though the Legislature intended that they be able to do so.

Because of this, Collectors and Competitors are being denied a right that the Legislature has *expressly* provided them in the One Gun Law.  Since the absence of a fair procedure to vindicate a liberty or property interest is a core due process violation, enforcement of the One Gun Law in the absence of a procedure to apply for and obtain the Exemptions is a violation of the Fourteenth Amendment and should be enjoined.

V.    PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF ENJOINING
       ENFORCEMENT OF THE ONE GUN LAW

Although Plaintiffs initially applied for preliminary injunctive relief, because Defendants raised no disputed issues of fact, it was appropriate to treat the application as one for final relief, since there were only legal issues before the District Court.  Thus, Plaintiff did not need to satisfy the traditional standards for  a preliminary injunction.  Thus, if this Court finds that the District Court erred on the law, this Court should reverse the judgment below and direct the District Court to enter final judgment in favor of Plaintiffs.

Nevertheless, that standard was satisfied in any event. An application for a preliminary injunction is governed by Fed. R. Civ. P. 65 and requires that the movant establish: (1) a reasonable likelihood that the movant will prevail on the merits at final hearing; (2) the movant will suffer irreparable harm if the injunction is not granted; (3) the non-movant will not suffer even greater harm if the relief is granted; and (4) public interest favors such relief. *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876 (3d Cir. 1997); *American Telephone and Telegraph Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994), *cert. denied sub nom. Winback and Conserve Program, Inc. v. American Tel. and Tel. Co.*, 514 U.S. 1103, 115 S. Ct. 1838 (1995).

Likelihood of success on the merits is amply demonstrated in Point II, III, and IV above.


A.    IRREPARABLE HARM

It is well settled that to show irreparable harm, a movant need only show that the harm is of a peculiar nature, so that compensation in money cannot atone for it *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987).

Further, in the case of the deprivation of constitutional rights, a movant satisfies the irreparable harm requirement if he can show that he is inhibited from exercising his constitutional rights due to a threat of prosecution. *Elrod v. Burns*,

427 U.S. 347, 348 (1976); *Dombrowski v. Pfeister*, 380 U.S. 479, 490 (1965); *Abu-Jamal v. Price*, 154 F.3d 128, 136 (3d. Cir. 1998); *Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989), *cert. denied*, 493 U.S. 848 (1989); *Lysaght v. State of New Jersey*, 837 F. Supp. 646, 653-54 (D.N.J. 1993); *Coalition of New Jersey Sportsmen v. Florio,* 744 F. Supp. at 608.

In Lysaght, the court held that the state's threat of prosecution produced a chilling effect on the exercise of First Amendment rights and therefore constituted "'direct penalization' of plaintiffs' First Amendment rights…" 837 F. Supp. 646, 653-54 (D.N.J. 1993).

Further, in *Coalition of New Jersey Sportsmen*, the District Court granted the plaintiffs' application for a preliminary injunction because plaintiffs "demonstrated the possibility of irreparable injury, because owners of such firearms . . . face the threat of prosecution." 744 F. Supp. at 608.

Here the irreparable harm is patent. The constitutional injury arises from both preemption (the One Gun Law representing a direct violation of the Supremacy Clause) and the Due Process violations arising from the illusory nature of the Exemptions.

As with the statute at issue in *Coalition of New Jersey Sportsmen*, violation of the One Gun Law carries severe criminal penalties. Specifically, N.J.S. 2C:39-10(a)(1) provides in pertinent part: " . . . any person who knowingly violates the

regulatory provisions relating to . . . retailing of firearms (section 2C:58-2), permits to purchase certain firearms (section 2C:58-3) . . . is guilty of a crime of the fourth degree."

Plaintiffs Bach and Johnson and members of the Association seek to purchase more than one handgun within a 30-day period, including, but not limited to, B-B and pellet-firing air handguns. Although these plaintiffs have applied for Handgun Purchase Permits, they face prosecution if they attempt to purchase more than one handgun within a 30-day period.

Similarly, Bob's seeks to sell handguns to purchasers such as Bach, Johnson and members of the Association but faces prosecution if he sells more than one handgun to a purchaser within a 30-day period. This threat of prosecution focuses the irreparable constitutional injury squarely on these Plaintiffs.

Moreover, the inability of Collectors and Competitors to successfully apply for the Exemptions cannot be remedied by monetary relief, nor can the municipalities' unlawful permit rationing.

Each of these constitutes irreparable harm, and therefore injunctive relief should be granted.

B.    BALANCING OF HARM FAVORS INJUNCTIVE RELIEF

Where, as here**,** the offending statute is preempted outright by federal law, balancing of harm is not a factor when seeking injunctive relief.  *Bank One v. Guttau*, 190 F.3d 844, 847-48 (8th Cir. 1999) *cert. denied*, 529 U.S. 1087 (2000) \

Nevertheless, even if applied by the Court, the weighing of harm favors the granting of injunctive relief.  As shown above, there are severe constitutional injuries that will continue to inure to Plaintiffs if injunctive relief is denied.  The One Gun Law is fundamentally unconstitutional in that it violates the Supremacy Clause by directly conflicting with federal law.

Further, the manner of implementing the One Gun Law violates the Due Process rights of Collectors and Competitors and is therefore also unconstitutional on that basis as well.

However, granting injunctive relief will not work any significant harm to Defendants, since the Legislature can rewrite the One Gun Law to pass constitutional muster.  As this Court has held, "neither the Government nor the public generally can claim an interest in the enforcement of an unconstitutional law."  *ACLU v Reno*, 217 F.3d 162 (3d. Cir. 2000), *vacated on other grounds*, 535 U.S. 564 (2002).  Defendants cannot be heard to offer any alleged public safety purpose of the One Gun Law to weigh against the constitutional injuries being suffered by Plaintiffs.  In the balancing of harm, even a law with an alleged public

safety purpose cannot outweigh the paramount requirement of constitutionality.[3] *See A.A. v New Jersey*, 176 F. Supp. 2d 274, 307 (D.N.J. 2001) (Constitutional rights take precedence even over the State's public safety interest in sex offender registry).

Even assuming *arguendo* that there were some harm to Defendants that might result from an injunction, the Legislature can fix the statute to eliminate its constitutional deficiencies. Thus, any claimed harm would be temporary at most.

Therefore, since the constitutional harm from denying the injunction is not outweighed by any harm to Defendants, Plaintiffs are entitled to injunctive relief.

C. THE PUBLIC INTEREST FAVORS INJUNCTIVE RELIEF

As the Court stated in *Coalition of New Jersey Sportsmen,* "the public interest is served in ensuring that congressional regulation of interstate commerce supersedes conflicting and contradictory state regulations." 744 F. Supp. at 608. Thus, the public has a strong interest in preventing constitutional violations and violations of law.

---

[3] Defendants attempted to argue (without making any sort of record) that the One Gun Law is a beneficial public safety measure. However, such an exercise is entirely misplaced where a statute is found to be unconstitutional.

Here, there is direct preemption of the One Gun Law by federal law. There is also patent violation of the Fourteenth Amendment. Such violations directly implicate the public interest and therefore injunctive relief should be granted.

VI.   IF THE FEDERAL CLAIMS ARE REINSTATED ON APPEAL, THE DISTRICT COURT SHOULD RESUME JURISDICTION OF THE PENDANT STATE LAW CLAIMS.

To be clear, the District Court did *not* hold at any time below that it need not take supplemental jurisdiction of the pendent State law claims found in Counts Five and Six of the Second Amended Complaint (asserting violations of N.J.A.C. 13:54-1.4(h)) even if the federal law claims remained alive in the case. However, to preserve this issue going forward, the record should reflect Plaintiffs' position that in the event this Court reinstates the federal claims, the District Court should be ordered to resume jurisdiction of the pleaded State law claims.

"[F]ederal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 716, 116 S. Ct. 1712, 1720 (1996); *Ryan v. Johnson*, 115 F.3d 193, 195 (3rd Cir. 1997).

The One Gun Law is hopelessly preempted by federal law and cannot be saved by judicial construction or partial invalidation.

The Exemptions provided by the New Jersey Legislature are wholly illusory with no adequate procedure for obtaining such Exemptions, even though qualified applicants have a legitimate claim of entitlement to such Exemptions.  They are therefore violative of the Due Process Clause of the Fourteenth Amendment.

As such, the judgment of the District Court should be reversed with instructions to grant declaratory and injunctive relief to the Plaintiffs, and Counts Five and Six of the Second Amended Complaint should be reinstated pursuant to 28 U.S.C. §1367.

Dated:  June 4, 2012

/s/ Daniel L. Schmutter, Esq.
_____
Daniel L. Schmutter, Esq.
GREENBAUM, ROWE, SMITH & DAVIS, LLP
P.O. Box 560
Woodbridge, New Jersey  07095-0988
(732) 549-5600 tel.
(732) 476-2541 fax
*dschmutter@greenbaumlaw.com*

## RULE 28.3(d) CERTIFICATION

Pursuant to L.A.R. 28.3(d), the undersigned hereby certifies that the attorney whose name appears on this brief, Daniel L. Schmutter, is admitted to practice before this Court.

/s/ Daniel L. Schmutter, Esq.

_____
Daniel L. Schmutter, Esq.

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a) AND LOCAL RULE 31.1

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify the following:

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 13,983 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using the 2008 version of Microsoft Word in 14 point Times New Roman font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and the Vipre Virus Protection, version 3.1 has been run on the file containing the electronic version of this brief and no viruses have been detected.

June 4, 2012

/s/ Daniel L. Schmutter, Esq.
Daniel L. Schmutter, Esq.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

ASSOCIATION OF NEW JERSEY RIFLE  :
AND PISTOL CLUBS, INC., et al.  :

              Plaintiffs,  :
      v.  :      Civil Action No. 10-271 (JAP)

CHRISTOPHER CHRISTIE, Governor  :
of the State of New Jersey, et al.  :

           Defendants.  :     **OPINION**
_____

PISANO, District Judge.

    Plaintiffs Association of New Jersey Rifle and Pistol Clubs, Inc., ("ANJRPC"), Scott

Bach, Kaare Johnson, Vincent Furio, Steven Yagiello and Bob's Little Sport Shop, Inc.

(collectively, "Plaintiffs") bring this action challenging recent amendments to N.J.S.A. 2C:58-

2 and 2C:58-3, referred to as the "One Gun Law" or the "One Handgun a Month Law,"

(hereinafter the "One Gun Law") which restricts the sale of handguns to one per thirty day

period.  Presently before the Court are the following motions:  (1)  Plaintiffs' motion for a

preliminary injunction; (2) the State of New Jersey's motion to dismiss pursuant to Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6); and (3) the City of Hackensack's motion to

dismiss pursuant to Rules 12(B)(1), 12(b)(6), and 12(h)(3).  For the reasons below, Plaintiffs'

motion for a preliminary injunction is denied, and the State of New Jersey's motion to dismiss

is granted with respect to Counts One and Two.  As to the remaining issues, the parties are

A1

directed to submit supplemental briefing as set forth below.

I.      Background

In or about August 2009, the One Gun Law was enacted.  The law amended N.J.S.A. 2C:58-2(a) to provide that a "dealer" could not "deliver more than one handgun to any person within a 30-day period."  It also amended N.J.S.A. 2C:58-3 to provide that "no more than one handgun shall be purchased within any 30-day period."  N.J.S.A. 2C:58-3(i).  These changes were effective as of January 1, 2010.

Also in or about January 2010, amendments were enacted that created certain exemptions to One Gun Law.  Included were exemptions relating to inheritance or intestacy, collecting, and competitive shooting.  N.J.S.A. 2C:58-3.4.  In order to qualify for one of these exemptions, the statute provides that an applicant must certify, "on a form prescribed by the [S]uperintendent [of the State Police], the exemption sought along with documentation in support of the exemption."  N.J.S.A. 2C:58-3.4(b).  These amendments became effective January 3, 2010 and January 12, 2010, respectively.  Plaintiffs filed this lawsuit shortly thereafter, on January 17, 2010.

Counts One and Two of the amended complaint (hereinafter "complaint") allege that the One Gun Law is void because it is preempted by 15 U.S.C. § 5001(g)(ii), which provides that "[n]o State shall ...  prohibit the sale ... of traditional B-B, paint ball, or pellet-firing air guns that expel a projectile through the force of air pressure."  Count Three, Four and Five allege that the lack of a procedure[1] to obtain one of the enumerated exemptions to the One

_____

[1]As noted previously, the statute requires applications for an exemption to complete a "form prescribed by the [S]uperintendent [of the State Police]"  At the time of the filing of this

2

A2

Gun Law violates Plaintiffs' due process rights under the United States and New Jersey

Constitutions.  Counts Seven and Eight allege that certain individual plaintiffs were

unlawfully denied the right to apply for multiple handgun purchase permits at one time by the

defendant municipalities.[2]  The motions presently before the Court center on the claims raised

in Counts 1, 2, 7 and 8.  *See* Transcript of Proceedings, May 25, 2010 ("Tr.") at 9 (counsel

explaining that due to recent developments Court does not have full record before it as to

Counts 3 through 6).

II.     Analysis

A.      Motion for Preliminary Injunction

Plaintiffs seek a preliminary injunction enjoining enforcement of the One Gun Law

and an injunction enjoining municipal defendants from restricting the number of handgun

purchase permits an individual may apply for at one time.  In evaluating a motion for

preliminary injunctive relief, a court must consider whether: "'(1) the plaintiff is likely to

succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting

the injunction will not result in irreparable harm to the defendant; and (4) granting the

injunction is in the public interest.'"  *NutraSweet Co. v. Vit-Mar Enterprises, Inc.*, 176 F.3d

151, 153 (3d Cir.1999) (quoting *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir.1998)).

---

action, no such "form" had been promulgated by the superintendent.  Since that time, the State
has advised the Court that exemption forms have issued.  *See* Docket Entry # 32.  Plaintiffs have
advised the Court that they may seek to amend their complaint to allege that the forms are
inadequate and, therefore, the exemption procedure violates their due process rights.

[2]The parties advised the Court that since the filing of the complaint the Division of the
State Police has issued guidance for municipalities advising that the One Gun Law does not
restrict individuals from obtaining more than one permit in a 30-day period.  Tr. at 10, 18.

3

A3

A preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Masurek v. Armstrong*, 520 U.S. 968, 972 (1997). Preliminary injunctive relief is an "extraordinary and drastic remedy", *id.*, which "should issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *American Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir.1994). "The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate." *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005).

Turning to the first element of the preliminary injunction analysis, likelihood of success on the merits, Plaintiffs first argue that the One Gun Law should be enjoined because it is preempted by the Federal Toy gun Law and is, therefore void. Federal preemption of state law finds its basis in Supremacy Clause of the United States Constitution, which states that "the Laws of the United States ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. However, despite the broad language of this clause, courts do not readily assume preemption. *Madeira v. Affordable Housing Foundation, Inc.*, 469 F.3d 219, 238 (2d Cir. 2006). Rather, "in the absence of compelling congressional direction," courts will not infer that "Congress ha[s] deprived the States of the power to act." *Id.* (quoting *New York Tel. Co. v. New York State Dep't of Labor*, 440 U.S. 519, 540 (1979)). When, as in this case, the state law at issue involves the historic police power of the States, "courts start with the assumption

4

A4

that these powers are not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (internal quotations omitted) (citing *Jones*, 430 U.S. at 525).

The Supreme Court has noted that "[t]he criterion for determining whether state and federal laws are so inconsistent that the state law must give way is firmly established..." *Jones v. Rath Packing Co.*, 430 U.S. 519, 526 (1977).  The task of a court is to "to determine whether under the circumstances of [a] particular case, (the State's) law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* Furthermore, in determining whether a conflict exists, a court must "consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written." *Id.*; *State v. Rackis*, 333 N.J. Super 332, 340 (App. Div. 2000).  Importantly, "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, -- U.S. --, 129 S.Ct. 1187, 1194 (2009).

As noted earlier, Section 5001(g) provides that "no State shall ... (ii) prohibit (other than prohibiting the sale to minors) the sale of traditional B-B, paint-ball, or pellet-firing air guns that expel a projectile through the force of air pressure."   15 U.S.C. § 5001(g)(ii).  The key question here, therefore, is whether the One Gun Law "prohibit[s]" the sale of "B-B, paint-ball, or pellet-firing air guns" that may fall within its scope (referred to herein as "air-powered handguns").[3]  Plaintiffs argue that by limiting the purchase of air-powered handguns

---

[3]The State does not dispute that the One Gun Law governs the sale and purchase of certain B-B and pellet-firing air-powered guns that fall within the definition of "handgun" under New Jersey law.

to one every thirty days, the One Gun Law is  a prohibition on the purchase of these firearms that conflicts with § 5001(g)(ii).  The State, on the other hand, contends that the One Gun Law does not prohibit but merely regulates the purchase of these guns and, therefore, is not preempted.

The Court agrees that the One Gun Law permissibly regulates, rather than prohibits, the sale of air-powered handguns, and therefore is not in conflict with the Federal Toy Gun Act.  As the State points out, the One Gun Law does not ban the sale of such guns -- a person is not prohibited from buying an air-powered handgun today so long as they have a permit to do so.  While the One Gun Law does regulate the timing of an individual's ability to purchase air-powered handguns, it neither prohibits their sale nor limits the absolute number of air-powered handguns that an individual can purchase.

The Court finds Plaintiffs' reliance on the *New York State Motor Truck Assoc. v. City of New York*, 654 F. Supp. 1521 (S.D.N.Y. 1987) and *United States v. Florida*, 585 F. Supp. 807 (N.D. Fla. 1984) in support of their argument that the One Gun Law constitutes a prohibition on the sale of these weapons to be misplaced.  In those cases, the courts found that state or local laws that placed time-of-day restrictions on the operation of certain kinds of trucks were preempted by federal statutes "prohibit[ing]" states from barring those trucks from operating on certain highways.  Plaintiffs argue that such cases stand for the proposition that a restriction such as the One Gun Law, which Plaintiffs concede "is not a total prohibition[,] ... is a prohibition nevertheless."  Pl. Br. at 20.

Plaintiff's argument, however, overlooks one of the "cornerstones of ... pre-emption

6

A6

jurisprudence," namely, that "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth*, 129 S.Ct. at 1194. In both *New York State Motor Truck* court and *Florida,* the courts found the existence of congressional intent to promote a uniform system of national regulation so as "to relieve commercial trucking operators of the burden inherent in planning and operating a multistate haul . . . through states with conflicting regulations." *New York State Motor Truck*, 654 F. Supp. at 1536; *see also Florida*, 585 F. Supp. at 810 ("potential disruption . . . would make planning by commercial trucking firms virtually impossible"). There is no evidence here that the purpose of § 5001 is to promote a uniform system of national regulation with respect  B-B and other air powered weapons.

Additionally, unlike the statute at issue in *Coalition of New Jersey Sportsmen v. Florio*, 744 F. Supp. 602 (D.N.J. 1990), another case relied upon by Plaintiffs, the requirements of the One Gun Law are not so onerous that the law constitutes a *de facto* prohibition on the sale of B-B guns and air guns that fall within its scope. *Coalition* involved, among other things, a state gun control statute that regulated semi-automatic assault weapons. The court in *Coalition* found that certain B-B and pellet-firing guns fell within the scope of that statute's definition of "assault firearms." *Id.* at 605 (interpreting N.J.S.A. 2C:39-1(w)(3)). Because the *Coalition* court found that the statute's extremely rigorous qualification process for persons wishing to purchase an assault firearm was so onerous, it held that the statute constituted a *de facto* prohibition on the sale of B-B guns and air guns that fell within its scope. That simply is not the case here.

The Court finds the reasoning of *State v. Rackis* to be more relevant. Although *Rackis*

7

A7

was a possession case -- it addressed the question of whether state criminal laws that prohibited possession of a handgun without a permit and possession of a handgun by a convicted felon were preempted by § 5001 -- the principles relied upon by the court and the reasoning of that decision are instructive.  The *Rackis* court found that New Jersey's requirements that a person obtain a permit to purchase as well as carry a handgun (including BB guns) do not "constitute[] a prohibition against the sale or possession of a BB gun."  333 N.J. Super at 341 ("[T]he classification of BB guns as a handgun does not bar acquisition of the weapon and the requirement that a person must obtain a permit to carry a BB gun is not onerous.  A person of good character and good repute in the community in which he lives cannot be denied a permit to purchase a handgun or a firearms purchaser identification card.").  After determining that the intent of Congress in enacting § 5001(g) was to "protect manufacturers and the rights of the public to buy and possess [BB and pellet guns]" and not to completely preempt state regulation of such weapons, the *Rackis* court further found that "the express language of § 5001(g) only precludes states from prohibiting the sale of such guns and is silent as to whether the state can in fact regulate who can obtain these guns."  *Rackis*, 333 N.J. Super at 343.

Here, the One Gun Law regulates the sale of air-powered handguns in that it allows individuals who have not purchased a handgun in the previous thirty days to purchase such a weapon.  It also exempts from its limitations individuals that qualify for one of the several exemptions enumerated in the statute.  An individual (with the appropriate permit) who does not qualify for an exemption and who has purchased a handgun within a thirty-day period

A8

need only wait until the expiration of the thirty-day period in order to purchase an air-powered handgun.  Consequently, the One Gun Law does not prohibit the sale of air-powered handguns, nor is it a restriction that is so onerous that it constitutes a *de facto* prohibition on the sale or purchase of these weapons.  As such, the One Gun Law is not at odds with the legislative intent of § 5001(g)(ii) to "protect manufacturers and the rights of the public to buy and possess [air-powered handguns]," and, therefore, the Court finds that the One Gun Law is not preempted by the Federal Toy Gun Act.  Consequently, Plaintiffs have not shown a reasonable likelihood of success on the merits with respect to Counts One and Two, and their motion for an injunction enjoining the enforcement of the One Gun Law based upon those counts shall be denied.  Additionally, in light of the foregoing, the Court shall grant the State's motion to dismiss as to Counts One and Two of the complaint.

To the extent that Plaintiffs seek injunctive relief based upon Counts Seven and Eight enjoining municipal defendants from restricting the number of handgun purchase permits an individual may apply for at one time, that relief is also denied.  Since the filing of the complaint in this case the Division of the State Police has issued guidance for municipalities advising that the One Gun Law does not restrict individuals from obtaining more than one permit in a 30-day period.  Tr. at 10, 18.  In fact, despite what appeared to be some initial confusion when the law was first enacted, all parties appear to be in accord that the One Gun Law does not restrict the number of handgun purchase permits an individual may obtain at any one time.  As such, Plaintiffs cannot establish that they will be irreparably harmed absent the preliminary relief sought.

9

A9

B.      Motions to Dismiss

As is evident from correspondence on the docket and as was discussed at oral argument, numerous developments have occurred since the commencement of this action and the filing of the parties' motions that impacts both the factual and legal issues in this case.  For example, at the time of the filing of this action, no exemption form had been had been promulgated by the superintendent.  *See* N.J.S.A. 2C:58-3.4(b) (exemptions to the One Gun Law are to be made "on a form prescribed by the [S]uperintendent [of the State Police]).  Since that time, exemption forms have issued.  *See* Docket Entry # 32.  Additionally, as noted above, the State Police has issued guidance regarding the One Gun Law's effect, or lack thereof, on the issuance of handgun purchase permits.  Also, the statute received its official codification not long ago, which the State notes harmonized certain clashing statutory provisions.  *See* Docket Entry #44.

In light of the recent developments, there appears to be the possibility that some of Plaintiffs' claims may be moot, and certain relief sought by way of parties' motions as well as certain legal arguments raised may no longer be relevant.  Consequently, the parties are each to submit to the Court a supplemental brief addressing the impact of these developments and any others on the issues raised in the pending motions to dismiss.

III.    Conclusion

For the reasons above, Plaintiffs motion for a preliminary injunction is denied.  The State's motion to dismiss is granted as to Counts One and Two of the complaint.  The parties

A10

are directed to submit supplemental briefing regarding developments since the filing of the

motions to dismiss.   An appropriate Order accompanies this Opinion.


/s/ JOEL A. PISANO
United States District Judge

Dated:  June 14, 2010

11

A11

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

_____
                                              :
ASSOCIATION OF NEW JERSEY RIFLE    :
AND PISTOL CLUBS, INC., et al.              :
                                              :
                    Plaintiffs,             :
        v.                                    :        Civil Action No. 10-271 (JAP)
                                              :
                                              :
CHRISTOPHER CHRISTIE, Governor      :
of the State of New Jersey, et al.          :
                                              :        **ORDER**
                    Defendants.             :
_____ :

     Presently before the Court are (1) Plaintiffs' motion for a preliminary injunction; (2) the

State of New Jersey's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1)

and 12(b)(6); and (3) the City of Hackensack's motion to dismiss pursuant to Rules 12(B)(1),

12(b)(6), and 12(h)(3).  For the reasons in the accompanying Opinion,

     IT IS on this 14th day of June 2010

     ORDERED that Plaintiff's motion for a preliminary injunction is DENIED; and it is

further

     ORDERED that the State's motion to dismiss is GRANTED as to Counts One and Two;

and it is further

     ORDERED that the parties are each directed to submit a supplemental brief within 21

days of the entry of this Order regarding the impact of recent developments as discussed in the

accompanying Opinion on the outstanding motions.


                        /s/ JOEL A. PISANO
                        United States District Judge

A12

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____
                           :

ASSOCIATION OF NEW JERSEY RIFLE  :
AND PISTOL CLUBS, INC., et al.      :
                           :
          Plaintiffs,      :
     v.                     :     Civil Action No. 10-271 (JAP)
                           :
                           :
CHRISTOPHER CHRISTIE, Governor   :
of the State of New Jersey, et al.     :
                           :     **OPINION**
          Defendants.    :
_____:

PISANO, District Judge.

     In this action, Plaintiffs Association of New Jersey Rifle and Pistol Clubs, Inc., Scott

Bach, Kaare Johnson, Vincent Furio, Steven Yagiello and Bob's Little Sport Shop, Inc.

(collectively, "Plaintiffs") have challenged certain amendments to N.J.S.A. 2C:58-2 and

2C:58-3, referred to as the "One Gun Law" or the "One Handgun Per Month Law"

(hereinafter, the "One Gun Law"). The One Gun Law provides, subject to certain exceptions,

that no person may purchase more than one handgun in any thirty day period. Presently

before the Court are motions by the State of New Jersey defendants[1] (the "State") and the City

of Hackensack ("Hackensack") to dismiss the complaint pursuant to Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6). Plaintiffs have opposed the motions and have moved for

summary judgment. For the reasons below, the Court denies Plaintiffs' motion for summary

_____
[1] The named state defendants are Chris Christie, Governor of the State of New Jersey, Paula T. Dow, Attorney General of the State of New Jersey, and Colonel Rick Fuentes, Superintendent, Division of New Jersey State Police.

judgment, grants Defendants' motions as to the Plaintiffs' federal claims, and declines to

exercise supplemental jurisdiction over the remaining state law claims.

**I. Background**

The One Gun Law, effective as of January 1, 2010, amended New Jersey's law

regarding the purchase of firearms to provide that "no more than one handgun shall be

purchased within any 30-day period."  N.J.S.A. 2C:58-3(i).  This one-gun-per-month

limitation, however, is subject to certain exceptions, which are enumerated in the statute.  For

example, the limitation does not apply to law enforcement officers purchasing firearms for

use in their duties or to transfers among licensed dealers.  *See* N.J.S.A. 2C:58-3(i)(1) and (3).

As relevant to this case, the statute contains an exception for "any transaction where the

superintendent [of the State Police] issues an exemption from the prohibition in this

subsection pursuant to the provisions [N.J.S.A. 2C:58-3.4]."  N.J.S.A. 2C:58-3(i)(6).

As codified in N.J.S.A. 2C:58-3.4, New Jersey's legislature provided a mechanism for

the Superintendent of the State Police to grant a purchaser an exemption to the One Gun Law

in limited circumstances.  Under section 2C:58-3.4,

> "[t]he superintendent may grant an exemption from the restriction on the
> purchase of handguns set forth in subsection i. of N.J.S.2C:58-3 if the
> applicant demonstrates to the satisfaction of the superintendent that the
> applicant's request meets one of the following conditions:
>
> (1) The application is to purchase multiple handguns from a person who
> obtained the handguns through inheritance or intestacy;
>
> (2) The applicant is a collector of handguns and has a need to purchase or
> otherwise receive multiple handguns in the same transaction or within a 30-day
> period in furtherance of the applicant's collecting activities. …;[2] or

---

[2] That statute notes that

> as used in this paragraph, "need" shall include, but not be limited to, situations where there is a
> reasonable likelihood that the additional handguns sought to be purchased would not be readily
> available after the 30-day period, that it would not be feasible or practical to purchase the

A14

> (3) The applicant participates in sanctioned handgun shooting competitions and needs to purchase or otherwise receive multiple handguns in a single transaction or within a 30-day period, and the need is related to the applicant's competitive shooting activities, including use in or training for sanctioned competitions.

N.J.S.A. 2C:58-3.4(a).

To apply for the inheritance, collector or competitive shooting exemption (hereinafter, an "Exemption" or the "Exemptions") to the One Gun Law, a prospective purchaser must submit an application to the Superintendent, certifying

> on a form prescribed by the superintendent, the specific exemption sought and the particular handguns to be purchased.  This form shall be submitted to the superintendent at the same time as the permit to purchase a handgun, along with any pertinent documentation supporting the need for an exemption. If the information concerning the particular handguns to be purchased is not available when the form is submitted, that information shall be provided to the superintendent as soon as practicable thereafter.

N.J.S.A. 2C:58-3.4(b).  The Superintendent of the State Police promulgated forms ("Exemption Forms") for applicants to use to apply for an Exemption on April 6, 2010, approximately 4 months after the law took effect.

Plaintiff originally filed their complaint on January 17, 2010 and filed an amended complaint on March 10, 2010.  Among other things, Plaintiffs alleged in their original complaint that that the One Gun Law was void as being preempted by federal law.  Specifically, Plaintiffs alleged that the One Gun Law was void because it was preempted by

---

handguns separately, or that prohibiting the purchase of more than one handgun within a 30-day period would have a materially adverse impact on the applicant's ability to enhance his collection.

N.J.S.A. 2C:58-3.4. Further, the statute provides that a

"collector" shall include any person who devotes time and attention to acquiring firearms for the enhancement of the person's collection: as curios; for inheritance; for historical, investment, training and competitive, recreational, educational, scientific, or defensive purposes; or any other lawful related purpose.  *Id.*

A15

15 U.S.C. § 5001(g)(ii), which provides that "[n]o State shall ...  prohibit the sale ... of traditional B-B, paint-ball, or pellet-firing air guns that expel a projectile through the force of air pressure."  Plaintiffs moved for a preliminary injunction enjoining enforcement of the One Gun Law, and various defendants moved to dismiss the complaint.  On June 14, 2010, this Court, finding the One Gun Law not to be preempted, entered an Opinion and Order denying Plaintiffs' motion for an injunction.  The Court also granted in part defendants' motions to dismiss and dismissed those counts alleging federal preemption.  *See* docket entry nos. 50 and 51.

Plaintiffs filed a Second Amended Complaint ("SAC") on October 1, 2010.  In light of the Court's earlier Opinion and Order, the only claims in the SAC that remain in this case are contained in Counts Three through Six.  Counts Three and Four are claims under 42 U.S.C. § 1983 that challenge the requirements for obtaining an Exemption.  Plaintiffs contend that "the Legislature intended that there be specific exemptions to the restrictions of the One Gun a Month Law for collectors, competitors and inheritance …[, but] the manner in which the Exemptions have been implemented render them illusory and therefore they [violate the due process clause of the 14th Amendment]."  Pl. Reply at 3.  Plaintiffs specifically take issue with the requirement that, in order to obtain the Exemption, an applicant must identify by serial number the specific handguns he wishes to purchase.  As a result of this requirement, an applicant must wait until he finds handguns he wishes to purchase before he can obtain an Exemption.  Plaintiffs contend that, consequently, an applicant, upon finding a set of handguns he wishes to purchase, must seek the cooperation of a vendor to hold the weapons off of the market while the applicant seeks approval for the purchase, which he may or may not obtain.  According to Plaintiffs, such a scenario is "unworkable and unreasonable" and

A16

"[w]hile sometimes this process may work," in other instances it will "render it impossible for otherwise qualified applicants to take advantage of the Exemptions as the Legislature intended," because the vendor will not wait while a potential customer applies for an Exemption.  Pl. Reply at 4.

According to the SAC, this was the experience of Plaintiff Bach.  The SAC alleges Bach contacted "multiple sellers to purchase more than one handgun pursuant to the Collector Exemption."  SAC ¶ 80.  Bach requested these sellers "hold such multiple handguns for him" to allow him to obtain the necessary exemption.  *Id.* at ¶ 81.  Bach was unable to advise the sellers whether he would qualify for the exemption or how long it would take to obtain it, and the sellers were unwilling to reserve the desired handguns.  *Id.* ¶¶ 82-83.

In Counts Five and Six, Plaintiffs allege that defendant City of Hackensack is violating state regulations (specifically, N.J.A.C. 13:54-1.4(h))[3]  by refusing to process multiple applications for handgun purchase permits in a 30-day period.  The Complaint alleges that Plaintiff Vincent Furio was denied the right by Hackensack to apply for three handgun purchase permits simultaneously.  SAC ¶ ¶ 103-104.

Apparently to clear up any confusion by municipalities as to the effect that the One Gun Law had on a their ability to issue multiple handgun purchase permits within a 30-day period, the New Jersey State Police issued guidance after the One Gun Law was enacted advising municipalities that the One Gun Law does not restrict individuals from obtaining more than one permit in a 30-day period.  Despite this guidance, Plaintiffs allege that Hackensack continues a "practice of … playing fast and loose with the New Jersey State

---

[3] N.J.A.C. 13:54-1.4(h) provides as follows:  "Applicants for a permit to purchase a handgun may apply for more than one permit per application.  The number of permits requested, and each permit number shall be entered in the spaces provided on the application."

permit law," and "cannot be trusted to comply with State regulations" regarding the issuances of multiple permits within a 30-day window.  Pl. Reply at 8.

**II.  Analysis**

<u>A.  Legal Standards</u>

<u>1.  Federal Rule of Civil Procedure 12(b)(6)</u>

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted.  The Supreme Court set forth the standard for addressing a motion to dismiss under Rule 12(b)(6) in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  The *Twombly* Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Id.* at 555 (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]." (internal quotation marks omitted)).  Therefore, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ..." *Twombly*, 550 U.S. at 555 (internal citations and footnote omitted).

<u>2.  Summary Judgment Standard</u>

A court shall grant summary judgment under Rule 56 of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The substantive law

identifies which facts are critical or "material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  A material fact raises a "genuine" issue "if the evidence is such that a

reasonable jury could return a verdict" for the non-moving party.  *Healy v. N.Y. Life Ins. Co.*,

860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

On a summary judgment motion, the moving party must show, first, that no genuine

issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the

moving party makes this showing, the burden shifts to the non-moving party to present

evidence that a genuine fact issue compels a trial.  *Id.* at 324.  The non-moving party must

then offer admissible evidence that establishes a genuine issue of material fact, *id.*, not just

"some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith

Radio Corp.*, 475 U.S. 574, 586 (1986).

The Court must consider all facts and their logical inferences in the light most

favorable to the non-moving party.  *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d

860, 864 (3d Cir. 1986).  The Court shall not "weigh the evidence and determine the truth of

the matter," but need determine only whether a genuine issue necessitates a trial.  *Anderson*,

477 U.S. at 249.  If the non-moving party fails to demonstrate proof beyond a "mere scintilla"

of evidence that a genuine issue of material fact exists, then the Court must grant summary

judgment.  *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

B.  Counts Three and Four

As noted above, Counts Three and Four of the SAC allege that the Exemptions

promulgated pursuant to the One Gun Law and implemented via the Exemption Forms violate

Plaintiff's procedural due process rights "because they result in illusory Exemptions contrary

A19

to the express intent of the Legislature." Pl. Brf. at 25. As stated in their brief, "Plaintiffs argue that the Legislature and the Superintendent may not, consistent with Due Process, provide a statutory right without a means to obtain the right." *Id.* at 26.

The Due Process Clause of the Fourteenth Amendment holds that no state shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a claim for a violation of procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006). Thus, the threshold issue with respect to Plaintiffs' procedural due process claim is whether there exists here a "cognizable liberty or property interest" protected by the Due Process Clause. *Mudric v. Attorney General*, 469 F.3d 94, 98 (3d Cir. 1995) (noting that "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie").

Property interests are not created by the Constitution, but rather are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Coll. v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Plaintiffs here assert that the constitutionally-protected interest at issue in this case is "a right" to an Exemption "expressly provided them in the One Gun Law." Pl. Brf. at 31. Thus, the Court must look to New Jersey state law to determine whether Plaintiffs have a legitimate claim of entitlement to an Exemption.

A20

A factor for the Court to consider in determining whether an applicant has a "legitimate claim of entitlement" to an Exemption is the discretion invested in state official overseeing the exemption decision. *See Hain v. DeLeo*, 2010 WL 4514315, *6 (M.D. Pa. 2010) (*quoting Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 679 (3d Cir. 1991). In *Hain*, for example, because a state's firearm licensing statute invested the licensing official with discretion in granting or denying a license to carry a firearm, the court found that such a license was not a protected property interest for the purposes of procedural due process. *Id.*

Here, New Jersey's law vests the Superintendent with similar discretion regarding the Exemptions. This is underscored by the language of the statute which indicates that the superintendent "may" grant the exemption if the applicant meets one of the only three conditions for exemption. N.J.S.A. 2C:58-3.4 (a). To determine whether an applicant meets the first condition, the superintendent must evaluate whether the applicant plans to purchase multiple handguns from a person who obtained the handguns through inheritance or intestacy. N.J.S.A. 2C:58-3.4 (a)(1). To determine whether an applicant meets the second condition, the superintendent must evaluate whether the applicant is "collector" of handguns who has the "need" to purchase or receive multiple handguns within a 30-day period. N.J.S.A. 2C:58-3.4 (a)(2). To determine whether the applicant meets the third exemption, the superintendent must evaluate whether the applicant "participates in sanctioned handgun shooting competitions" and, as relating to such competitive shooting activity, "needs" to purchase or receive multiple handguns within a 30-day period. N.J.S.A. 2C:58-3.4 (a)(3). However, even if the superintendent finds that an applicant meets one of the three enumerated exemption criteria, the superintendent is nevertheless vested with the discretion to deny the application if

A21

"if he finds a reasonable likelihood that the public safety would be endangered by granting the exemption." This broad discretion precludes a finding that an applicant has a "legitimate claim of interest" in an Exemption for procedural due process purposes. *See Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 679 (3d Cir. 1991) (finding plaintiffs did not have a cognizable property interest in receiving a potential license to operate a dance hall where statute prohibited issuance of licenses pending review to determine that "the facility complies with 'all laws, ordinances, health and fire regulations, applicable thereto, and is a safe and proper place for the purpose for which it shall be used;" implicit discretion in the "safe and proper place" language precluded legitimate claim of entitlement to issuance of the license.) (*overruled on other grounds by United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003).

Moreover, to satisfy the procedural due process analysis, Plaintiffs must not only establish the existence of a protected interest, but also that they have been deprived of that interest. As discussed above, the purported deprivation here allegedly arises out of the requirement that applicants identify the handguns they wish to purchase. Plaintiffs claim that this requirement, as found on the Exemption Forms promulgated by the Superintendent (which require identification of by serial number the specific handguns to be purchased), make it "impossible" for "most qualified applicants" to obtain the Exemptions "intended" by the Legislature. Pl. Brf. at 31. However, Plaintiffs overlook that the plain language of the statute makes clear that the Legislature intended that the Exemptions be available only to those applicants who are able to identify "the particular handguns to be purchased." N.J.S.A. 2C:58-3.4(b) (requiring that "[t]he applicant shall certify, on a form prescribed by the superintendent, the specific exemption sought *and the particular handguns to be*

10

A22

*purchased*.)(emphasis added).  The forms promulgated by the Superintendant, therefore, are not inconsistent with the Legislature's intent.

In sum, the Court finds that Counts Three and Four fail to state a claim upon which relief can be granted, and these claims shall be dismissed.  While Plaintiffs are clearly unhappy with New Jersey's procedure for obtaining an Exemption to the one-handgun-per-month purchase limitation, the procedural due process protections of the 14th Amendment do not provide Plaintiffs with a remedy.  If, as Plaintiffs allege, New Jersey's statutory/regulatory scheme for obtaining an Exemption is "unreasonable and unworkable" because it does not allow as many individuals to take advantage of the Exceptions as Plaintiffs would like, Plaintiffs' remedy lies with New Jersey's Legislature, not the federal courts.

B.  Counts Five and Six

Counts Five and Six of the SAC contain only state law claims.  In these counts, Plaintiffs contend that Hackensack has violated and continues to violate N.J.A.C. 13:54-1.4(h) because the municipality allegedly has refused to process multiple applications for handgun purchase permits in a 30-day period.  N.J.A.C. 13:54-1.4(h) expressly permits applicants for a permit to purchase a handgun to apply for more than one permit per application.

Under 28 U.S.C. § 1367(c)(3), a district court has discretion to decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it had original jurisdiction.  Where the claims over which the district court had original jurisdiction are dismissed before trial, "the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  *Borough of West Miflin v. Lancaster*, 45 F.3d 780, 788

A23

(3d Cir.1995); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16

L.Ed.2d 218 (1966).

      Here, the Court concludes that no affirmative justification is present for retaining

jurisdiction over Plaintiffs' state law claims.  The dispute with Hackensack is a local one, well

outside of the jurisdiction of this Court, and of the kind that is best resolved in a state forum.

Because the Court is granting Defendants' motions to dismiss as to the federal claims in this

action, the Court declines to exercise supplemental jurisdiction over the remaining state law

claims.

**III.  Conclusion**

      For the reasons above, the Court denies Plaintiffs motion for summary judgment,

grants Defendants' motions as to the federal claims contained in Plaintiff's third and fourth

causes of action, and declines to exercise supplemental jurisdiction over the remaining state

law claims.  An appropriate Order accompanies this Opinion.


                                /s/ Joel A. Pisano
                                JOEL A. PISANO, U.S.D.J.


Dated:  February 2, 2012

A24

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

_____ :
                                                      :
ASSOCIATION OF NEW JERSEY RIFLE :
AND PISTOL CLUBS, INC., et al.            :
                                                      :
                        Plaintiffs,           :
             v.                                     :        Civil Action No. 10-271 (JAP)
                                                      :
                                                      :
CHRISTOPHER CHRISTIE, Governor    :
of the State of New Jersey, et al.           :
                                                      :        **ORDER**
                        Defendants.         :
_____:


      Presently before the Court are motions by the State of New Jersey defendants and the

City of Hackensack to dismiss the complaint pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6).  Also before the Court is Plaintiffs' motion for summary judgment.  For

the reasons in the accompanying Opinion,

      IT IS on this 2nd day of February 2012

      ORDERED that Defendants' motions to dismiss [#64, 65] are GRANTED insofar as the

motions relate to Plaintiffs' federal causes of action; and it is further

      ORDERED that Plaintiffs' motion for summary judgment [#72] is DENIED; and it is

further

      ORDERED that the Court declines to exercise supplemental jurisdiction over Plaintiffs'

remaining state law claims.

      Accordingly, this case is CLOSED.


                    /s/ Joel A. Pisano
                    JOEL A. PISANO, U.S.D.J.

A25

# UNITED STATES DISTRICT COURT
for the
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ASSOCIATION Of NEW JERSEY RIFLE AND PISTOL CLUBS, INC., a New Jersey Not for Profit Corporation; SCOTT L. BACH; KAARE A. JOHNSON; VINCENT FURIO; STEVEN YAGIELLO; and BOB'S LITTLE SPORT SHOP, INC., a New Jersey Corporation | ) ) ) ) ) ) ) | Case No. 10-cv-271-JAP-TJB |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| CHRISTOPHER J. CHRISTIE, Governor of the State of New Jersey; PAULA T. DOW, Attorney General of the State of New Jersey; COLONEL RICK FUENTES, Superintendent, Division of New Jersey State Police; WASHINGTON TOWNSHIP (Morris County); CITY OF HACKENSACK; LITTLE EGG HARBOR TOWNSHIP; and XYZ MUNICIPALITIES 1-563 | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**NOTICE OF APPEAL**

Notice is hereby given that the Association of New Jersey Rifle and Pistol Clubs, Inc.,

Scott L. Bach, Kaare A. Johnson, Vincent Furio, Steven Yagiello and Bob's Little Sport Shop,

Inc., Plaintiffs in the above named case, hereby appeal to the United States Court of Appeals for

the Third Circuit from (1) an Order entered in this action on June 14, 2010 denying Plaintiffs'

motion for a preliminary and permanent injunction and granting the motion of the State

Defendants to dismiss Counts One and Two of the Amended Complaint; and (2) a Final

1374457.01

A26

Judgment and Order entered in this action on February 2, 2012 granting Defendants' motions to dismiss Plaintiffs' federal causes of action in the Second Amended Complaint; denying Plaintiffs' motion for summary judgment; and declining to exercise supplemental jurisdiction over Plaintiffs' state law claims in the Second Amended Complaint.


     /s/ Daniel L. Schmutter
Daniel L. Schmutter
Greenbaum, Rowe, Smith & Davis, LLP
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, New Jersey 07095
(732) 549-5600
Attorneys for Plaintiffs
Association of New Jersey Rifle and Pistol
Clubs, Inc., Scott L. Bach, Kaare A. Johnson,
Vincent Furio, Steven Yagiello and Bob's
Little Sport Shop, Inc.
Email:  dschmutter@greenbaumlaw.com

Date: March 2, 2012

1374457.01

A27

**AFFIDAVIT OF SERVICE**

DOCKET NO. 12-1624

-------------------------------------------------------------------------------X

Association New Jersey Rifle and Pistol Clubs

      vs.

Governor of the State of NJ

-------------------------------------------------------------------------------X


      I, Elissa Matias , swear under the pain and penalty of perjury,  that according to law and being over the age of 18, upon my oath depose and say that:

      on June 4, 2012

      I served the **Brief and Appendix Volume I on behalf of Appellants** within in the above captioned matter upon:

Daniela Ivancikova, Esq.
Office of the Attorney General of New Jersey
Division of Law Employment Litigation Section
25 Market Street
PO Box 112
Trenton NJ 08625

Craig M. Pogosky, Esq.
Zisa & Hitscherich
77 Hudson Street
Hackensack NJ 07601

via **electronic filing and electronic service**, as well as,  **Express Mail** by depositing  **2** copies of same, enclosed in a post-paid, properly addressed wrapper, in an official depository maintained by United States Postal Service

Unless otherwise noted, copies have been sent to the court on the same date as above for filing via Express Mail.


**Sworn to before me on June 4, 2012**

**/s/ Robyn Cocho**

_____           /s/ Elissa Matias
Robyn Cocho                               Elissa Matias
Notary Public State of New Jersey
No. 2193491
Commission Expires January 8, 2017

                                    Job # 242195