# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

ASSOCIATION OF NEW JERSEY RIFLE AND
PISTOL CLUBS, INC, et al.

Appellants,

v.

GOVERNOR CHRISTOPHER J. CHRISTIE, et al.

Appellees.

On Appeal From Judgments Entered in the United States District Court for the
District of New Jersey, by the Hon. Joel A. Pisano, U.S.D.J.,
Case No. 3:10-cv-271(JAP)

## BRIEF ON BEHALF OF STATE APPELLEES
## GOVERNOR CHRISTOPHER J. CHRISTIE, et al.

JEFFREY S. CHIESA
ATTORNEY GENERAL OF NEW JERSEY
Richard J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625-0112
*Attorney for State Appellees*
By:    Roshan D. Shah
       Deputy Attorney General
       (609) 633-8687
       roshan.shah@dol.lps.state.nj.us

Lewis A. Scheindlin
    Assistant Attorney General
    Of Counsel

# TABLE OF CONTENTS

COUNTERSTATEMENT OF JURISDICTION………………………………..1

COUNTERSTATEMENT OF ISSUES…………………………………….2

COUNTERSTATMENT OF THE CASE…………………………………4

COUNTERSTATMENT OF FACTS…………………………………...8

I.    New Jersey's One Handgun Per Month Law And Its Exemptions…...........8

    A.    Brief Overview Of New Jersey's Handgun Permitting Process...........8

    B.    The One Handgun Per Month Law Aims To Prevent The Illegal
        Proliferation Of Handguns……………………………….......10

    C.    The One Handgun Per Month Law's Exemptions………………….11

        *1.    The Superintendent Exemptions Provide Certain
            Law-Abiding Citizens, Including Collectors and
            Competitors, An Avenue By Which To Purchase
            Multiple Handguns In A 30-Day Period………………..……...13*

        *2.    The Process For Obtaining A Superintendent Exemption……15*

II.   The Plaintiffs And Their Claims…...………………….........……………. 15

III.  The District Court Dismisses Plaintiffs' Claims...........................................18

COUNTERSTATMENT OF RELATED CASES AND PROCEEDINGS……...20

COUNTERSTATMENT OF THE STANDARD OF REVIEW……………..........20

SUMMARY OF ARGUMENT...........................................................................21

ARGUMENT...................................................................................................23

POINT I

THE ONE HANDGUN PER MONTH LAW MERELY REGULATES
THE SALE OF AIR-POWERED HANDGUNS AND, THUS, IS NOT
PREEMPTED BY THE FEDERAL TOY GUN LAW................................23

    A.    Congress Intended The Federal Toy Gun Law's Preemptive
        Provision To Be Narrow And To Prevent Only Those State
        Laws That "Prohibit" The Sale Of Air-Powered Handguns.....25

            *1.*    *Section 5001(g)(ii)'s Plain Text Demonstrates It*
                  *Preempts Only Those State Laws That "Prohibit"*
                  *The Sale Of Air-Powered Handguns............................25*

            *2.*    *Nothing In The Federal Toy Gun's Legislative*
                  *History Supports Reading "Prohibit" To Mean*
                  *"Regulate" In § 5001(g)(ii)............................................26*

    B.    The One Handgun Per Month Law Merely Regulates –
        Not Prohibits  – The Sale Of Air-Powered Handguns.............29

            *1.*    *The One Handgun Per Month Law Is Not A*
                  *"De Facto Prohibition" On The Sale Of*
                  *Air-Powered Handguns....................................................30*

            *2.*    *Plaintiffs' Reliance On Coalition Of New Jersey*
                  *Sportsmen, New York State Motor Truck Ass'n*
                  *And Florida Is Misplaced..............................................32*

POINT II

EVEN IF THIS COURT HELD THAT § 5001(g)(ii) PREEMPTS
THE ONE HANDGUN PER MONTH LAW, THAT ONLY
WARRANTS ENJOINING THE ONE HANDGUN PER MONTH
LAW AS IT APPLIES TO AIR-POWERED HANDGUNS –
NOT ALL HANDGUNS...................................................................38

A.     New Jersey's Severance Jurisprudence Militates Against
Striking Down The One Handgun Per Month Law *In Toto*.....38

B.     Neither Judicial Craftmanship Nor Judicial Surgery Is
Necessary To "Save" The One Handgun Per Month Law.......42

<u>POINT III</u>

PLAINTIFFS' INABILITY TO INDUCE PRIVATE SELLERS
TO WAIT UNTIL THEY CAN OBTAIN A SUPERINTENDENT
EXEMPTION DOES NOT MAKE THE STATE APPELLEES
LIABLE FOR A DUE PROCESS VIOLATION.........................................47

A.     Plaintiffs Do Not Enjoy A Protected Property Interest In
The Superintendent Exemptions................................................48

B.     Plaintiffs Cannot Point To Any Action By The State Appellees
That Would Constitute A "Deprivation" Of A Protected
Property Interest.......................................................................54

CONCLUSION.................................................................................................57

# TABLE OF AUTHORITIES

## CASES

*Adler v. Livak*, 308 705 A.2d 1218(N.J. Super. Ct. App. Div. 1998)......................9

*Application of Marvin*, 249 A.2d 377 (N.J. 1969)......................................8

*Asquith v. Volunteers of America*, 1 F. Supp. 2d 405 (D.N.J. 1998).....................51

*Bd. of Regents v. Roth*, 408 U.S. 564 (1972) ......................................48-49

*Brady v. N.J. Redistricting Comm'n*, 622 A.2d 843 (N.J. 1992)...........................39

*Chamber of Commerce v. Whiting*, ____U.S.____, 131 S. Ct. 1968 (2011).....25-26

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) ..............................23, 25-26

*Coalition of New Jersey Sportsmen v. Florio*, 744 F. Supp. 602
  (D.N.J. 1990) ........................................................................ passim

*Conchatta Inc. v. Miller*, 458 F.3d 258 (3d Cir. 2006)..........................................44

*Deweese v. National R.R. Passenger Corp. (Amtrak)*, 590 F.3d 239
  (3d Cir. 2009)...........................................................................23

*English v. General Electric Co.*, 496 U.S. 72 (1990) .............................................23

*Gade v. National Solid Wastes Mgt.*, 505 U.S. 88 (1978) ......................................26

*Gallo v. Philadelphia*, 262 F.3d 217 (3d. Cir. 1998)..............................................20

*Hamar Theatres, Inc. v. Cryan*, 365 F. Supp. 1312 (D.N.J. 1973)........................45

*Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006) ...................................48

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ......................................................24, 26

*Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1 (1978)..............49

*Midnight Sessions, Ltd. v. Philadelphia*, 945 F.2d 667 (3d Cir. 1991) ........ 49-51,54

*New Jersey Chapter, Am. Inst. of Planners v. N.J. State Bd. of Prof'l Planners*,
    227 A.2d 313 (N.J. 1967)...............................................................39

*New Jersey Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374
    (3d Cir. 2012)..................................................................................39

*New Jersey State Chamber of Comm. v. Hughey*, 774 F.2d 587
    (3d Cir. 1985)...................................................................... 38-40

*New York State Motor Truck Ass'n v. New York*, 654 F. Supp. 1521
    (S.D.N.Y. 1987)..................................................30, 32, 35-37

*Olim v. Wakinekona*, 461 U.S. 238 (1983) ........................................ 51-52

*Planned Parenthood v. Farmer*, 220 F.3d 127 (3d Cir. 2000) ............................... 45

*In re Preis*, 573 A.2d 148 (N.J. 1990)......................................................... 10

*Randall v. Sorrell*, 548 U.S. 230 (2006) ......................................... 45-46

*Rose v. Arkansas State Police*, 479 U.S. 1 (1986) ...................................... 23

*Rutgers Chapter of Upsilon Fraternity v. City of New Brunswick*,
    129 N.J.L. 238 (N.J. Sup. Ct. 1942),.................................. 39, 43

*Sandin v. Conner*, 515 U.S. 472 (1995) ...................................................... 51

*State ex rel. McNeal v. Dombaugh*, 20 Ohio St. 167 (Ohio 1870) ........................ 43

*State v. Rackis,*755 A.2d 649 (N.J. Super. Ct. App. Div. 2000)............................. 29

*Sypniewski v. Warren Hills Regional Board of Education*, 307 F.3d 243
    (3d Cir. 2002).................................................................44-45

*Tanimura Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132
    (3d Cir. 2000)......................................................................... 20

*U.S. v. Connecticut*, 566 F. Supp. 571 (D. Conn. 1983)........................................ 36

*U.S. v. Lopez*, 514 U.S. 549 (1995)...................................................................... 23

*U.S. v. Florida,* 585 F. Supp. 807 (N.D. Fla. 1984)................................ 30, 32, 35-36

*Video Software Dealers Ass'n v. Webster*, 968 F.2d 684 (8th Cir. 1992) .............. 41

*Watson v. Buck*, 313 U.S. 387 (1941) ..................................................................... 38

*Winsett v. McGinnes*, 617 F.2d 996 (3d Cir. 1980) ........................................... 51-53

*Wyeth v. Levine*, 555 U.S. 555 (2009) .................................................................... 24

## STATUTES CITED

15 U.S.C. § 5001 ................................................................................................ passim

18 U.S.C. § 921 .................................................................................................. 12, 31

28 U.S.C. § 1291 ........................................................................................................ 1

28 U.S.C. § 1331 ........................................................................................................ 1

28 U.S.C. § 1343 ........................................................................................................ 1

28 U.S.C. § 2201 ........................................................................................................ 1

49 U.S.C. § 2311 ...................................................................................................... 36

N.J. Stat. Ann. § 1:1-10............................................................................................ 40

N.J. Stat. Ann. § 2C:39-1 ........................................................................ 4, 10, 33, 43

N.J. Stat. Ann. § 2C:39-3 ........................................................................................ 33

N.J. Stat. Ann. § 2C:39-9 ........................................................................................ 33

N.J. Stat. Ann. § 2C:58-2 ........................................................................................ 10

N.J. Stat. Ann. §2C:58-3 ................................................................................... passim

N.J. Stat. Ann. § 2C:58-3.4 ............................................................. passim

N.J. Stat. Ann. § 2C:58-4 ...................................................................... 34

N.J. Stat. Ann. § 2C:58-5 ...................................................................... 34

53 Pa. Stat. Ann. § 4736.......................................................................... 50

## SESSION LAWS CITED

2009 N.J. Laws *c.* 104 (approved August 6, 2009)........................................... 10-11

2009 N.J. Laws *c.* 168 (approved January 3, 2010)........................................ 10, 12

2009 N.J. Laws *c.* 186 (approved January 12, 2010)................................. 10, 12, 15

## LEGISLATIVE MATERIALS

134 CONG. REC. H10,072 (daily ed. Oct. 12, 1988)
(Statement of Rep. Carlos Moorehead)........................................... 26-27

134 CONG. REC. H10,073. (daily ed. Oct. 12, 1988)
(Statement of Rep. John Dingell). ............................................................ 27

134 CONG. REC. S15,534 (daily ed. Oct. 11, 1988)
(Statement of Sen. Bob Dole)........................................................... 27-28

## REGULATIONS CITED

N.J. Admin. § Code 13:54-1.4 .................................................. 8, 9, 16-17

## OTHER MATERIALS CITED

Black's Law Dictionary 154 (8th Ed. 2004). ..................................... 28-29

GOVERNOR'S FIREARMS ADVISORY TASK FORCE, INITIAL REPORT (2009). ... 4, 10-12

Kevin Walsh, *Partial Unconstitutionality*, 85 N.Y.U.L. REV. 738 (2010)........ 43-44

## COUNTERSTATEMENT OF JURISDICTION

State Appellees seek an order affirming the District Court's opinion and order of June 14, 2010 and February 2, 2012, which together dismissed plaintiff-appellants' ("plaintiffs") constitutional challenges to New Jersey's One Handgun Per Month Law. A1-25.[1]

The United States District Court properly exercised jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202. Plaintiffs timely filed a Notice of Appeal on March 2, 2012. A26. Accordingly, this Court has jurisdiction to review final orders of the District Court pursuant to 28 U.S.C. § 1291.

---

[1] Citations to "A" refer to the Joint Appendix filed with plaintiffs' brief.

# COUNTERSTATEMENT OF ISSUES

1)     Whether the District Court correctly held that Congress, in enacting 15 U.S.C. § 5001(g)(ii) and preempting the states' power to "prohibit the sale ... of traditional B-B, paint ball [and] pellet-firing air guns," left intact the states' traditional power to regulate such devices, including the power to require purchasers to consummate a bulk purchase at the rate of one per month.

2)     Whether, in the event 15 U.S.C. § 5001(g)(ii) is held to preempt the states' traditional power to regulate traditional B-B, paintball and pellet-firing air guns, New Jersey's severance jurisprudence supports completely invalidating the One Handgun Per Month Law, even though the law could still continue to operate as a viable and vigilant mechanism against the straw purchases of traditional handguns.

3)     Whether the District Court correctly held that plaintiffs do not have a legitimate claim of entitlement to the exemptions contained in N.J. Stat. Ann. § 2C:58-3.4, because the statute grants the Superintendent of the Division of State Police broad discretion in determining whether such an exemption should be issued.

4)     Whether the District Court correctly held that the form used to apply for the exemptions contained in N.J. Stat. Ann. § 2C:58-3.4 does not deprive applicants of any purported right by requiring them – consistent with the plain text of the statute – to identify the particular handguns they wish to purchase with the exemption.

## COUNTERSTATEMENT OF THE CASE

This case concerns a challenge to the constitutionality of New Jersey's One Handgun Per Month Law, which was passed by the Legislature and signed by former Governor Jon S. Corzine in 2009. Concerned about the growing incidence of gun violence, New Jersey enacted the One Handgun Per Month Law to "to deter 'straw purchases' of multiple handguns, that is, purchases of handguns by persons for the purpose of selling or transferring the handguns" to criminals or other unfit elements of society. GOVERNOR'S FIREARMS ADVISORY TASK FORCE, INITIAL REPORT, p.6 (2009). Sa3.[2] The law limits purchasers to one handgun per 30 days. In an effort to avoid inconveniencing law-abiding citizens, the law provides several exemptions, including those for collectors and competitors.

By incorporating the definition of "handgun" contained in N.J. Stat. Ann. § 2C:39-1, the One Handgun Per Month Law applies to weapons which fire ammunition by means of a cartridge, shell or other explosive substance ("traditional handguns"), as well as weapons that fire ammunition by a spring, elastic band, or compressed air, such as a BB, paintball or pellet-firing air gun ("air-powered handguns").

---

[2]Citations to "Sa" refer to the Supplemental Appendix being filed simultaneously with this brief, along with a Notice of Motion and Certification to File a Supplemental Appendix. The Supplemental Appendix contains a full copy of the GOVERNOR'S FIREARMS ADVISORY TASK FORCE, INITIAL REPORT (2009).

Plaintiffs are self-professed gun enthusiasts (Scott L. Bach, Kaare A. Johnson, Vincent Furio, and Steven Yagiello), a licensed retail dealer of firearms ("Bob's Little Sport Shop, Inc.), and an issue-advocacy organization (Association of New Jersey Rifle and Pistol Clubs, Inc.).

On Sunday, January 17, 2010, five days after the last of the amendments to the One Handgun Per Month Law were signed into law, Bach, Johnson, Bob's, and ANJRPC initiated this action in District Court. Less than three months later, and now joined by Yagiello and Furio, plaintiffs filed a First Amended Complaint.

Plaintiffs challenge the constitutionality of the One Handgun Per Month Law, alleging its 30-day proviso prohibits – as opposed to merely regulates – the sale of air-powered handguns and, thus, is preempted by the Federal Toy Gun Law, 15 U.S.C. § 5001(g)(ii), which forbids states from "prohibit[ing] the sale" of such devices. While plaintiffs concede any such preemption is only partial, they contend the entire law must fail, including its application to traditional handguns, because doing otherwise would be inconsistent with the New Jersey Legislature's intent.

In their original and First Amended Complaint, plaintiffs complained the Superintendent had failed to promulgate the form necessary to apply for the exemptions contained in N.J. Stat. Ann. § 2C:58-3.4 (the "Superintendent

Exemptions"). When the form was promulgated and available four months later, plaintiffs filed a Second Amended Complaint, alleging the form's requirement that applicants identify the particular handguns they wish to purchase makes it too difficult to utilize a Superintendent Exemption and, thus, violates the Fourteenth Amendment's Due Process Clause. The statute creating the Superintendent Exemptions, N.J. Stat. Ann. § 2C:58-3.4, requires applicants to identify the "specific exemption sought and the particular handguns to be purchased."

Finally, plaintiffs have alleged claims against a host of municipalities, alleging they are wrongfully denying individuals the right to simultaneously apply for multiple handgun purchase permits. All of these municipalities, except for the City of Hackensack, have entered into voluntary stipulations of dismissal with the plaintiffs. These claims are not directed at the State Appellees.

On June 14, 2010, the District Court issued an Opinion and Order partially granting the State Appellees' Motion to Dismiss the First Amended Complaint for Failure to State a Claim and denying plaintiffs' Motion for Preliminary Injunction. The court correctly dismissed plaintiffs' preemption claims, holding that the One Handgun Per Month Law merely regulates, and does not prohibit, the sale of air-powered handguns. The court declined to address the remaining issues because the Superintendent's promulgation of the forms rendered plaintiffs' claims moot.

On February 2, 2012, after plaintiffs filed a Second Amended Complaint taking issue with the forms used to apply for the Superintendent Exemptions, the court issued its final Opinion and Order. The court granted the State Appellees' Motion to Dismiss the Second Amended Complaint for Failure to State a Claim, denied the plaintiffs' Motion for Summary Judgment and Motion for Permanent Injunction, and declined to exercise jurisdiction over the plaintiffs' state law claims against the City of Hackensack.

The court held that plaintiffs could not establish either a protectable property interest in a Superintendent Exemption, nor a deprivation of any such interest. The court found the Legislature had granted the Superintendent broad discretion in determining whether to issue a Superintendent Exemption, thereby precluding any legitimate claim of entitlement. In the alternative, the court held the application form's requirement upon which plaintiffs focused their challenge – the requirement that individuals identify the particular handguns they wish to purchase – was imposed by the statute. Thus, promulgation of a form consistent with this requirement could not possibly constitute a "deprivation." Accordingly, the court held the plaintiffs could not establish a Due Process claim under the Fourteenth Amendment. Plaintiffs appealed shortly thereafter.

## COUNTERSTATEMENT OF FACTS

I.   **New Jersey's One Handgun Per Month Law And Its Exemptions**

A.   <u>Brief Overview Of New Jersey's Handgun Permitting Process.</u>

New Jersey's Gun Control Law, N.J. Stat. Ann. § 2C:58-1, *et seq.*, is an exercise of the state's police powers that "seeks to prevent criminal and other unfit elements from acquiring lethal weapons while enabling the fit elements of society to obtain firearms with minimal burdens and inconveniences." *Application of Marvin*, 249 A.2d 377, 378 (N.J. 1969). As part of its effort to balance these competing interests, the Gun Control Law requires prospective handgun purchasers to apply for and obtain a Firearms Purchaser Identification Card ("FID") and a handgun purchase permit ("Permit"). N.J. Stat. Ann. § 2C:58-3. While the FID is a prerequisite to obtaining a Permit, applications for both may be submitted simultaneously. *Id.*

Generally, prospective firearms purchasers may apply for a FID and Permit by visiting their local police station and submitting a one-page application, along with two sets of fingerprints and a release for mental health records. N.J. Stat. Ann. § 2C:58-3(e); N.J. Admin. Code § 13:54-1.4(d). A nominal fee of $5.00 for the FID and $2.00 per Permit is also required. N.J. Admin. Code § 13:54-1.4(d).

Upon completing the appropriate background checks, the chief of police must grant the FID and Permit unless "good cause" exists to deny them. N.J. Stat. Ann. § 2C:58-3(f). While the statute expressly provides a 30-day window for such decisions for resident applicants (45 days for non-resident applicants), *see* N.J. Stat. Ann. § 2C:58-3(f), reasonable delays may occur, such as where the Federal Bureau of Investigation or the State Bureau of Investigation fails to timely provide fingerprint reports. *See Adler v. Livak*, 705 A.2d 1218, 1220 (N.J. Super. Ct. App. Div. 1998).

Any prospective firearms purchaser aggrieved by the denial of a FID or Permit may contest the denial in the New Jersey Superior Court. N.J. Stat. Ann. § 2C:58-3(d). Further review is available consistent with the New Jersey Court Rules. *Id.*

A FID remains valid "until such time as the holder becomes subject to any of the disabilities set forth in [N.J. Stat. Ann. § 2C:58-3(c)]." N.J. Stat. Ann. § 2C:58-3(f). A permit is valid for 90 days after it is issued and may be extended an additional 90 days by the issuing authority upon a showing of good cause. *Id.*

New Jersey law expressly provides that "[a]pplicants for a permit to purchase a handgun may apply for more than one [P]ermit per application." N.J. Admin. Code § 13:54-1.4(h). Nothing in the One Handgun Per Month Law modified this provision.

B. The One Handgun Per Month Law Aims To Prevent The Illegal Proliferation Of Handguns.

In August 2009, as part of its "careful grid of regulatory provisions" aimed at preventing criminals from obtaining firearms, *see In re Preis*, 573 A.2d 148, 150 (N.J. 1990), New Jersey adopted the One Handgun Per Month Law. New Jersey's current version of the law is actually a compilation of three separate enactments: 2009 N.J. Laws *c.* 104 (approved August 6, 2009), *c.* 168 (approved January 3, 2010), and *c.* 186 (approved January 12, 2010).

The law limits purchasers to one handgun per 30-day period. *See* N.J. Stat. Ann. § 2C:58-3(i) (except as otherwise provided "no more than one handgun shall be purchased within any 30-day period"); *see also* N.J. Stat. Ann. § 2C:58-2(a)(7) ("[a] dealer shall not knowingly deliver more than one handgun to any person within any 30-day period" unless the person enjoys an exemption). As defined by N.J. Stat. Ann. § 2C:39-1, the term "handgun" includes both traditional handguns and air-powered handguns.

The law was primarily intended "to deter 'straw purchases' of multiple handguns, that is, purchases of handguns by persons for the purpose of selling or transferring the handguns to others who would not lawfully be able to obtain them because of a prior criminal record or other disqualifying circumstances." Sa10.

## C.    The One Handgun Per Month Law's Exemptions.

Consistent with its desire to prevent only the illegal proliferation of handguns, the One Handgun Per Month Law provides several exemptions to allow law-abiding citizens to obtain more than one handgun in a 30-day period. While the initial enactment, 2009 N.J. Laws *c.* 104, provided exemptions for law enforcement and federally-licensed collectors and relics, New Jersey sought to further ameliorate the law's effect on handgun enthusiasts.

Accordingly, on June 26, 2009, more than one month before signing even the initial enactment into law, then-Governor Jon S. Corzine issued Executive Order No. 145, creating a Firearms Advisory Task Force (the "Task Force"). A88. The Task Force was created for the express purpose of "ensur[ing] that lawful firearms collectors and competitive and recreational firearms users are not adversely affected by [the one-handgun-per-month limitation]." Sa6.

The Task Force represented the full spectrum of stakeholders. As expressly required by Executive Order No. 145, the Task Force's membership included representatives from both chambers of the New Jersey Legislature, the New Jersey Attorney General's Office, the New Jersey Division of State Police, the County Prosecutor's Association, as well as groups on opposing sides of the gun control debate – including plaintiff ANJRPC. Sa2.

On November 12, 2009 – after holding several meetings, reviewing the law and its legislative history, receiving presentations from experts, and hosting an all-day public hearing – the Task Force issued its initial report. Sa1-214. The Task Force recommended additional exemptions, Sa16-29, which were then adopted and signed into law as part of the second and third enactments. 2009 N.J. Laws *c.* 168 and *c.* 186.

The exemptions found in all three separate enactments were consolidated and codified in N.J. Stat. Ann. § 2C:58-3(i), which exempts the following groups and transactions from the One Handgun Per Month Law:

> (1)    a federal, State or local law enforcement officer or agency purchasing handguns for use by officers in the actual performance of their law enforcement duties;

> (2)    a collector of handguns as curios or relics as defined in Title 18, United States Code, section 921(a)(13) who has in his possession a valid Collector of Curios and Relics License issued by the federal Bureau of Alcohol, Tobacco, Firearms and Explosives;

> (3)    transfers of handguns among licensed retail dealers, registered wholesale dealers and registered manufacturers;

> (4)    transfers of handguns from any person to a licensed retail dealer or a registered wholesale dealer or registered manufacturer;

> (5)    any transaction where the person has purchased a handgun from a licensed retail dealer and has returned that handgun to the dealer in exchange for another handgun within 30 days of the original transaction,

provided the retail dealer reports the exchange transaction to the [S]uperintendent; or

(6)  any transaction where the [S]uperintendent issues an exemption from the prohibition in this subsection pursuant to the provisions of section 4 of P.L.2009, c.186 (C.2C:58-3.4).

N.J. Stat. Ann. § 2C:58-3(i)(1)-(6).

> 1.  *The Superintendent Exemptions Provide Certain Law-Abiding Citizens, Including Collectors And Competitors, An Avenue By Which To Purchase Multiple Handguns In A 30-Day Period.*

For example, the first Superintendent Exemption benefits those individuals who seek to "purchase multiple handguns from a person who obtained the handguns through inheritance or intestacy" (the "Inheritance Exemption"). N.J. Stat. Ann. § 2C:58-3.4(a)(1).

Another Superintendent Exemption benefits applicants who are "collector[s]" of handguns and have a "need to purchase or otherwise receive multiple handguns in the same transaction or within a 30-day period" in furtherance of their collecting activities (the "Collector's Exemption"). N.J. Stat. Ann. § 2C:58-3.4(a)(2). To remove ambiguity and ensure fair application, the Collector's Exemption defines the terms "need" and "collector."

"Need" for a Collector's Exemption may be demonstrated by showing: 1) "a reasonable likelihood" that the additional handguns will not be available after 30 days; 2) "it would not be feasible or practical to purchase the

handguns separately;" or 3) complying with the One Handgun Per Month Law will have a "materially adverse impact on the applicant's ability to enhance his collection." *Id.* These enumerated circumstances are not all-inclusive. N.J. Stat. Ann. § 2C:58-3.4(a)(2) ("As used in this paragraph, 'need' shall include, but not be limited to . . .").

A person qualifies as a "collector" if he "devotes time and attention to acquiring firearms for the enhancement of [his] collection: as [a] curio[]; for inheritance; for historical, investment, training and competitive, recreational, educational, scientific, or defensive purposes; or any or other lawful related purpose." *Id.* In determining whether the applicant qualifies as a "collector," the Superintendent may not consider "the number of guns in the applicant's collection," or "the merit or validity of the applicant's collecting activities." N.J. Stat. Ann. § 2C:58-3.4(b).

The third Superintendent Exemption encompasses applicants who participate in "sanctioned handgun shooting competitions" (the "Competitor's Exemption"). N.J. Stat. Ann. § 2C:58-3.4(a)(3). An applicant may obtain a Competitor's Exemption by demonstrating that he "needs to purchase or otherwise receive multiple handguns in a single transaction or within a 30-day period, and the need is related to the applicant's competitive shooting activities, including use in or training for sanctioned competitions." *Id.*

14

2. *The Process For Obtaining A Superintendent Exemption.*

N.J. Stat. Ann. § 2C:58-3.4(b) sets forth the process for obtaining a Superintendent Exemption. Applicants "shall certify, on a form prescribed by the Superintendent, the specific exemption sought and the particular handguns to be purchased." N.J. Stat. Ann. § 2C:58-3.4(b). If an applicant lacks information necessary to complete the form, he must provide the information to the Superintendent "as soon as practicable thereafter." *Id.*

Less than four months after the Superintendent Exemptions were signed into law, the Superintendent promulgated the form necessary to apply for them. A246. Consistent with N.J. Stat. Ann. § 2C:58-3.4(b)'s directive that applicants identify "the particular handguns to be purchased," the form requires applicants to identify the serial number of the handguns they wish to purchase ("Handgun Identification Requirement"). *Id.*

## II. The Plaintiffs And Their Claims

On Sunday, January 17, 2010, five days after New Jersey adopted the last of the enactments to the One Handgun Per Month Law, 2009 N.J. Laws *c.* 186, four of the plaintiffs – Bach, Bob's, Johnson, and ANJRPC – filed the first iteration of the Complaint. A50. Less than three months later, the plaintiffs – now joined by Yagiello and Furio – filed their First Amended Complaint. A123.

The Complaint and First Amended Complaint named as defendants the Governor of the State of New Jersey, the New Jersey Attorney General, and Superintendent Colonel Rick Fuentes (collectively, the "State Appellees"). A50, A123.

In addition to the State Appellees, both complaints named Washington Township as a defendant. *Id.* The First Amended Complaint added the City of Hackensack and Little Egg Harbor Township as defendants. A123. Plaintiffs alleged these municipalities refused to process more than one application for a Permit, thereby violating N.J. Admin. Code § 13:54-1.4(h). A142-46. Both Washington Township and Little Egg Harbor Township entered into Stipulations of Dismissal with plaintiffs on April 14, 2010, and March 15, 2011, respectively. A38, A44.

Seven months later, plaintiffs filed the Second Amended Complaint. A41. Other than adding more municipalities as defendants and amending their allegations with respect to the form promulgated to obtain the Superintendent Exemptions, the Second Amended Complaint was identical to the first two complaints. *Cf.* A200-28 *with* A50-71 *and* A123-48.

Counts I and II allege that New Jersey's One Handgun Per Month Law "prohibits the sale of traditional B-B, pellet and air guns," and therefore is preempted by the Federal Toy Gun Law, 15 U.S.C. § 5001(g)(ii), which provides

that "[n]o State shall … prohibit the sale … of traditional B-B, paint ball or pellet-firing air guns . . ." A215-18.

Counts III and IV challenge the Handgun Identification Requirement, alleging it "makes it virtually impossible for all but a select sub-class of the entire class of Exempted Individuals to qualify for the [Superintendent] Exemptions." A220-21. Accordingly, plaintiffs allege the form's inclusion of the Handgun Identification Requirement violates the Due Process Clause of the Fourteenth Amendment by depriving them of a purported property interest in the Superintendent Exemptions. A221.

Finally, Counts V and VI allege that the City of Hackensack violated N.J. Admin. Code § 13:54-1.4(h) when it denied Furio the opportunity to apply for three Permits on February 23, 2010. A222-27. The City of Hackensack's Attorney, Joseph C. Zisa, Jr., submitted a declaration stating that, within three business days of becoming aware of Furio's denial, he huddled with officers at the Hackensack Police Department to ensure multiple handgun purchase permits could be applied for simultaneously. A176. On March 30, 2010, the Superintendent issued guidance to municipalities reminding them that, pursuant to N.J. Admin. Code § 13:54-1.4(h), prospective firearms purchasers could apply for, and obtain, more than one Permit within a 30-day period. A166-70.

## III.  The District Court Dismisses Plaintiffs' Claims

The District Court dismissed plaintiffs' claims in two separate opinions. On June 14, 2010 – while the First Amended Complaint was operable – the court issued an opinion partially granting the State Appellees' motion to dismiss the First Amended Complaint for failure to state a claim and denied plaintiffs' motion for preliminary injunction. A1-12.

The court dismissed plaintiffs' preemption claims (Counts I and II) on the grounds that the One Handgun Per Month Law merely regulated, not prohibited, the sale of air-powered handguns:

> . . . the [One Handgun Per Month Law] does not ban the sale of such [air-powered hand]guns – a person is not prohibited from buying an air-powered handgun today so long as they have a permit to do so. While the [One Handgun Per Month Law] does regulate the timing of an individual's ability to purchase air-powered guns, it neither prohibits their sale nor limits the absolute number of air-powered handguns that an individual can purchase. A6.

The court declined to address the defendants' motions as they pertained to the remaining claims – including the claim that the Superintendent had failed to promulgate the forms necessary to apply for the Superintendent Exemptions – because the application forms had been adopted in April. A10. Instead, the court ordered the parties to submit supplemental briefs addressing the

"impact of these developments" on the remaining portions of the motions to dismiss. A10.

Four months later, plaintiffs filed their Second Amended Complaint, amending their Due Process Claims to allege that the Handgun Identification Requirement rendered the Superintendent Exemptions illusory. *Cf.* A139-41 *with* A218-20. The defendants moved to dismiss for failure to state a claim and the plaintiffs cross-moved for summary judgment and a permanent injunction. A42-43.

On February 2, 2012, the court issued its second and final decision. A13. The court dismissed plaintiffs' due process claims (Counts III and IV) and declined to exercise supplemental jurisdiction over their state law claims against the City of Hackensack (Counts V and VI). A25.

The court offered two grounds for dismissing plaintiffs' due process claims. A19-23. First, the court held that plaintiffs did not have a legitimate claim of entitlement in one or more of the Superintendent Exemptions. A22. Because the statute vested the Superintendent with discretion to deny an exemption "if he finds a reasonable likelihood that the public safety would be endangered by granting [it]," the plaintiffs did not have a "'legitimate claim of interest in a[] [Superintendent] Exemption for procedural due process purposes." *Id.* (citations omitted).

Second, the court held that, even if plaintiffs had a protected property interest, they failed to show they were deprived of such an interest by the State Appellees. *Id.* The form's Handgun Identification Requirement was consistent with the statute's plain language and the Legislature's intent and, thus, could not constitute a deprivation for due process purposes. *Id.*

Plaintiffs appealed. A26.

## COUNTERSTATEMENT OF RELATED CASES AND PROCEEDINGS

State Appellees are not aware of any related cases or proceedings.

## COUNTERSTATEMENT OF THE STANDARD OF REVIEW

This Court exercises plenary review of the District Court's decisions upholding the constitutionality of the One Handgun Per Month Law, granting the State Appellees' motions to dismiss, and denying plaintiffs' motions for summary judgment and a permanent injunction. *Gallo v. City of Philadelphia*, 262 F.3d 217, 221 (3d. Cir. 1998); *Tanimura Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 137 (3d Cir. 2000).

# SUMMARY OF ARGUMENT

The One Handgun Per Month Law merely regulates, not prohibits, the sale of air-powered handguns. As the District Court noted, a purchaser with a valid Permit may purchase an air-powered handgun today. Moreover, collectors, competitors, counterparties to a seller-beneficiary, and law enforcement officers and agencies, may purchase as many air-powered handguns as they desire. Purchasers who do not fall within those categories may also purchase more than one air-powered handgun – all they must do is space apart their purchases by 30 days. Thus, there is no basis to claim the One Handgun Per Month Law conflicts with the Federal Toy Gun Law, 15 U.S.C. § 5001(g), which only preempts those state laws that "prohibit the sale" of air-powered handguns.

Even if the Court found the Federal Toy Gun Law preempts the One Handgun Per Month Law, that only requires enjoining the law's enforcement as it pertains to air-powered handguns, not all handguns as plaintiffs demand. The purpose behind the One Handgun Per Month Law was to fight against the illegal proliferation of handguns and its resulting violence. Enjoining application of the law to air-powered handguns would still leave the law's primary purpose intact.

Finally, the application form promulgated for the Superintendent Exemptions does not violate the Fourteenth Amendment's Due Process Clause. In addition to outlining objective criteria that applicants must meet, the One Handgun

Per Month Law contains a discretionary component – it prohibits the Superintendent from granting an exemption "if he finds a reasonable likelihood that the public safety would be endangered . . ." by doing so. N.J. Stat. Ann. § 2C:58-3.4(b). This discretion precludes a finding that the plaintiffs have a legitimate claim of entitlement to a Superintendent Exemption.

Also, plaintiffs' due process claim fails because they cannot show any deprivation on the part of the State Appellees. The form's Handgun Identification Requirement is consistent with the One Handgun Per Month Law's requirement that applicants for a Superintendent Exemption identify "the specific exemption sought and the particular handguns to be purchased." N.J. Stat. Ann. § 2C:58-3.4. As the District Court correctly observed, if plaintiffs are unhappy with the process for obtaining a Superintendent Exemption under N.J. Stat. Ann. § 2C:58-3.4(b), their "remedy lies with New Jersey's Legislature, not the federal courts." A23.

For these reasons, this Court should affirm the District Court's dismissal of plaintiffs' claims.

## ARGUMENT

POINT I

THE ONE HANDGUN PER MONTH LAW MERELY REGULATES THE SALE OF AIR-POWERED HANDGUNS AND, THUS, IS NOT PREEMPTED BY THE FEDERAL TOY GUN LAW.

"[T]he Supremacy Clause invalidates all state laws that conflict or interfere with an Act of Congress." *Rose v. Arkansas State Police*, 479 U.S. 1, 3 (1986) (per curiam). Such a conflict arises where Congress includes "explicit language" in a statute declaring "an intent to preempt conflicting state law," or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Deweese v. National R.R. Passenger Corp. (Amtrak)*, 590 F.3d 239, 245-46 (3d Cir. 2009).

Preemption "fundamentally is a question of congressional intent." *English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990). Accordingly, the "purpose of Congress is the ultimate touchstone of pre-emption analysis." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (internal quotations omitted).

When Congress legislates in a field traditionally occupied by the states, for example, regulating the illegal proliferation of handguns, *U.S. v. Lopez*, 514 U.S. 549, 582-83 (1995), there is a presumption that the "historic police

powers of the [s]tates were not" preempted. *Wyeth v. Levine*, 555 U.S. 555, 565(2009) (*citing Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). This presumption against preemption cannot be overcome "unless that was the clear and manifest purpose of Congress." *Id.*

The text and legislative history of § 5001(g) demonstrate Congress only intended to prevent states from "prohibit[ing] the sale" of air-powered handguns. Far from declaring a "clear and manifest" intention to displace state law, Congress left the states room to regulate the purchase of such devices and to prevent their misuse. The One Handgun Per Month Law, aimed at preventing straw purchases of handguns, occupies this space by imposing a 30-day waiting period upon individuals seeking to purchase more than one handgun, including an air-powered handgun. And because of the many exemptions included in the law, including the Superintendent Exemptions, the group of affected individuals is relatively small. Under these circumstances, plaintiffs' preemption claim is without merit.

A.   Congress Intended The Federal Toy Gun Law's Preemptive
     Provision To Be Narrow And To Preempt Only Those State
     Laws That "Prohibit" The Sale Of Air-Powered Handguns.

   1.   *Section 5001(g)(ii)'s Plain Text Demonstrates It
        Preempts Only Laws That "Prohibit" The Sale Of Air-
        Powered Handguns.*

The Federal Toy Gun Law's preemptive provision provides in

pertinent part:

> (g)   The provisions of this section shall supersede any
>       provision of State or local laws or ordinances
>       which provide for markings or identification
>       inconsistent with provisions of this section
>       provided that no State shall—
>
>                         ***
>
>       (ii) *prohibit* the sale (other than prohibiting the sale
>       to minors) of traditional B-B, paint ball, or pellet-
>       firing air guns that expel a projectile through the
>       force of air pressure. (emphasis added).

Congress's use of the term "prohibit" (as opposed to "regulate") in

§ 5001(g)(ii) demonstrates Congress's preemptive intent and the statute's

preemptive scope. *Chamber of Commerce v. Whiting*, ____U.S.____, 131 S.Ct.

1968, 1977 (2011) ("When a federal law contains an express preemption clause,

we focus on the plain wording of the clause, which necessarily contains the best

evidence of Congress' pre-emptive intent." (internal quotations omitted));

*Cipollone*, 505 U.S. at 517 ("Congress' enactment of a provision defining the pre-

emptive reach of a statute implies that matters beyond that reach are not pre-empted").

Had Congress intended to prevent states from imposing any regulations on the sale of air-powered handguns – and usurp an area traditionally subject to the states' police powers – it could have done so by simply replacing the word "prohibit" with "regulate." But Congress did not craft the Federal Toy Gun Law in this way. Rather, through its choice of words, Congress opted to preempt only those state laws "prohibit[ing]" the sale of such air-powered handguns. It follows then that state laws that do not prohibit but merely regulate the sale of air-powered handguns, such as the One Handgun Per Month Law, are not preempted. *Cipollone*, 505 U.S. at 517.

> 2. *Nothing In The Federal Toy Gun Law's Legislative History Supports Reading "Prohibit" To Mean "Regulate" In § 5001(g)(ii).*

While the text of the preemptive provision "necessarily contains the best evidence of Congress' pre-emptive intent," *Whiting*, \_\_\_\_U.S.\_\_\_\_, 131 S. Ct. at 1977, the "'structure and purpose of the statute as a whole,'" is also of significance. *Lohr*, 518 U.S. at 486 (*citing Gade v. National Solid Wastes Mgt.*, 505 U.S. 88, 98 (1978)).

The Federal Toy Gun Law was Congress's response to the "potential hazards and misuses" posed by "an object that resembles a deadly weapon." 134

CONG. REC. H10,072 (daily ed. Oct. 12, 1988) (Statement of Rep. Carlos Moorehead). Some states and local governments had adopted laws requiring consistent markings on toy guns or imitations to distinguish them from their deadly counterparts. 134 CONG. REC. H10,073. (daily ed. Oct. 12, 1988) (Statement of Rep. John Dingell). However, these marking and packaging requirements imposed conflicting obligations on toy gun manufacturers. 134 CONG. REC. S15,534 (daily ed. Oct. 11, 1988) (Statement of Sen. Bob Dole). Even more problematic, some states had gone so far as to ban such devices altogether. 134 CONG. REC. H10,073. (daily ed. Oct. 12, 1988) (Statement of Rep. John Dingell).

To address the fact that "some imitation firearms are so realistic as to be absolutely indistinguishable from real firearms," 134 CONG. REC.S15,534 (daily ed. Oct. 11, 1988) (Statement of Sen. Bob Dole), and to provide the toy gun industry with a uniform-marking system, Congress enacted the Federal Toy Gun Law, 15 U.S.C. § 5001. The law was supported by the hobby and toy manufacturing industries and was "quite simple in its thrust:"

> It requires toy guns, replicas, look-alikes, imitations, water guns, and others, with certain exceptions, to have blaze orange plugs or similar markings permanently attached to the barrel.

134 CONG. REC.S15,534 (daily ed. Oct. 11, 1988) (Statement of Sen. Bob Dole); *see also* 15 U.S.C. § 5001(a) (making it unlawful to manufacture or sell a toy gun or look-alike firearm without the appropriate markings); § 5001(b) (describing the

required markings). The law exempted air-powered handguns from the marking requirements. *See* 15 U.S.C. § 5001(c).

In other words, the Federal Toy Gun Law was borne out of Congress's desire to prevent the criminal misuse of toy guns and relieve the toy gun industry of the conflicting marking and packaging requirements being imposed by states and local governments. The impetus behind the law was not, as plaintiffs suggest, Congress's desire to enact a law that would place the regulation of air-powered handguns beyond the reach of state and local regulation.

Indeed, the limited debates regarding the preemption provision, § 5001(g)(ii), support the State Appellees's view: Congress sought only to prevent states from prohibiting the sale of air-powered handguns and drafted the statute accordingly. In discussing the preemptive scope of § 5001(g), Senator Bob Dole remarked:

> Any State or local laws or ordinances which provide for inconsistent or conflicting marking or identification shall be preempted and superseded. For example, a local ordinance banning sale of traditional B-B, paint ball, or pellet-firing air guns would be of no force and effect. Also, if there were a State law that required a green colored plug or a red stripe on the side it too would be nullified.

134 Cong. Rec.S15,535 (daily ed. Oct. 11, 1988) (Statement of Sen. Bob Dole).

Senator Dole's Statement, specifically in its use of the word "banning," comports perfectly with the plain text of § 5001(g)(ii). The Eighth

Edition of Black's Law Dictionary defines "ban" as follows: "To *prohibit*, esp. by legal means." Black's Law Dictionary 154 (8th Ed. 2004) (emphasis added).

The court in *State v. Rackis* understood this point. In analyzing the preemptive scope of § 5001(g)(ii), the court analyzed the provision's text and legislative history and correctly concluded that Congress intended only to preempt those state laws that would "prohibit" the sale of air-powered handguns. 755 A.2d 649, 652-54 (N.J. Super. Ct. App. Div. 2000) ("Therefore, in order to protect manufacturers and the rights of the public to buy and possess such guns, Congress enacted a specific proviso precluding states from prohibiting the sale of antique replicas and pellet-firing air guns. Notably, the express language of § 5001(g) only precludes states from prohibiting the sale of such guns and is silent as to whether a state can in fact regulate who can obtain these guns"). Thus, Congress's selection of the word "prohibit" in § 5001(g)(ii) was deliberate, not accidental, and reflects Congress's narrow intent: to preempt only those state laws that prohibit the sale of air-powered handguns. The One Handgun Per Month Law steers clear of this preemptive provision.

> **B.** The One Handgun Per Month Law Merely Regulates – Not Prohibits – The Sale Of Air-Powered Handguns.

At the outset, and as the District Court pointed out, a New Jersey resident desiring to purchase an air-powered handgun may do so today, so long as he has a valid permit. A6. Even plaintiffs do not dispute this fact. *See generally*

*Pls.' Br.* at p. 26. Thus, it cannot be seriously contended that the One Handgun Per Month Law *prohibits* the purchase and sale of air-powered handguns.

Evidently aware that the One Handgun Per Month Law does not operate as a *per se* prohibition on the sale of air-powered handguns, plaintiffs attempt to paint the Federal Toy Gun Law as a *"de facto* prohibition," arguing that it "entirely prohibits the sale of [air-powered handguns] 96% of the time." *Pls.' Br.* p. 26. Plaintiffs' characterization is misleading, and their reliance on *Coalition of New Jersey Sportsmen v. Florio*, 744 F. Supp. 602 (D.N.J. 1990), *New York State Motor Truck Ass'n v. New York*, 654 F. Supp. 1521 (S.D.N.Y. 1987), and *United States v. Florida*, 585 F. Supp. 807 (N.D. Fla. 1984), was rejected by the District Court and should be rejected by this Court, too.

> 1.    The One Handgun Per Month Law Is Not A "De Facto Prohibition" On The Sale Of Air-Powered Handguns.

The One Handgun Per Month Law provides several exemptions for those desiring to purchase more than one handgun, including air-powered handguns, in a 30-day period. Even before considering the Superintendent Exemptions, the One Handgun Per Month Law excepts certain individuals and entities from its 30-day limitation. Law enforcement officers and agencies seeking to make a bulk purchase of handguns may do so at any time. N.J. Stat. Ann. § 2C:58-3(i)(1). Those who possess a valid Collector of Curios and Relics License

pursuant to 18 U.S.C. § 921(a)(13) are similarly exempt. N.J. Stat. Ann. § 2C:58-3(i)(2).

The Superintendent Exemptions offer additional avenues by which bulk purchases can be made within a 30-day period. Collectors and competitors can avoid the 30-day limitation by applying for and obtaining a Collector's or Competitor's Exemption. N.J. Stat. Ann. § 2C:58-3.4(a)(2), (3). The law even accounts for the problem of beneficiaries who inherit handguns and wish to quickly dispose of them. The Inheritance Exemption serves as an effective means for consummating a transaction between such seller-beneficiaries and their counterparties. N.J. Stat. Ann. § 2C:58-3.4(a)(1).

For those who fall under one of the enumerated exemptions, including any of the Superintendent Exemptions, the One Handgun Per Month Law places no limit on the number of air-powered handguns they can purchase at any one time. These individuals are constrained only by market forces and their own financial resources in their pursuit of these devices.

That leaves only one class of individuals subject to the One Handgun Per Month Law's 30-day limitation – individuals who are not law enforcement officers, collectors, competitors, or counterparties to a seller-beneficiary, but who nonetheless wish to purchase several air-powered handguns within 30 days ("Non-Exempt Purchasers"). The One Handgun Per Month Law still permits this group to

purchase multiple air-powered handguns; the law simply regulates the timing of the purchases. This is not a "prohibit[ion]" on sales, as these individuals can still buy as many air-powered handguns as they desire, so long as they wait 30 days between purchases. For example, a Non-Exempt Purchaser who wishes to buy three BB guns can still do so; he can purchase a BB gun on July 4, another on August 4, and yet another on September 4. Neither buyer nor seller is financially injured, as the seller will receive money for three BB guns and the buyer will pay money for three BB guns.

Thus, plaintiffs' contention that the One Handgun Per Month Law prohibits the sale of air-powered handguns 96% of the time is incorrect. When the law, including its several exemptions, is fully evaluated, it becomes apparent that it affects a relatively small segment of bulk purchasers. And even then, the law only slows the rate of the bulk purchase, it does not prohibit the purchase.

2. *Plaintiffs' Reliance On Coalition Of New Jersey Sportsmen, New York State Motor Truck Ass'n, And Florida Is Misplaced.*

In *Coalition of New Jersey Sportsmen,* the court considered whether New Jersey's "ban on large capacity magazines and regulation of semi-automatic, 'assault firearms'" – to the extent they also applied to air-powered firearms – were preempted by § 5001(g)(ii). 744 F. Supp. at 603. While the court ultimately

concluded that § 5001(g)(ii) preempted New Jersey law, its ruling was guided by two significant facts that are absent here.

First, *Coalition of New Jersey Sportsmen* involved, at least in part, an explicit prohibition, not regulation. 744 F. Supp. at 608. N.J. Stat. Ann. § 2C:39-3(j) and N.J. Stat. Ann. § 2C:39-9(h) explicitly prohibited the sale or possession of "any semi-automatic B-B or pellet guns that had non-detachable magazines in excess of fifteen rounds." *Id.* The court held that such a prohibition was expressly preempted by § 5001(g)(ii). *Id.* Nothing in the One Handgun Per Month Law expressly prohibits the sale of air-powered handguns.

Second, the process for purchasing an air-powered assault firearm was found to be much more onerous than waiting 30 days between purchases as the One Handgun Per Month Law requires. The ban on unlicensed assault firearms, N.J. Stat. Ann. §2C:39-9(g), incorporated N.J. Stat. Ann. §2C:39-1(w)'s definition of "assault firearm," thereby bringing within its scope any "semi-automatic B-B and pellet-firing air guns designed to be fired from the shoulder and which have either a magazine of more than six rounds, a pistol grip, or a folding stock." *Id.* This required purchasers seeking to buy these air-powered assault rifles to go through the same process as those seeking to purchase traditional assault rifles. *Id.* The court found this process to be so "extremely rigorous" that it constituted a *de*

*facto* prohibition on the sale of air-powered assault rifles and, thus, preempted by § 5001(g)(ii). *Id.*

The court described the process as follows: The purchaser must first be qualified to carry a handgun under N.J. Stat. Ann. § 2C:58-4, which disqualifies, among others, those suffering from an addiction, mental illness, alcoholism, or from any disability that makes it unsafe to handle firearms. *Id.* Assuming the purchaser is so qualified, he must petition the New Jersey Superior Court, "setting forth in detail" why he seeks an assault firearm. *Id.* The Superior Court then refers the matter to the county prosecutor's office "for investigation and recommendation." *Id.* "Based upon the recommendation, the Superior Court may grant the license only upon an express finding that the public safety and welfare so require . . ." and may "place any conditions and limitations on the license as it deems in the public interest." *Id.* Any license issued would be valid for only two years, and after that the individual must re-apply as if he was applying for the first time. *Id.* at 608 (*citing* N.J. Stat. Ann. § 2C:58-5). The court found such a procedure so onerous that it constituted a *de facto* prohibition on the sale of air-powered assault rifles and, therefore, in conflict with § 5001(g)(ii). *Id.*

But the One Handgun Per Month Law does not impose such onerous requirements. Those seeking to purchase more than one air-powered handgun are not required to file any written application with the New Jersey Superior Court.

34

Nor are they required to detail their reasons for seeking multiple air-powered handguns. No prosecutor investigates the purchaser's motives. And no court must expressly find that public safety and welfare require consummation of the transaction. Rather, the One Handgun Per Month Law simply requires purchasers seeking more than one air-powered handgun to wait 30 days between purchases. And as described above, this requirement contains several exemptions, including the Superintendent Exemptions. Accordingly, the decision in *Coalition of New Jersey Sportsmen* is inapposite.

Similarly misplaced is plaintiffs' reliance on both *New York State Motor Truck Ass'n* and *Florida*. Plaintiffs appear to cite these cases for the proposition that, where federal law forbids states from prohibiting an activity, the states run afoul of this mandate by placing time-of-day restrictions on the activity. *Pls.' Br.* p. 34-35. At the outset, it does not appear the courts in either of those cases applied the presumption against preemption and, thus, plaintiffs' burden to prove preemption in those cases was much less than it is here. But more importantly, plaintiffs badly misconstrue the factual core holding those decisions together.

In *New York State Motor Truck Ass'n*, seven common carriers and their state association challenged, among other things, a New York City regulation prohibiting tandem trailers and semi-trailers from using certain highways except

between the hours of 10 a.m. and 2 p.m. or 9 p.m. and 7 a.m. 654 F. Supp. at 1523, 29. Plaintiffs claimed the regulation was preempted by the Surface Transportation Assistance Act of 1982 ("STAA"), 49 U.S.C. § 2311(c), which provided that "'states may not prohibit tandem trailers . . . from any part of the Interstate System.'" *Id*. at 1525 (*citing United States v. Connecticut*, 566 F. Supp. 571, 573 (D.Conn.), *aff'd mem.*, 742 F.2d 1443 (2d Cir. 1983), *aff'd mem.*, 465 U.S. 1014, 104 S. Ct. 1263, 79 L. Ed. 2d 670 (1984)).

The court agreed, but only because New York City's regulations defeated Congress's intent to "relieve commercial trucking operators of the burden inherent in planning and operating a multistate haul. . ." 654 F. Supp. at 1536. Allowing New York City's time-of-day regulation to stand would mean "other, adjoining states, in this case New Jersey and Connecticut, would possess similar powers to limit the hours of operation of tandems on Interstate highways within *their* borders." *Id*. This, in turn, could lead to an untenable situation for commercial carriers and defeat the purposes behind the STAA:

> If New York, New Jersey and Connecticut were each to adopt a so-called use restriction geared to a time of day, and these restrictions were not perfectly synchronized, they could in fact make this region totally impassable to STAA equipment.

*Id*. at 1536 (quotations and citations omitted). The court in *Florida* reached the same result on those same grounds. 585 F. Supp. at 810.

But no such issues are present here. As noted in Point I(A), *supra*, Congress did not pass the Federal Toy Gun Law to ensure a market for air-powered handguns unfettered by any and all state or local regulations. The law's plain text and legislative history support a finding that Congress intended to preempt only those state laws that "prohibit" the sale of air-powered handguns. 15 U.S.C. § 5001(g)(ii). And the One Handgun Per Month Law does not defeat Congress's intent.

Nothing in the One Handgun Per Month Law, either in its plain text or its application, could possibly lead to a situation where the sale of air-powered handguns are ultimately prohibited. As noted, when the law's many exemptions are considered, the law only applies to a select group of individuals. And even this select group may purchase air-powered handguns; they must simply space apart their purchases by 30 days. But the sale will still occur. Accordingly, the situations presented in *New York State Motor Truck Ass'n* and *Florida* – namely, the concern that permitting state and local time-of-day regulations could altogether prevent tandem trailers and semi-trailers from using interstate highways – are not present here.

The One Handgun Per Month Law does not rise to the level of a *de facto* prohibition on the sale of air-powered handguns. The law effectively balances the rights of law-abiding citizens with the need to control the illegal

proliferation of handguns. Accordingly, there is no basis to find that any portion of the law is preempted by 15 U.S.C. § 5001(g)(ii)

## POINT II

EVEN IF THIS COURT HELD THAT § 5001(g)(ii) PREEMPTS THE ONE HANDGUN PER MONTH LAW, THAT ONLY WARRANTS ENJOINING THE ONE HANDGUN PER MONTH LAW AS IT APPLIES TO AIR-POWERED HANDGUNS – NOT ALL HANDGUNS.

Even if this Court finds that the text and legislative history of § 5001(g)(ii) demonstrate that Congress clearly and manifestly intended to proscribe any regulation on the sale of air-powered handguns, it should still reject plaintiffs' attempt to strike the One Handgun Per Month Law *in toto*. Plaintiffs urge that anything less than complete invalidation of the statute would require fundamental alteration of New Jersey law, particularly as it relates to the definition of a "firearm." This argument finds no support under New Jersey's "common sense" approach to statutory severance.

### A. New Jersey's Severance Jurisprudence Militates Against Striking Down The One Handgun Per Month Law *In Toto*.

The severability of a state law that is partially preempted is determined by the law of that state. *New Jersey State Chamber of Commerce v. Hughey*, 774 F.2d 587, 596 (3d Cir. 1985) (*citing Watson v. Buck*, 313 U.S. 387, 395-96 (1941)). New Jersey favors severing a statute to save it and, indeed,

enacted a provision, N.J. Stat. Ann. § 1:1–10, "creat[ing] a presumption of severability." *Id*. at 596 (*citing Rutgers Chapter of Upsilon Fraternity v. City of New Brunswick*, 28 A.2d 759, 763 (N.J. Super. Ct. App. Div. 1942)). This presumption disappears only where severance "would cause results not contemplated or desired by the legislature . . ." *Rutgers Chapter of Delta Upsilon Fraternity*, 28 A.2d at 762 (citations omitted). In other words, New Jersey employs "a common-sense approach to severability, holding that an invalid provision is severable if that is in keeping with legislative intent[.]" *Hughey*, 774 F.2d at 597.

The Legislature's "intent is ascertained by looking to the broad purpose of the statute, the degree to which the valid and invalid provisions are intertwined with one another, and the extent to which the statute remains comprehensive and logical after the invalid provisions are excised." *Id*. at 597-98. The court "must determine whether 'the objectionable feature can be excised without substantial impairment of or conflict with the over-all legislative purpose.'" *N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 396 (3d Cir. 2012) (*citing N.J. Chapter, Am. Inst. of Planners v. N.J. State Bd. of Prof'l Planners*, 227 A.2d 313, 319 (N.J. 1967); *see also Brady v. N.J. Redistricting Comm'n*, 622 A.2d 843, 849 (N.J. 1992) ("In deciding whether the principle of severability applies, we consider whether the Legislature designed that the enactment stand or fall as a unitary whole." (internal quotations omitted)).

Here, if the Court finds § 5001(g)(ii) preempts the One Handgun Per Month Law, it should only enjoin the law as it pertains to air-powered handguns, not all handguns, as plaintiffs demand. The legislative intent of the One Handgun Per Month Law is easy to ascertain: the Legislature intended to prevent the illegal proliferation of handguns by requiring bulk purchasers to space apart their purchases by thirty days. Sa11 ("The overarching concern of the proponents of the legislation was on violent crimes committed with illegally obtained handguns").

Far from defeating the presumption of severability, N.J. Stat. Ann. § 1:1-10, the legislative intent behind the One Handgun Per Month Law actually supports severance if necessary. Considering that the Legislature's aim was to reduce the illegal proliferation of handguns, it is plainly incorrect to suggest that the Legislature's intent would be frustrated or defeated by narrowing the scope of the law to exclude air-powered handguns from its ambit. The law's primary aim – stopping the illegal proliferation of traditional handguns and, consequently, reducing gun violence and saving lives – would remain capable of being carried out even after severance. Thus, severance would be in "keeping with legislative intent." *See Hughey*, 774 F.2d at 597-98.

Also, severance would not disturb the logical coherence of the statute. This is not a case involving a facial challenge for vagueness or overbreadth, where the remedy – declaring the contested language a nullity – would require the court

to rewrite the statute so as to render it operable. *See, e.g., Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 688-91 (8th Cir. 1992) (where state statute banned videos and display cases that "depict[] violence in a way which is patently offensive to the average person," court found the term "violence" unconstitutionally vague and held that substituting its own definition would invade the legislative domain). Rather, this is a case where the remedy – an injunction barring application of the One Handgun Per Month Law to air-powered handguns – has no collateral impact. Indeed, the very same case plaintiffs rely on in support of their argument for preemption, *Coalition of New Jersey Sportsmen*, soundly defeats their arguments against severability.

In *Coalition of New Jersey Sportsmen*, after the court determined § 5001(g)(ii) preempted New Jersey's ban on air-powered firearms with large capacity magazines and its *de facto* prohibition of the sale of air-powered assault rifles, the court entered an order enjoining the state from enforcing the law and prosecuting owners of air-powered firearms with large capacity magazines or owners of air-powered assault rifles. 744 F. Supp. at 610. Since then, New Jersey's ban on large capacity magazines and assault rifles – though no longer applicable to air-powered firearms with large capacity magazines and air-powered assault rifles – has continued to remain an effective public safety measure.

Similarly, if this Court finds § 5001(g)(ii) preempts New Jersey's One Handgun Per Month Law as it applies to air-powered handguns, it would instruct the District Court to enter an order enjoining the State Appellees from enforcing or prosecuting those who purchase more than one air-powered handgun within a thirty day period. The statute would continue to operate, unfettered, in its application to traditional handguns.

Accordingly, if it were necessary to sever the One Handgun Per Month Law, enjoining its enforcement as it pertains only to air-powered handguns would be completely consistent with and promote the Legislature's intent. There is no risk that severance would render the statute illogical or incoherent. Such a ruling is in line with New Jersey's common sense approach to severability.

B. Neither Judicial Craftmanship Nor Judicial Surgery Is Necessary To "Save" The One Handgun Per Month Law.

Plaintiffs' contend that, if this court concludes that § 5001(g)(ii) preempts the One Handgun Per Month Law as applied to air-powered handguns, there is no conceivable way to sever the One Handgun Per Month Law to save it. *Pls.' Br.*, pp. 37-38. They posit that the One Handgun Per Month Law cannot be saved by narrowing construction because doing so would require "rewriting the statute or changing the pre-existing definition that the statute employs." *Id.* at pp. 40-41. According to plaintiffs, the Court can only narrow the statute's scope by "adding an express exception" to the One Handgun Per Month Law for air-

powered handguns, or amending "New Jersey's longstanding definition of 'handgun' or 'firearm'" in N.J. Stat. Ann. § 2C:39-1, so as to exclude air-powered handguns. *Id.* at p. 41.

Similarly, they contend that excision is unworkable because "[t]he only language that even theoretically could be excised as a remedy does not even appear in the [One Handgun Per Month Law], but rather is found" in a separate provision, N.J. Stat. Ann. § 2C:39-1, which defines "firearm" to include air-powered handguns. *Id.* at pp. 43-44. Plaintiffs appear to believe that severance would require the Court to excise all air-powered handguns from the definition of "firearm" inN.J. Stat. Ann. § 2C:39-1. *Id.* at p. 44. They warn that "such radical 'judicial surgery' would sweep far too broadly by suddenly rewriting all the laws in Chapters 39 and 58 . . ." *Pls.' Br.* p. 44. These arguments are without merit and share two common errors.

First, these arguments mischaracterize severance. "There is no judicial Exacto knife that courts use to excise words from the statute books." Kevin Walsh, *Partial Unconstitutionality*, 85 N.Y.U.L. REV. 738, 747 (2010); *see also Rutgers Chapter of Delta Upsilon Fraternity*, 28 A.2d at 762 ("'It is by a mere figure of speech that we say an unconstitutional provision of a statute is stricken out.'" (*citing State ex rel. McNeal v. Dombaugh*, 20 Ohio St. 167, 174(Ohio 1870))). Rather, where a court finds a statutory provision unconstitutional, the court simply

enters an order declaring the offending provision unconstitutional and, in appropriate cases, enjoining its enforcement. Walsh, *Partial Unconstitutionality*, 85 N.Y.U.L. REV. at 747. But "[n]othing about the actual text of the statute changes as a direct consequence of judicial action." *Id.*

Accordingly, plaintiffs' claim that the Court will have to amend New Jersey's Gun Control Law by adding or deleting words are unfounded. This Court could give preemptive effect to § 5001(g)(ii) with respect to air-powered handguns and, at the same time, allow the One Handgun Per Month Law to continue to operate as it pertains to traditional handguns. An Order enjoining the law's enforcement as it pertains to air-powered handguns would accomplish both of those tasks. The more than 20 years that have passed since the court decided *Coalition of New Jersey Sportsmen* unequivocally demonstrates that such an Order will not collaterally disrupt New Jersey's Gun Control Law.

Second, the vast majority of legal authorities cited by plaintiffs in support of both arguments share a characteristic that makes them easily distinguishable: they involve cases where the court, after finding the statute vague or overbroad, was faced with the task of redefining the amorphous terms and declined. *See, e.g., Conchatta Inc. v. Miller*, 458 F.3d 258, 266 (3d Cir. 2006) (in case involving ban on "lewd entertainment," court declined task of interpreting "lewd entertainment" to bring it within constitutional bounds); *Sypniewski v.*

*Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 264-65 (3d Cir. 2002) (where school's harassment policy prohibited, among other things, conduct that "creates ill will," court declined to interpret phrase and held that portion of policy was unconstitutional); *Planned Parenthood v. Farmer*, 220 F.3d 127, 136 (3d Cir. 2000) (where statute prohibited "an abortion in which the person performing the abortion partially vaginally delivers a living human fetus before killing the fetus and completing the delivery," the court found the phrases "partially vaginally delivers" and "living human fetus," vague and overbroad and declined to re-define them); *Hamar Theatres, Inc. v. Cryan*, 365 F. Supp. 1312 (D.N.J. 1973) (where court found definition of "obscenity" in anti-obscenity statute to be unconstitutional, court declined task of re-defining the term and noted that operative provisions of the anti-obscenity statute could not stand without a suitable definition of "obscenity").

The one cited case that does not fall into the above group, *Randall v. Sorrell*, 548 U.S. 230 (2006), is just as easily distinguishable. *Randall* involved a First Amendment challenge to Vermont's campaign finance statute, specifically its contribution limits. 548 U.S. at 246. The Court found the statute unconstitutionally burdened the First Amendment because its ceiling on contributions – for example, up to $400 for a candidate running for statewide office – was too low, a problem exacerbated by the statute's definition of "contribution" to include expenses

incurred during volunteering, and its failure to include an inflation index. *Id*. at 253-62. The Court opted against partial invalidation because doing so would require the Court to unilaterally raise the ceiling on contributions, install an inflationary index, and otherwise invade the legislative domain. *Id*. at 262. As the Court explained:

> To sever provisions to avoid constitutional objection here would require us to write words into the statute (inflation indexing), or to leave gaping loopholes (no limits on party contributions), or to foresee which of many different possible ways the legislature might respond to the constitutional objections we have found. Given these difficulties, we believe the Vermont Legislature would have intended us to set aside the statute's contribution limits, leaving the legislature free to rewrite those provisions in light of the constitutional difficulties we have identified.

*Id*. at 262.

None of the problems cited in these cases is present here. As shown above, in the event this Court finds the One Handgun Per Month Law preempted by § 5001(g)(ii), it will not have to interpret or redefine "handgun," "firearm," or any other phrase or term in a New Jersey statute. Nor will it have to add or delete phrases or terms to bring the One Handgun Per Month Law into compliance with the Constitution. Instead, the Court would only need to give effect to § 5001(g)(ii)'s preemptive provision by entering an Order enjoining application of

the One Handgun Per Month Law to "traditional B-B, paint ball or pellet-firing air guns." Thus, the authority cited by plaintiffs is inapposite.

Accordingly, if the Court finds preemption, it should only partially invalidate the One Handgun Per Month Law. Consistent with New Jersey's common sense approach to severance, the law should continue to remain a viable law enforcement tool as applied to traditional handguns. _

### POINT III

PLAINTIFFS' INABILITY TO INDUCE PRIVATE SELLERS TO WAIT UNTIL THEY CAN OBTAIN A SUPERINTENDENT EXEMPTION DOES NOT MAKE THE STATE APPELLEES LIABLE FOR A DUE PROCESS VIOLATION.

Plaintiffs also complain that "[t]he manner in which the [One Handgun Per Month Law] has been implemented violates Due Process." *Pls.' Br.* at p. 54. Specifically, they take issue with the Handgun Identification Requirement in the form used to apply for the Superintendent Exemptions.

Plaintiffs claim this requirement means they must first determine which handguns they wish to purchase and then apply for and obtain a Superintendent Exemption. They claim this is unworkable because it forces the seller to take their inventory off the market until the application is processed. As the argument goes, no seller is willing to do such a thing and, thus, the

Superintendent Exemptions are rendered illusory by the form's Handgun Identification Requirement. *Pls.' Br.* pp. 55-56.

Plaintiffs assert a claim under the Fourteenth Amendment's Due Process Clause, claiming the form's Handgun Identification Requirement deprives them of a protected property interest – a Superintendent Exemption – by making it difficult to find a seller-counterparty.

To state a viable procedural due process claim, a plaintiff must show that (1) a state actor deprived him of an "individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). As the District Court correctly held, plaintiffs can show neither element.

A.     Plaintiffs Do Not Enjoy A Protected Property Interest In The Superintendent Exemptions.

Absent a protected property interest, a procedural due process claim necessarily fails. *Hill*, 455 F.3d at 233-34. For a benefit to constitute a protected property interest, "a person clearly must have more than an abstract need or desire for it. . . . [or] a unilateral expectation of it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Rather, the person must "have a legitimate claim of entitlement" to the benefit. *Id.*

Property interests are not created by the Constitution, but rather "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* "Although the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 9 (1978) (*citing Roth*, 408 U.S. at 577).

A dispositive factor in determining whether a statutorily-created benefit constitutes property is the discretion placed in the official administering the benefit. *See Midnight Sessions, Ltd. v. Philadelphia*, 945 F.2d 667, 679 (3d Cir. 1991). Where the statute grants the official broad discretion, it precludes a finding that the benefit constitutes a protected property interest. *Id.*

For example, in *Midnight Sessions*, plaintiffs sued the City of Philadelphia alleging they were wrongfully denied a license for a dance hall. *Id.* at 670. Among other claims, plaintiffs alleged their due process rights had been violated by the denial. *Id.* Faced with the task of determining whether the license constituted a protected property interest, the court looked to the licensing statute's text, which permitted issuance of a license only where the "facility complies with 'all laws, ordinances, health and fire regulations, applicable thereto, *and is a safe*

*and proper place* for the purpose for which it shall be used.'" *Id*. at 679 (*citing* 53 Pa. Stat. Ann. § 4736). The court held that that, while the statute included certain objective criteria – namely, whether the facility complied with "laws, regulations and ordinances" – it also included a discretionary component – specifically, whether the facility "is a safe and proper place for the purpose for which it shall be used." *Id*. The court found this broad discretionary component "precludes a finding that an applicant has a 'legitimate claim of entitlement' in a dance hall license for procedural due process purposes . . ." *Id*.

As the District Court correctly noted, the One Handgun Per Month Law vests the Superintendent with similar discretion, thus precluding a finding of a legitimate claim of entitlement to a Superintendent Exemption. N.J. Stat. Ann. § 2C:58-3.4(a) provides that the "[S]uperintendent may grant [a Superintendent Exemption] . . . if the applicant demonstrates to the satisfaction of the [S]uperintendent" that he falls into one of the three categories enumerated in subsection (a). But meeting the criteria in subsection (a) only begins the query, not ends it.

That is because N.J. Stat. Ann. § 2C:58-3.4(b) provides an additional qualification, much like the statute in *Midnight Sessions*. N.J. Stat. Ann. § 2C:58-3.4(b) provides in pertinent part: "The [S]uperintendent shall not grant an exemption if he finds a reasonable likelihood that the public safety would be

endangered by granting the exemption . . ." This grant of discretion is nearly identical to the grant of discretion considered in *Midnight Sessions* and, thus, precludes plaintiffs' claim that they have a legitimate claim of entitlement to the Superintendent Exemptions.

Plaintiffs' reliance on *Olim v. Wakinekona*, 461 U.S. 238 (1983) and *Winsett v. McGinnes*, 617 F.2d 996 (3d Cir. 1980), is misplaced for three reasons. First, both cases involved a deprivation of a liberty interest in the context of a prison setting. None of those features are present in this case. *Olim*, 461 U.S. at 240; *Winsett*, 617 F.2d at 998.

Second, in *Sandin v. Conner,* 515 U.S. 472 (1995), the United States Supreme Court repudiated the approach set forth and relied on in *Olim* and *Winsett.* *See id.* at 481-84 (abandoning approach whereby prisoners' liberty interest would focus on "language of a particular regulation" in favor of approach focused on "the nature of the deprivation"); *see also Asquith v. Volunteers of Am.,* 1 F. Supp. 2d 405, 416 (D.N.J. 1998) ("This exclusive focus on State law, with its lack of any explicit consideration of the nature of the interest involved, is the methodology that was rejected in *Sandin*. Therefore, *Winsett* is called into doubt by *Sandin* and does not control this case").[3]

---

[3]The only reason *Sandin* did not explicitly overrule *Olim* was because *Olim*, despite its incorrect approach, actually came to the correct result. *Sandin*, 515 U.S. at 484 n. 5. ("Such abandonment of *Hewitt's* methodology does not technically require us

Finally, even if this Court employed *Olim* or *Winsett*'s approach, plaintiffs still cannot show a protected property interest in the Superintendent Exemptions. Plaintiffs cite *Olim* for the proposition that "a State creates a protected liberty interest by placing substantive limitations on official discretion" and by requiring the official to make his or her decision based on 'objective and defined criteria.'" *Pls.' Br.*, p. 49 (*citing Olim*, 461 U.S. at 249). But N.J. Stat. Ann. § 2C:58-3.4(b) does not require the Superintendent to make his decision based solely on "objective and defined criteria." As explained above, N.J. Stat. Ann. § 2C:58-3.4(b) contains a discretionary component that must be satisfied before a Superintendent Exemption is issued. Thus, plaintiffs' reliance on *Olim* is of no benefit to them.

Plaintiffs' reliance on *Winsett* also misses the mark. Plaintiffs posit that "the nature of the discretion held by the official must be understood in the context of the purpose and policy behind the program." *Pls' Br.*, p. 50. According to plaintiffs, this means that where the purpose behind the statute is to allow qualified individuals to obtain a benefit, a protectable property interest arises irrespective of any discretion granted to the administrator. *Id*. They then use this supposed "rule" and argue, "[s]imilarly, the policy behind the [Superintendent] Exemptions is that [c]ollectors and [c]ompetitors who satisfy the statutory criteria

to overrule any holding of this Court. The Court in *Olim*. . . concluded no liberty interest was at stake").

52

should be able to purchase more than one handgun in a 30-day period" and, thus, the Legislature "create[d] a legitimate claim of entitlement to a[] [Superintendent] Exemption for applicants who meet the statute's eligibility requirements." *Id.* at pp. 50-51.

This argument is at odds with the very nature of plaintiffs' claim. Their entire claim is predicated on their desire to obtain a Superintendent Exemption *without* meeting the statute's eligibility requirements – namely, without having to comply with N.J. Stat. Ann. § 2C:58-3.4(b)'s requirement that applicants identify "the specific exemption sought and the particular handguns to be purchased," *i.e.*, the Handgun Identification Requirement. Thus, unlike the inmate in *Winsett* who "met all eligibility criteria under the Delaware regulations," and was denied participation in the work release program, 617 F.2d at 1007, plaintiffs demand this Court find they have a protected property interest in the Superintendent Exemptions even though they do not meet the statutory prerequisites. Their argument fails.

Plaintiffs have no protected property interest in the Superintendent Exemptions. While the Superintendent cannot deny a Superintendent Exemption based on a whim, *see* N.J. Stat. Ann. §2C:58-3.4 (permitting Superior Court to reverse the Superintendent's decision where it was arbitrary, capricious or misapplied the law), he still has significant discretion under the One Handgun Per

Month Law. That discretion precludes a finding that plaintiffs have a protected property interest in the Superintendent Exemptions. *See Midnight Sessions*, 945 F.2d at 679. Accordingly, the Court should affirm the District Court's decision dismissing plaintiffs' procedural due process claim.

> B.     Plaintiffs Cannot Point To Any Action By The State Appellees That Would Constitute A "Deprivation" Of A Protected Property Interest.

Plaintiffs' procedural due process claim also fails because they cannot show the State Appellees deprived them of any purported property interest. The plaintiffs contend the Superintendent deprived them of a Superintendent Exemption by including the Handgun Identification Requirement in the application form, thereby making it difficult for them to find a seller-counterparty. A220-21. This contention should be rejected for three reasons.

First, plaintiffs overlook the fact that the Handgun Identification Requirement was imposed by the Legislature, not the State Appellees. Notably, the very first sentence of N.J. Stat. Ann. § 2C:58-3.4(b) reads: "The applicant shall certify, on a form prescribed by the [S]uperintendent, the specific exemption sought and *the particular handguns to be purchased*." N.J. Stat. Ann. § 2C:58-3.4(b) (emphasis added). This language sets forth the impetus for the application form's Handgun Identification Requirement.

Under such circumstances it is incorrect to claim that the State Appellees deprived plaintiffs of any protected property interest. The State Appellees implemented the law as written by the Legislature. If plaintiffs seek the benefits provided under the One Handgun Per Month Law, they must comply with the requirements. Accusing the State Appellees of due process violations for enforcing those requirements is without basis in law.

Second, plaintiffs cannot posit that the Handgun Identification Requirement renders the Superintendent Exemptions beyond their reach. While in some cases the requirement may demand patience from a hurried seller, the plaintiffs need not rely on the seller's goodwill to obtain this patience. The plaintiffs have available market-based solutions to induce a seller's patience, including offering a higher price, submitting a deposit, or offering more agreeable shipment terms. Plaintiffs are constrained in this right only by their own creativity.

Finally, plaintiffs' procedural due process claim really appears to be borne of their belief that the Superintendent Exemptions could be more widely enjoyed without the Handgun Identification Requirement. But the sheer fact that government may create a benefit, and then impose requirements for obtaining it, cannot serve as the basis for a due process violation for those unable or unwilling to meet those requirements. There are a broad range of statutes which confer benefits and rights that might be more widely enjoyed absent any regulation. If

plaintiffs are correct, then any benefit granted must remain absolutely unfettered so that the maximum number of individuals may take advantage of it. This approach finds no basis in the law and should be rejected.

Thus, the application form's Handgun Identification Requirement does not deprive plaintiffs of any property rights granted by the Legislature. Rather, it gives effect to the Legislature's express intent. As the District Court noted, if plaintiffs do not like the process, their "remedy lies with New Jersey's Legislature, not the federal courts." A23.

## **CONCLUSION**

For the foregoing reasons, the District Court's decisions should be affirmed.

Respectfully submitted,

JEFFREY S. CHIESA
ATTORNEY GENERAL OF NEW JERSEY

By:  /s/Roshan Shah
     Roshan D. Shah
     Deputy Attorney General

Dated: October 1, 2012

## CERTIFICATION OF BAR MEMBERSHIP

I certify that I am an attorney in good standing of the bar of the Third Circuit.

/s/Roshan Shah
Roshan D. Shah
Deputy Attorney General

Dated: October 1, 2012

## CERTIFICATION OF COMPLIANCE

Pursuant to FED. R. APP. P. 32(a)(7)(C)(i) and L.A.R. 31.1(c), I certify that:

1. This brief complies with the type-volume limitations of FED. R. APP. P. 32(a)(7) because the brief contains 11,838 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii), and thus does not exceed the 14,000 word limit.

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because the brief has been prepared in proportionally spaced typeface using a Microsoft Word word-processing program in Times New Roman that is at least 14 points.

3. The text of the brief electronically filed with the Court is identical, except for signatures, to the text of the paper copies.

4. This brief complies with L.A.R. 31.1(c) in that prior to its being electronically filed with the Court today, it was scanned by the following virus protection software and found to be free from computer viruses:

Company: Networks Associates Technologies, Inc.
Product: McAfee VirusScan Enterprise 8.7.0i
Scan Engine Version: 5400.1158

/s/Roshan Shah
Roshan D. Shah
Deputy Attorney General

Dated: October 1, 2012

## CERTIFICATION OF SERVICE

I hereby certify that, on October 1, 2012, I caused the foregoing brief to be filed with the Clerk of the United States Court of Appeals for the Third Circuit via the Case Management/Electronic Case Filing (CM/ECF) System. An original and nine paper copies of the brief will be sent to the Clerk via postage-prepaid overnight mail tomorrow. All counsel of record will receive service via the CM/ECF System and two courtesy copies via postage-prepaid overnight mail.

/s/Roshan Shah
Roshan D. Shah
Deputy Attorney General

Dated: October 1, 2012